

Meyer, Unkovic
& Scott LLP
A T T O R N E Y S   A T   L A W

1300 Oliver Building
Pittsburgh, Pennsylvania 15222-2304
Tel:   412-456-2800
Fax:   412-456-2864
Web: www.muslaw.com

Writer's direct dial phone number and e-mail address:
    412-456-2860 ~ rtv@muslaw.com

December 2, 2004

**Via Certified Mail,**
**Return Receipt Requested**

Mike McGavick
Chairman, President and Chief Executive Officer
Safeco Corporation
Safeco Plaza
Seattle, WA 98185

Paul Smith, Jr.
Safeco Corporation
American Economy Insurance Company
P.O. Box 5373
Poland, OH 44514

RE:    Your insured:  Walter Beck Corporation
       Policy Number:  02CC771900
       Loss Date:  December 5, 2003
       Claim No:  521474522015

Gentlemen:

This firm has been retained by Walter Beck Corporation ("Beck") to pursue claims against the Safeco Corporation, American States Insurance Company, and American Economy Insurance Company (collectively "Safeco") arising from Safeco's bad faith refusal to provide coverage for the fire loss suffered by Beck at its business, the Rainbow Inn, on December 5, 2003.

The history of Safeco's mistreatment of its insured in this matter is, at best, troubling. Following the fire, which completely destroyed Beck's business ("The Rainbow Inn") and, in fact, the livelihood of Harold and Sharyn Beck, Beck promptly provided to Safeco notice of the loss and a detailed inventory of items lost in this fire.  A copy of this inventory is enclosed herein.  Importantly, on the fifth page of the inventory, Beck specifically identified that its "Halon fire suppression system" was destroyed in the fire.

Nevertheless, in a letter dated February 11, 2004 (enclosed herein), sent over one month after the inventory was submitted (and more than two months after the fire), as Beck's property lay in a pile of charred ruins, Safeco denied coverage for Beck's loss stating, "Based upon the fact that your restaurant facility did not have the required fire suppression system we will be unable to cover your fire loss of December 5th,

Exhibit 29

Mike McGavick
Paul Smith, Jr.
Page 2
December 2, 2004

2003." In support of this denial of coverage, Safeco cited only a provision requiring that Beck have installed and maintain a "U.L. listed automatic fire suppression system for the protection of cooking and ventilating equipment...."

Recognizing that Safeco clearly overlooked the fact that Beck had properly installed and maintained a "U.L. listed automatic fire suppression system," on February 21, 2004, Beck promptly wrote to Safeco advising of the error and explaining the nature of the system in place. A copy of this letter is enclosed.

On March 24, 2004, Beck again wrote to Safeco indicating that he had received no response to his February 21, 2004 letter, advising that time was of the essence, and requesting that Safeco follow up and respond. Again on April 28, 2004, having received no response from Safeco[1] and now suffering even greater financial damage, Beck again wrote to Safeco requesting that it, at the very minimum, provide a response to its claim. Copies of these letters are enclosed.

In addition to writing directly to Safeco, Beck made a series of phone calls to Safeco's agent, Sundahl & Company Insurance ("Sundahl"), which were ignored. This series of unaddressed messages and communications is outlined in Beck's June 2, 2004 letter to Sundahl enclosed herein.

Finally, on June 3, 2004, Safeco contacted Harold Beck by telephone. During that conversation, Safeco indicated that it had never received Beck's letters of February 12, March 24, or April 28, 2004. Demonstrating extreme patience, Beck re-sent this information to Safeco in a letter dated June 10, 2004 (enclosed). In this letter, Beck plainly and explicitly explained that: (1) the Halon fire suppression system was installed and operational at all material times; (2) Safeco was specifically aware of the use of the Halon system at the time its original policy was written; (3) Harold Beck, a licensed Fire and Sprinkler Installer, installed the system; and (4) **Safeco itself physically inspected the Rainbow Inn and its fire suppression system on at least**

---

[1] It should not be overlooked that the Pennsylvania Code expressly requires, in its section on Unfair Claims Settlement Practices, as follows:

### § 146.6. Standards for prompt investigation of claims.

Every insurer shall complete investigation of a claim within 30 days after notification of claim, unless the investigation cannot reasonably be completed within the time. If the investigation cannot be completed within 30 days, and every 45 days thereafter, the insurer shall provide the claimant with a reasonable written explanation for the delay and state when a decision on the claim may be expected.

31 Pa. Code 146.6.

Mike McGavick
Paul Smith, Jr.
Page 3
December 2, 2004

**four separate occasions and never questioned the propriety or quality of the system or the maintenance thereof.** To further bolster the fact that the system was in place, Beck explained that the fire did not start in the kitchen where the Halon system was installed and that the effectiveness of the Halon system was evident given the fact that the kitchen was the last part of the building to be consumed by the fire.

Stunningly, despite receiving all of this information, in a June 23, 2004 letter (enclosed), Safeco, apparently in an attempt to discredit its insured without performing any independent investigation whatsoever, stated, "You now indicate you did have a fire suppression system and it was operational at the time of the fire." Of course, this was not the first time that Beck had advised of the existence of a proper system and Safeco's attempt to construe it as such was, at best, disingenuous. Further, apparently not having read Beck's explanation of the installation and maintenance of the Halon system and apparently not bothering to check its own underwriting or inspection records relating to its numerous inspections of the Rainbow Inn, Safeco requested information regarding "the vendor who maintains the system."

Despite the fact that Beck had already fully explained the installation and maintenance of the system to Safeco, that Safeco itself had physically inspected and viewed the fire suppression system, and that eight months had passed since the Rainbow Inn had been reduced to a pile of smoldering ruins, Beck wrote to Safeco on July 5, 2004 (enclosed) **again** explaining the situation. In this letter, Beck explained that all relevant documentation (which was required to be kept on the premises) was destroyed in the fire, <u>again</u> explained that an appropriate fire suppression system was in place, and <u>again</u> explained that Safeco representatives had repeatedly inspected the system, the system design documents, and the service and inspection documents.

Responding in a letter dated July 23, 2004 (enclosed), Safeco stated, "I again request the name of the company who maintained your systems so we can get past this road block." Given the information previously provided, this request seemed to be little more than gamesmanship. Safeco was aware of the type of system installed, that the system had been installed and maintained by someone licensed to do so, and that Safeco had inspected the system and approved of it. As such, this continued request absent any independent investigation of the facts by Safeco was inappropriate and was, of course, frustrating for Beck.

At this point, Beck is attempting to recreate the paper trail relating to its fire suppression system and continues to attempt to cooperate with Safeco's unreasonable requests. However, Safeco cannot and must not simply sit idly by and wait to see what transpires. Under Pennsylvania law, the burden is clearly on Safeco to properly

Mike McGavick
Paul Smith, Jr.
Page 4
December 2, 2004

investigate the claim[2] and, if it opts to deny coverage, to prove the applicability of the exclusion upon which it bases its denial. Indeed, Pennsylvania law clearly places the burden of proving the applicability of a coverage exclusion upon the insurer.[3]

Rather than undertake any reasonable independent investigation of the facts as provided to it by its insured to the best of the insured's abilities, it appears that Safeco has attempted to place the burden of investigating the claim on the insured, an act that is clearly improper under Pennsylvania law. With respect to such a proper investigation, Safeco has had at its disposal for over eleven months all of the following information and resources potentially relevant to the fire and the fire suppression system:

1. Safeco's underwriting records;
2. Sundahl's records;
3. Safeco's own inspection records;
4. Fire and police investigation records;
5. Physical evidence at the loss site; and
6. Potential witnesses who personally viewed and inspected the Halon system.

Despite this wealth of information, it appears that Safeco has done little more than wrongly deny coverage based upon a "misunderstanding" of the facts and an inapplicable policy exclusion, and then attempt to force its insured to prove that the exclusion does not apply. This bad faith conduct is directly contrary unto Safeco's duty to perform a full and timely investigation of the loss.

Importantly, this is not a situation where the insured is not prejudiced by the insurer's delay in investigating and responding to the claim. Indeed, every day that passes increases Beck's losses and depletes investigative information available to the insurer. Nevertheless, Safeco seems oblivious to the pressing need and its responsibility to address its insured's claim and loss in a timely manner as required

---

[2] Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, n9 (3d Cir. 1999)("Bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured"); Coyne v. Allstate Ins. Co., 771 F. Supp. 673, 678 (E.D. Pa. 1991) (bad faith is failure to acknowledge or act promptly on the claims, or refusing to pay without reasonable investigation of all available information)

[3] Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)("Where an insurer relies on a policy exclusion as the basis for its denial of coverage…, the insurer … bears the burden of proving such defense"); First Pennsylvania v. National Union, 580 A.2d 799, 802 (Pa. Super. Ct. 1990)(stating that exclusionary clauses must be strictly construed against the insurer); A.G. Allebach, Inc. v. Hurley, 540 A.2d 289, 293 (Pa. Super. Ct. 1988)(stating that it is the insurer's burden to demonstrate the applicability of an exclusion.)

Mike McGavick
Paul Smith, Jr.
Page 5
December 2, 2004

by law.  This conduct amounts to bad faith under 42 Pa.C.S.A. § 8371 pursuant to which punitive damages and attorneys fees should be awarded.

As a result of Safeco's misconduct and in order to protect Beck's interest, Beck has filed suit to recover its losses and for bad faith in the United States District Court for the Western District of Pennsylvania.  A copy of the Complaint (which is being formally served under separate cover letters) is enclosed herein.  While Beck remains willing to attempt to amicably settle this matter, its goodwill and desire to negotiate have been severely depleted.

Very truly yours,

Richard T. Victoria

520563