**Meyer, Unkovic & Scott** LLP
ATTORNEYS AT LAW

1300 Oliver Building
Pittsburgh, Pennsylvania 15222-2304
Tel: 412-456-2800
Fax: 412-456-2864

110 East King Street
Lancaster, Pennsylvania 17602-2832
Tel: 717-390-4760
Fax: 717-390-4766
www.muslaw.com

Writer's direct dial phone number and e-mail address:
412-456-2860 ~ rtv@muslaw.com

**Via E-mail and U.S. Mail**

November 8, 2006

Daniel P. McDyer, Esquire
Anstandig, McDyer & Yurcon, P.C.
1300 Gulf Tower
707 Grant St.
Pittsburgh, PA 15219-1911

RE:   Walter Beck Corporation v. Safeco Corporation, et al.
      Case No. 04-348-Erie

Dear Mr. McDyer:

I am writing to follow up on something discussed during and after yesterday's deposition and to make a request of Safeco on behalf of its insured.

Yesterday, when I inquired as to what could be provided to Safeco to meet the burden it has apparently placed on the insured to convince Safeco that the fire suppression system was in place[1] and maintained in accordance with the terms of the policy, I was advised, basically, that Safeco wanted the name of the independent contractor as well as the maintenance records showing dates of service and directed to the "P-8" provision of the policy that is at issue in this case.

Looking more closely at that provision in light of Safeco's comments, it seems very clear that the insured has complied with all of its alleged contractual obligations. Specifically, the provision at issue requires only that a U.L. listed system be installed and that:

> **The suppression system must be serviced by an independent contractor on a SEMI ANNUALLY [sic] basis.**

This provision, which was so heavily relied upon by Mr. Smith at yesterday's deposition, does not in any way require the insured or any independent contractor to

---

[1] Mr. Smith testified he did not know and would not take a position regarding whether Beck had a proper fire suppression system installed. I understand that you stated afterwards that Safeco's position is that there was no system in place <u>and</u> that it was not maintained. However, Mr. Smith, Safeco's designee, would not take that position.

MERITAS LAW FIRMS WORLDWIDE

Exhibit 30

Daniel P. McDyer, Esquire
Page 2
November 8, 2006

create or maintain records of service. Instead, it states only that the system be serviced semi-annually by an "independent contractor."

The February 20, 2006 letter from R.J. Beck Protective Systems, Inc., and the later sworn affidavit of Robert J. Beck easily satisfy the plain language of the policy. R.J. Beck is certainly an "independent contractor" under any definition of the term. Further, R.J. Beck plainly advises that the system was inspected "on each and every occasion" that he visited the Beck's, which was no less than twice each year (around June 14 and Thanksgiving), and often more frequently. The letter even discusses the history of the system and types of maintenance that was provided.

Shockingly, it appears that, though your client has possessed this information from R.J. Beck since approximately June 25, 2005, it has made no attempt to confirm or deny it. Only now, after our discussion yesterday and after numerous extensions to the discovery deadline, has there even been any mention of taking R.J. Beck's deposition. Meanwhile, the Beck's continue to struggle to get by without their business and continue to perform the investigation that should have been completed long ago by Safeco. This is bad faith in its plainest form.

Thus, it remains the insured's position that it has explicitly complied with all of the terms of the policy and that Safeco has an obligation to immediately pay its claim (as it did over a year ago when we produced the R.J. Beck letter in the preliminary stages of litigation.) Consequently, Safeco's insured requests that Safeco pay its claim in full by no later than Wednesday, November 15, 2006 or, alternatively, explain to its insured:

(1) What are the flaws in the sworn evidence produced by the insured to Safeco?

(2) What information (other than unsupported hypotheses and conjecture) is Safeco relying upon to continue to deny this claim?

(3) What additional information could possibly satisfy Safeco and result in the payment of the claim?[2]

Certainly, nobody can reasonably or in good faith contend that Safeco has not had an opportunity to investigate, confirm, or deny the information provided. As such, given that the Beck's financial lives have been nearly destroyed by your client's delays in acting upon this information, the Beck's request Safeco's prompt attention to this plea.

---

[2] While I recognize that Mr. Smith has already told us that "nothing" other than service records from the independent contractor would suffice (despite the fact that the policy does not require any such evidence), in an attempt to move this matter to conclusion, we wanted to ask this again.

Daniel P. McDyer, Esquire
Page 3
November 8, 2006


Given that we are engaged in litigation and I would prefer that our clients not communicate directly with each other, I would ask that you forward this on to Safeco. If you would prefer, I can have my client communicate directly with the insurer, but I thought this would be a better option.

Very truly yours,

Richard T. Victoria


645805


cc:   Joshua Lorenz, Esquire