IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER BECK CORPORATION d/b/a THE RAINBOW INN, <br><br> Plaintiff, <br> vs. <br><br> SAFECO CORPORATION, AMERICAN ECONOMY INSURANCE COMPANY, and AMERICAN STATES INSURANCE COMPANY, <br><br> Defendants. | CIVIL DIVISION <br><br> Civil Action No. 04-348 - Erie <br><br> JUDGE MAURICE B. COHILL, JR. |

**CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Walter Beck Corporation d/b/a The Rainbow Inn ("Beck Corp."), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby submits a concise statement of the undisputed and material facts deemed necessary for the Court to decide Plaintiff's Motion for Partial Summary Judgment.

1. Beck Corp. operated under the Pennsylvania registered fictitious name of "The Rainbow Inn" and owns and operated a restaurant known as the Rainbow Inn located at Route 59, Marshburg, McKean County, Pennsylvania 16735 ("the Rainbow Inn"). (Ex.[1] 1, Complaint, ¶2, Ex. 31, Ex. 31, Affidavit of Harold Beck, ¶2).

2. For and in consideration of a valuable premium paid by Beck Corp., an "Ultra Series Package Policy" to Beck Corp. numbered 02CC771900 and providing coverage for the period of April 23, 2003 to April 23, 2004 ("Policy") was issued to Beck Corp. (Ex. 1, Complaint, ¶8; Ex. 2, Amended Answer, ¶5).

---

[1] All references to Exhibits herein refer to the Exhibits included in the Appendix filed herewith.

648818.1

3. A true and correct copy of the Policy is included in the Appendix as Exhibit 3 and incorporated herein by reference as if set forth in its entirety.

4. Each of Safeco Corporation ("Safeco"), American Economy Insurance Companies ("AEIC"), and/or American States Insurance Company ("ASIC") (hereinafter collectively referred to as "Safeco") is named or identified in the Policy. (Ex. 3, Policy; Ex. 4, Deposition of Paul Smith ("Smith Depo."), 12-14).

5. Safeco has represented that, at a minimum, the Policy was issued by AEIC and AEIC is the entity providing coverage under the Policy. (Ex. 2, Amended Answer, ¶5; Ex. 4, Smith Depo., 14-16)

6. The Policy includes Building and Personal Property Coverage as well as a Restaurant Property Plus endorsement which increases the scope and amount of coverage provided under the Policy. (Ex. 3, Policy).

7. Prior to Beck Corp.'s involvement with the Rainbow Inn and before moving to Pennsylvania, Sharyn Beck ("Mrs. Beck"), the sole officer and shareholder of Beck Corp., and Harold Beck ("Mr. Beck"), her husband, owned and operated a company in Texas that installed and serviced fire suppression systems and burglar/fire alarms. Mr. Beck was licensed in Texas to install such systems and was a certified U.L. installer. (Ex. 5, Deposition of Harold Beck ("Mr. Beck Depo."), 13-17; 23-25; Ex. 6, Deposition of Sharyn Beck ("Mrs. Beck Depo."), 15-16; Ex. 31, Affidavit of Harold Beck, ¶6).

8. As such, Mr. Beck was particularly familiar with specific types and names of systems and used such terminology precisely. (Ex. 5, Mr. Beck Depo. 25-26; Affidavit of Harold Beck, ¶6).

648818.1

9. On December 5, 2003, while the Policy was in effect and during the policy period, the Rainbow Inn and its contents were destroyed by fire (the "Fire"). (Ex. 31, Affidavit of Harold Beck, ¶9).

10. The Fire completely destroyed the Rainbow Inn and its contents such that it could not be repaired and its contents could not be salvaged. (Ex. 31, Affidavit of Harold Beck, ¶11).

11. At the time of the Fire, the kitchen area was the last portion of the building to burn. (Ex. 31, Affidavit of Harold Beck, ¶15).

12. Safeco received notice of the loss promptly after the Fire. (Ex. 5, Mr. Beck Depo., 80-81).

13. Shortly after the Fire, Safeco claims adjuster Paul Smith visited the site of the Fire and spoke with Mr. Beck regarding the Fire and the Rainbow Inn. (Ex. 5, Mr. Beck Depo., 80-81; Ex. 31, Affidavit of Harold Beck, ¶16-18).

14. Mr. Beck was not an officer or employee of Beck at the time of the Fire. (Ex. 5, Mr. Beck Depo., 34-35; Affidavit of Harold Beck, ¶3).

15. In fact, he had not been formally affiliated with the corporation since approximately 1994. (Ex. 5, Mr. Beck Depo., 34).

16. However, because Mrs. Beck suffered from a heart attack on the day of the Fire, he assisted in communicating with Safeco. (Ex. 31, Affidavit of Harold Beck, ¶16-18).

17. Nevertheless, Safeco never met with or interviewed Mrs. Beck, who was the only officer or shareholder of the corporation. (Ex. 5, Mr. Beck Depo., 34-35; Ex. 6, Mrs. Beck Depo., 53).

18. Beck Corp. promptly and repeatedly demanded that Safeco comply with its contractual obligations to pay Beck Corp. for its losses suffered as a result of the Fire in

accordance with the terms of the Policy. (Ex. 5, Mr. Beck Depo., 80-81, 84-91; Ex. 9, 2/21/2004 Letter from Harold Beck to Paul Smith; Ex. 10, 3/24/2004 Letter from Harold Beck to Paul Smith; Ex. 11, 4/28/2004 Letter from Harold Beck to Paul Smith; Ex. 12, 6/2/2004 Letter from Harold Beck to Paul Smith; Ex. 13, 6/10/2004 Letter from Harold Beck to Paul Smith; Ex. 15, 7/5/2004 Letter from Harold Beck to Paul Smith; Ex. 29, 12/2/2004 Letter from Richard T. Victoria to Mike McGavick and Paul Smith of Safeco; Ex. 30, 11/8/2006 Letter from Richard T. Victoria to Daniel McDyer; Ex. 31, Affidavit of Harold Beck, ¶18, 23)

19. One of the things requested by Safeco shortly after the Fire was an inventory of items and property included in the Rainbow Inn. (Ex. 31, Affidavit of Harold Beck, ¶18).

20. Though attempts to transmit the requested information earlier by e-mail were allegedly unsuccessful, on no later than January 3, 2004, Mr. Beck sent a letter to Safeco setting forth an inventory of the contents of the Rainbow Inn lost in the fire, which letter was received by Safeco. (Ex. 4, Smith Depo., 49-54; Ex. 5, Mr. Beck Depo., 84-85; Ex. 6, Deposition of Sharon Beck ("Mrs. Beck Depo.), 25-31; Ex. 7, 1/3/2004 Letter from Harold Beck to Paul Smith with "Inventory," "Liquor Inventory," and "Food and Beer Inventory"; Ex. 31, Affidavit of Harold Beck, ¶18).

21. The Inventory in Ex. 7 includes references to "Burglar and fire alarm system, Visonic" and to "**Halon fire suppression system**" on page 5, lines 9 and 10. (Ex. 7, 1/3/2004 Letter; Ex. 4, Smith Depo., 50-51).

22. More than one month after receipt of the Inventory letter and by letter dated February 11, 2004, Safeco denied coverage for the losses associated with the Fire. (Ex. 8, 2/11/2004 Letter from Paul Smith to Beck Corp. ("Denial Letter"); Ex. 31, Affidavit of Harold Beck, ¶19-20).

23. The Denial Letter sets forth the sole basis for Safeco's denial of Beck's claim. (Ex. 8, Denial Letter; Ex. 4, Smith Depo, 51-52, 58-61, 69-70; Ex. 16, 7/23/2004 Letter from Paul Smith to Harold Beck).

24. More specifically, the Denial Letter states:

> Based upon the fact that your restaurant facility did not have the required fire suppression system we will be unable to cover your fire loss of December 5th 2003. You are required to not only have but maintain a fire suppressions [sic] system. The cp-7586 6/93 form requires you have and maintain this system on a Quarterly basis. You indicated to me this was removed in 1996 or 1997 and never replaced. Please refer to the policy language below:
>
> > "P-8" Commercial Cooking Protection – A U.L. listed automatic fire suppression system installed for the protection of cooking appliances. The suppression system must be serviced by an independent contractor on a **Quarterly** basis. The ventilating system, including plenums, exhaust ducts, roof vent and hood over cooking appliances must be cleaned by an independent contractor on a Quarterly basis.

(Ex. 8, Denial Letter (emphasis added))

25. Importantly, the Denial Letter misinterprets and misquotes the relevant language from the Policy as the Policy plainly states, "The suppression system must be serviced by an independent contractor on a **SEMI-ANNUALLY** [sic] basis." (Ex. 3, Policy, Protective Safeguards Endorsement, Form CP 75 86 06 93, Page 2 of 2). Clearly, the Policy does not require quarterly servicing of the fire suppression system.

26. The above-referenced language in the Denial Letter is also inaccurate because Mr. Beck never told Paul Smith, the insurer, or anyone else, nor is it true, that the fire suppression system at The Rainbow Inn was removed in 1996 or 1997 and never replaced. At all times, The Rainbow Inn had a fully-functioning U.L. listed fire suppression system in place. (Ex. 31, Affidavit of Harold Beck, ¶21-23)

27. At all times material to the Policy, the claim for coverage at issue in this case, and the Fire, a U.L. listed automatic fire suppression system was installed and operational at the Rainbow Inn for the protection of cooking and ventilating equipment. (Ex. 5, Mr. Beck Depo., p46-59, 61-63, 96-98, 102-106; Ex. 6, Mrs. Beck Depo., 45-50, 53-59; 63, 66-69; 76-77; Ex 7; Ex. 9, 2/21/2004 Letter from Harold Beck to Paul Smith; Ex. 10, 3/24/2004 Letter from Harold Beck to Paul Smith; Ex. 11, 4/28/2004 Letter from Harold Beck to Paul Smith; Ex. 12, 6/2/2004 Letter from Harold Beck to Paul Smith; Ex. 13, 6/10/2004 Letter from Harold Beck to Paul Smith; Ex. 15, 7/5/2004 Letter from Harold Beck to Paul Smith; Ex. 31, Affidavit of Harold Beck, ¶21-23 (all letters written by Mr. Beck and cited in this Concise Statement of Material Fact are attested to and authenticated in his Affidavit)).

28. In addition to Mr. and Mrs. Beck's testimony on the subject, eight (8) third-party witnesses have executed Affidavits attesting to the fact that they observed the fire suppression system in place at the Rainbow Inn. (Ex. 17, Affidavit of John Gates; Ex. 18, Affidavit of Jeremy Holt; Ex. 19, Affidavit of Kimberly Holt; Ex. 20, Affidavit of Andrea Prince; Ex. 21, Affidavit of Eileen Smith; Ex. 22, Affidavit of Tanya Aiello; Ex. 23, Affidavit of Geoffrey Beck; Ex. 24, Affidavit of Robert J. Beck.)

29. Though Paul Smith, Safeco's designated representative, claim adjuster, and the person primarily responsible for investigating and denying the claim at issue in this case, has testified (and stated in the Denial Letter) that he believed that Mr. Beck advised him that there was no fire suppression system in place at the Rainbow Inn (Ex. 4, Smith Depo., 85-86; Ex. 8, Denial Letter), Mr. Beck clarified this issue in several letters to Smith and Safeco (Ex. 8-12 and 14), as well as in his deposition (Ex. 5, Mr. Beck Depo, 89-91; 98-99; 102-103) and Affidavit

648818.1

(Ex. 31, ¶8, 21-23), explaining the precise meaning of his statements to Smith and the fact that a proper fire suppression system was always in place.

30.  Though Safeco took Mr. Beck's deposition in this case, Mr. Beck was not questioned regarding this alleged conversation with Smith at any time during his deposition. (*See generally,* Ex. 5, Mr. Beck Depo.)

31.  Mr. Beck has attested to the fact that he may have stated that the Rainbow Inn did not have an "Ansul" brand system when asked about such a system by Smith, which is an accurate statement. (Ex. 31, Affidavit of Harold Beck, ¶6, 22).

32.  Both Mr. Beck and Smith have characterized this miscommunication as a "serious misunderstanding" (Ex. 14 and 15) and have acknowledged that the misunderstanding may have arisen from the fact that the fire suppression system in place at the Rainbow Inn was not an "Ansul" brand system, but instead a Halon based fire suppression system. (Ex. 4, Smith Depo., 85-87; Ex. 15, p.1, third sentence; Ex. 5, Mr. Beck Depo., 25-26 (explaining the difference between Halon and Ansul systems).

33.  Smith, in turn, has admitted that he may have used "Ansul" system as a generic term meaning fire suppression system. More specifically, Smith testified as follows:

> *Ex. 4, Smith Depo., page 85*
>
> 15  Q.  If you flip to the next letter, the
> 16  July [ ]5 [sic], 2004 letter, did you receive this
> 17  letter from Mr. Beck?
> 18      A.  Yes, sir.
> 19  Q.  Around the date of the letter?
> 20      A.  Yes.
> 21  Q.  In response to your June 23 letter
> 22  that we just looked at?
> 23      A.  I believe so.
> 24  Q.  Did you have some discussion with
> 25  Mr. Beck over the distinction between an Ansul

*Page 86*
1       P. Smith - by Mr. Victoria
2   and a Halon system?
3       A.   That may well have been my error,
4   using the generic Ansul system in place of fire
5   suppression system.
6       Q.   A lot of these documents relate back
7   to your initial conversation with Mr. Beck in
8   which you understood him to say that he took
9   the system out in '96 or '97, correct?
10      A.   Yes.
11      Q.   Do you believe that you
12  misunderstood something he said to you then?
13      A.   I don't know.  I been around life a
14  long time.  Can there be misunderstanding,
15  we'll all walk away from this table there can
16  be misunderstanding.  I believe I heard him say
17  he had the system removed.
18      Q.   Was there a discussion at that time
19  about Halon versus Ansul system?
20      A.   I don't recall.
21      Q.   I'm just trying to get at whether
22  the use of those terms may have caused a
23  misunderstanding at that conversation.
24      A.   I can't say yes or no.  But that
25  February 11 denial letter was very clear what

*Page 87*
1       P. Smith - by Mr. Victoria
2   we needed.
3       Q.   Other than asking Mr. Beck for the
4   vendor information, did Safeco do anything
5   independently to determine whether or not a
6   fire suppression system was in place and
7   whether it was maintained properly?
8       A.   I can't speak for all of Safeco.
9   But from my -- that I initiated, no.  Whether
10  something was done further in underwriting, I
11  can't say.  But, no.  From my standpoint, no.

34.     Smith, as Safeco's designated representative, claim adjuster, and the person primarily responsible for investigating and denying the claim at issue in this case, testified regarding the presence or absence of a fire suppression system as follows:

*Ex. 4, Smith Depo., p. 51*
14  Q.  Did you think that it was actually
15  in the inventory, in the restaurant?
16     A.  I don't know. I mean, what I am
17  saying is I thought -- I don't know whether it
18  was or not.

\* \* \*

*Page 60*
15  Let's just talk about the
16  existence of a system in place or not. Is it
17  Safeco's position that there was no system in
18  place?
19     A.  No. I don't know if there was a
20  system in place.
21  Q.  So Safeco's sole basis for denying
22  the claim is that Safeco wasn't provided with
23  an agreement showing that a system had been
24  serviced in accordance with the agreement? In
25  accordance with the policy?

*Page 61*
1         P. Smith - by Mr. Victoria
2     A.  In accordance with the policy, yes.
3  That there was a system, that it was in place,
4  it was UL approved, that it was serviced
5  semi-annually and cleaned quarterly by an
6  independent contractor. And that was the basis
7  of my denial.
8     Q.  Well, but Safeco has to -- I'm
9  getting back to the question again. Is it
10  Safeco's contention that no system was there?
11     A.  Not necessarily.
12     Q.  What was the results of your
13  investigation? Was there a system or wasn't
14  there?
15     A.  I don't know. I don't know whether
16  there was or wasn't.

*Page 62*
5  Q.  And I understand that there's two
6  separate things at play. What I am getting at
7  is, we need to know what Safeco's telling us is
8  the flaw in the system on our end and the error
9  on our end that resulted in the denial of the

```
10  claim. So is it both the absence of a system
11  and the failure to maintain a system, or is it
12  what you're saying is it is at least the
13  failure to maintain a system, and we don't know
14  on the other thing?
15     A.   It's an either/or. It's not really
16  either/or. That's not correct. But it is a
17  package, and I have a pile of debris. So I
18  can't walk in the restaurant and say there is a
19  system. So I have to rely on evidence that all
20  of that has been complied with. There is a
21  system and that it's been serviced.
22     Q.   Do you know if in any of that debris
23  there is a burned up service agreement?
24     A.   I don't know.
25     Q.   Do you know if in any of that debris
```

**Page 63**
```
1           P. Smith - by Mr. Victoria
2   there are mangled or melted parts of a fire
3   suppression system?
4      A.   I don't know.
5      Q.   Did anybody look for it?
6      A.   Not to my knowledge.
7      Q.   So Safeco isn't taking a position
8   one way or the other whether or not a system
9   was in place?
10     A.   No.
```

(*See also*, Ex. 25, Notice of Deposition of Safeco; Ex. 26, Notice of Deposition of ASIC; Ex. 27, Notice of Deposition of AEIC; Ex. 4, Smith Depo. 9, 11-12.)

35.     Though Smith testified that he kept notes and records regarding his conversations with Mr. Beck and his alleged investigation of the claim, no such notes or records of Smith were produced by Safeco in this case as of the close of business on December 5, 2006. (Ex. 4, Smith Depo., 43-46, 52-53, 105-106).

36.     Though prior to sending the Denial Letter Smith retained a fire investigation company to inspect the site and attempt to determine the cause of the Fire, he did not ask the

648818.1

investigator to attempt to determine whether a fire suppression system was in place or operational. (Ex. 4, Smith Depo., 71-74)

37. Additionally, at all times material to the Policy, the claim for coverage at issue in this case and the Fire, the fire suppression system was properly maintained and serviced by an independent contractor. (Ex. 5, Mr. Beck Depo., 54-56, 61-64, 76-77, 102-106; Ex. 6, Mrs. Beck Depo., 55-56; Ex. 24, Affidavit of Robert J. Beck; Ex. 31, Affidavit of Harold Beck, ¶13-14).

38. More specifically, the Affidavit of Robert J. Beck of R.J. Beck Protective Systems, Inc. indicates that:

    a. a UL listed fire suppression system was installed and in operation during the Policy period and at the time of the Fire;

    b. from about 1996 through the date of the Fire, R.J. Beck Protective Systems, Inc., was directly involved with the system as an advisor and inspection certifier of the systems;

    c. R.J. Beck Protective Systems, Inc. inspected the system no less than twice each year, both around Mr. Beck's birthday (June 14) and Thanksgiving;

    d. R.J. Beck Protective Systems, Inc. inspected the system shortly before the fire during a visit from November 24, 2003 through November 26, 2003 and made certain that the fire suppression system was operational. He determined that the two detector heads in the kitchen were clean and that the system was operational; and

    e.    R.J. Beck Protective Systems, Inc. provided a written certification to Beck Corp. that both the fire suppression and burglar alarm systems were operational.

(Ex. 24, Affidavit of Robert J. Beck and February 20, 2005 letter attached to and incorporated into the Affidavit.)

    39.    The February 20, 2005 letter from Robert J. Beck included in the Appendix as part of Ex. 24 was produced to Safeco on or about June 25, 2005 with Beck Corp.'s Rule 26 included in the Appendix as Exhibit 28.

    40.    Though Beck Corp. kept records of the service to the fire suppression system, the great majority of Beck Corp.'s business records were destroyed in the Fire, including those records relating to the fire suppression system and its maintenance. (Ex. 5, Mr. Beck Depo., 24-25, 50, 63-64, 86; Ex. 15). Many of these documents were kept at the insured premises in accordance with various Pennsylvania statutes and regulations, including but not limited to 47 P.S. 2-207(h); 47 P.S. 2-211; 47 P.S. § 4-467; 47 P.S. § 4-493(12); 47 P.S. § 5-509; 47 P.S. § 5-513; 40 Pa. Code § 5.41; and 40 Pa. Code § 11.35. (Ex. 28, §II.b.)

    41.    Upon information and belief, as of the close of discovery, no representative of Safeco has ever contacted Beck Protective Systems, Inc. or Robert J. Beck regarding the Fire, Beck's claim, the Rainbow Inn, or the fire suppression system. (Ex. 4, Smith Depo., 96; Ex. 32, Affidavit of Harold Beck, ¶14)

    42.    Also, the ventilating system and hood over the cooking appliances were cleaned by an independent contractor on at least a monthly basis. (Ex. 6, Mrs. Beck Depo., 46-48; Ex. 5, Mr. Beck Depo., 55-56; 106-109).

648818.1

43.     Safeco does not contend that either that Beck Corp. started or caused the Fire or that the Fire was caused or contributed to by the alleged absence of or alleged failure to maintain or inspect a fire suppression system. (Ex. 4, Smith Depo., 59-60, 73; Affidavit of Harold Beck, ¶10)

44.     Prior to the Fire, the Rainbow Inn's U.L. listed automatic fire suppression system was viewed and inspected <u>by Safeco</u> and/or its authorized agents and/or representatives. (Ex. 5, Mr. Beck Depo., 68; 91-96, 109-110; Ex. 9, 13, 15).

45.     Safeco never made any objection, complaint, warning, threat, or suggestion to Beck Corp. regarding the Rainbow Inn's U.L. listed automatic fire suppression systems. (Ex. 5, Mr. Beck Depo., 68; 91-96, 109-110; Ex. 9, 13, 15).

                                    Respectfully submitted,

                                    /s/ Richard T. Victoria
                                    Richard T. Victoria
                                    Pa. I.D. #76681 - rtv@muslaw.com
                                    Joshua R. Lorenz
                                    Pa. I.D. #84397 - jrl@muslaw.com

                                    MEYER, UNKOVIC & SCOTT LLP
                                    1300 Oliver Building
                                    Pittsburgh, PA  15217
                                    (412) 456-2800
                                    Fax: (412) 456-2864

                                    Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER BECK CORPORATION d/b/a THE RAINBOW INN, ) ) ) | CIVIL DIVISION |
| Plaintiff, ) | Civil Action No. 04-348 - Erie |
| vs. ) ) | JUDGE MAURICE B. COHILL, JR. |
| SAFECO CORPORATION, AMERICAN ECONOMY INSURANCE COMPANY, and AMERICAN STATES INSURANCE COMPANY, ) ) ) ) ) ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF was served upon counsel for the Defendant by electronic service this 6th of December, 2006 at the following address

Daniel P. McDyer, Esquire
ANSTANDIG, McDYER & YURCON, P.C.
1300 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

/s/ Richard T. Victoria
Richard T. Victoria