**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WALTER BECK CORPORATION d/b/a

THE RAINBOW INN,

        Plaintiff,

    vs.

SAFECO CORPORATION, AMERICAN
ECONOMY INSURANCE COMPANY,
and AMERICAN STATES INSURANCE
COMPANY,

        Defendant.

Civil Action No. 04-348-Erie

Judge Maurice B. Cohill, Jr.

## BRIEF OF DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

AND NOW, come Defendants, Safeco Corporation, American Economy Insurance Company and American States Insurance Company, by and through their counsel, Anstandig, McDyer & Yurcon, P.C., and file the following Brief in Support of their Motion for Summary Judgment.

### I.    BACKGROUND

The only proper Defendant in this matter is American Economy Insurance Company (hereinafter, "Defendant" or "American Economy"). Safeco Corporation is a holding company and does not issue policies of insurance. While American States Insurance Company does issue insurance policies, it is an independent entity and did not issue the policy in question in this matter. (See Deposition of Paul Smith, Jr. at p. 14 lines 17-25 and p. 15,16 attached to Appendix as exhibit R).

The Defendant provided a Commercial Property Coverage Form to the Plaintiff, Walter Beck Corporation. The Complaint alleges that a loss occurred on or about December 5, 2003. At the time of the alleged loss, Plaintiff was a merchant in the restaurant business, offering food and beverages, including alcoholic beverages, for sale at an establishment known as the Rainbow Inn. The Complaint further alleges that the Rainbow Inn and its contents were destroyed by fire. Plaintiff notified Defendant of the alleged loss on or about the same day as the fire. Defendant immediately began its investigation of the alleged loss and sent representatives to the scene of the fire to interview representatives of Plaintiff and to investigate the cause and origin of the fire. Defendant contacted an independent investigator, Churchwell Fire Consultants, Inc. on the day of the fire. Representatives of this fire investigation company arrived on the scene as early as the day following the fire. (See Affidavits of Brian Churchwell and James Churchwell attached to the Appendix at Exhibits F and G, respectively). During this investigation process, and prior to the denial of Plaintiff's claim, Defendant's representative had occasion to inquire as to whether Plaintiff had in place a fire suppression system, and if said system was in place, whether it was regularly maintained and serviced. At this time, Harold Beck, who held himself out as a representative of Plaintiff, indicated that the fire suppression system had been removed in 1996 or 1997.[1] The policy of insurance issued to Plaintiff, Walter Beck Corporation had a Protective Safeguards Endorsement, which required that Plaintiff maintain a fire suppression system

---

[1] A note from the claims file, dated January 7, 2004 indicates that, Paul Smith Jr., a Claims Representative from Defendant, had spoken with Harold Beck, a representative of Plaintiff, and Beck indicated that Plaintiff had a Halon suppression system, but it had been taken out in 1997, and it was not replaced. Another file note indicates that Harold Beck confirmed a survey was completed by Walter Beck Corporation confirming in writing the lack of a fire suppression system in 1993. The written forms were obtained post fire by Defendant. (See claims file notes attached as exhibit P to Appendix)

and which served as a condition of coverage for the policy. The endorsement stated, in

part, the following:

> "PROTECTIVE SAFEGUARDS
>
> a.    As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
> b.    The protective safeguards to which this endorsement applies are identified by the following symbols:
>
> … 'P-8' Commercial Cooking Protection – A U.L. listed automatic fire suppression system installed for the protection of cooking and ventilating equipment, including plenums, exhaust ducts and hood over cooking appliances. The suppression system must be serviced by an independent contractor on a SEMI ANNUALLY basis. The ventilating system, including plenums, exhaust ducts, roof vent and hood over cooking appliances must be cleaned by an independent contractor on a QUARTERLY basis.
>
> We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:
>
> a.    Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> b.    Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order. (Exhibit B)

Information was verbally provided by Harold Beck regarding the lack of a fire

suppression system, and documentary evidence was obtained by Defendant on or about

January 7, 2004, including an insurance form filled out by Plaintiff's representative

which indicated that Plaintiff did not have a maintenance agreement for a fire suppression

system in place in 1997 and a 2003 Restaurant Supplement form that confirmed in

writing no suppression system at the Rainbow Inn, (Affidavit of Marta McHale exhibit I)

at the time of the fire[2].  A denial letter was sent to the Plaintiff on or about February 11,

---

[2] The affidavit of Marta McHale, an employee of Plaintiff's insurance agency indicates that a form completed by Plaintiff for Selective Insurance Company indicated in 1997 that Plaintiff had a fire suppression system in place but no service agreement. In 2003 another form confirmed that no system was in place by the time of the fire. (Exhibit I)

2004. On or about February 21, 2004, Harold Beck wrote a letter to Defendant's representative, recanting his prior statements, and indicated that Plaintiff had a halon fire suppression system in place at the time of the fire. Mr. Beck claimed that there had been a misunderstanding.

Defendant wrote again to Plaintiff on or about June 23, 2004. Defendant requested that Plaintiff provide information regarding the alleged halon system including the name of the independent contractor, who maintained the system. Defendant would then request that this vendor provide to Defendant the records on the fire suppression system and allow Defendant to reassess its position based on such information. Plaintiff then responded by mail on or about July 5, 2004 and indicated that documentation regarding the alleged fire suppression system had been destroyed in the fire, but provided no information regarding vendors as was requested by Defendant. On or about July 23, 2004, Defendant again requested that Plaintiff provide to Defendant the name of the independent contractor, who maintained Plaintiff's alleged fire suppression system so that Defendant could contact this contractor and obtain information regarding the alleged system. Plaintiff never provided a responsive reply to this request. (See series of letters written by Paul Smith, Jr. to Plaintiff's representative attached to the Appendix as Exhibit C, D, and E). Plaintiff decided, unilaterally, not to deal with Defendant and filed suit in this matter. Plaintiff never provided any information prior to suit, that was requested regarding the independent contractor who maintained the alleged fire suppression system. At the Deposition of Harold Beck, taken on November 11, 2006, Mr. Beck testified as follows:

| | |
|---|---|
| Q. | So when was the first time Mr. Smith asked you for records of maintenance of the fire suppression system? |
| A. | June. |
| Q. | And – |
| A. | July actually. I think it was July. It wasn't June. |
| Q. | Of 2004? |
| A. | Yeah. |
| Q. | And did you ever provide any information to Mr. Smith in response to that request? |
| A. | No. |

* * *

| | |
|---|---|
| Q. | Understood. Did Mr. Smith ever ask you to simply give him the name of the people who maintained your fire suppression system? |
| A. | Never. |
| Q. | Do you recall any letters that he may have sent that asked you to give him the name? |
| A. | In July, June or July, he sent me a registered letter asking me for this stuff, but by that time I was looking for a lawyer. |
| Q. | Okay. So you were in no way interested in dealing with Mr. Smith anymore by June or July when he was requesting that information? |
| A. | That's right. |

(See Deposition of Harold Beck, at pp. 85-87, Attached to the Appendix at Exhibit O).

Plaintiff and Plaintiff's representative made the unilateral decision, six months after the fire, to stop cooperating with the Defendant insurer. Consequently, Defendant maintained its position of denial of the claim, and denial is supported by the facts.

An independent investigator, Churchwell Fire Consultants, Inc., was asked by Defendant to inspect the fire site and determine the cause and origin of the fire on December 5, 2003. Investigators from that company subsequently conducted an investigation at the scene of the fire. In the course of its investigation, Churchwell Fire Consultants interviewed Harold Beck, who held himself out to be a representative of Walter Beck Corporation. During the interview, Mr. Beck made no mention of whether the Rainbow Inn had a fire suppression system in place on the date of the fire. Throughout its investigation, Churchwell Fire Consultants did not observe a fire

suppression system or the noncombustible remnants of such a system which one would expect to survive a fire. Churchwell Fire Consultants' opinion is that there was no fire suppression system in place at the Rainbow in on December 5, 2003. (See affidavits of Churchwell fire Investigators, Attached to the Appendix at Exhibits F and G, respectively).

Plaintiff now claims to have had a halon fire suppression system in place on the date of the fire. James F. Valentine, an investigator and certified fire protection specialist, has advised Defendant that halon was never tested by Underwriters Laboratory for application as a suppressant of commercial cooking fires. As a result, Underwriters Laboratory never listed a halon system for use as a fire suppressant of commercial cooking fires. Halon has not, and never has been, an accepted commercial cooking fire suppressant agent. Halon would not be considered an acceptable fire suppressant in commercial kitchens, nor would halon have U.L. listing for such use. (See affidavit of James F. Valentine, attached to the Appendix at Exhibit H). The Protection Safeguards Endorsement required that a system be U.L. listed.

The policy also required that the fire suppression system be serviced by an independent contractor on a semi annual basis. Prior to filing suit, Plaintiff offered no information to Defendant that Plaintiff had hired an independent contractor to service its alleged fire suppression system. Defendant has obtained a form document filled out by a representative of Plaintiff in which Plaintiff indicates that it did not have an independent contractor who serviced its alleged fire suppression system, before its removal. (See affidavit of Marta McHale attached to the Appendix at Exhibit I). It was not until one and one half years after the date of the fire that Plaintiff provided an affidavit from the brother

of Harold Beck, who stated that he inspected the alleged system. However, even Mr. Beck's brother did not provide the dates of service of the system or any documentary evidence of invoices, work orders, notes, or payment records to show that the service had actually been performed. The comments of brother of Mr. Beck, cannot alleviate the prior admissions of Harold Beck, on behalf of the Walter Beck Corporation, that indeed the system had been removed nor can the brother erase the written forms confirming the lack of a system.  (Affidavit of Marta McHale exhibit I, and claim file notes exhibit P.)

Additionally, the information provided by Plaintiff to Defendant on Plaintiff's alleged losses was insufficient and did not support Plaintiff's claimed losses. Should Plaintiff be making a claim for the loss of the structure that housed the Rainbow Inn, it must fail. The documentation provided by Plaintiff through discovery included a lease (exhibit J) which indicated that the structure and surrounding property was actually owned by Sharon and Harold Beck. The Becks then in turn leased the structure and property to the Walter Beck Corporation. The only named insured on the insurance policy in question was Walter Beck Corporation. As Walter Beck Corporation did not own the structure which housed the Rainbow Inn, and the individual owners of the structure and property were not named insureds on the policy. A claim, therefore, cannot be maintained for the loss of the structure.

Additionally, Plaintiff has made a claim for fire losses of food and beer, liquor, and contents. The only information provided to Defendant regarding these losses was inventory lists prepared by Sharyn Beck, designee of Plaintiff. The inventories provided by Plaintiff are not consistent with Plaintiff's federal income tax returns, which

Defendant obtained in discovery. (See report of Defendant's expert, Horovitz, Rudoy & Roteman, C.P.A.s, attached to the Appendix at Exhibit M).

A representative of the Plaintiff, Sharon Beck, was deposed in this matter, and she indicated that it was she who prepared these inventory lists. She further indicated that the lists were formulated by memory and with little to no investigation of actual orders to vendors. The only investigation conducted by Mrs. Beck as to the value of these items allegedly lost was a review of restaurant catalogues. Plaintiff has never provided any documentary evidence of orders or invoices which would indicate the value of these alleged losses. (Deposition of Sharyn Beck paragraphs 25-31, as exhibit N in the appendix).  Sharyn Beck also testified that she knew the insurance required a fire suppression system.

Defendants move for judgment to be entered in their favor upon motion for summary judgment due to policy coverage limitations, definitions and exclusions identified herein. There is no breach of contract. Proofs of loss are inconsistent for personalty and without foundation for realty. Additionally, Plaintiff will be unable to support the burden of proof required for a claim of bad faith. Claims for bad faith must be measured by the standard of clear and convincing evidence, as opposed to the mere preponderance of the evidence. See Cowden v. Aetna Casualty and Surety Co., 134 A.2d 223, 277 (Pa. 1957). In light of Defendant, American Economy's prompt response and reasonable basis for denial of coverage, there is an absence of evidence of bad faith conduct as a matter of law. Lastly, the UTPCPA does not apply to commercial matters.

## II.    PROCEDURAL HISTORY

On or about December 2, 2004, Plaintiff instituted a civil action against Defendants in which Plaintiff alleged breach of contract of insurance, bad faith and unfair trade practices. The Court set December 6, 2006 for Motions for Summary Judgment to be filed. Defendants now move for summary judgment in their favor and against Plaintiff, Walter Beck Corporation.

## III.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.

Under Pennsylvania law, interpretation of an insurance contract is a question of law that is properly decided by the Court. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997). The general rule is that an insured must demonstrate that a claim is within a policy's coverage provisions, but an insured must prove any policy exclusions that apply. See New Castle County v. Hartford Accident and Indemnity Co., 933 F.2d 1162, 1181 (3d Cir. 1991) and Northern Ins. Co. v. Aardvark Assocs., 942 F.2d 189, 195 (3d Cir. 1991).[3] A court should read the policy provisions to avoid ambiguities, if

---

[3]    New Castle County v. Hartford Accident and Indemnity Co., 933 F.2d 1162, 1181 (3d Cir. 1991), cert. denied, 113 S.Ct. 1846 (1993), was abrogated on a different point of law in the case of Northern Ins.

possible, and not expand policy language to create ambiguities. <u>St. Paul Fire and Marine</u>

<u>Ins. V. U.S. Fire Insurance Co.</u>, 655 F.2d 521, 524 (3d Cir. 1981). Where the terms of the

policy are clear and unambiguous, the general rule in Pennsylvania is to give effect to the

plain language of the agreement. <u>Bensalem Tp. v. International Surplus Lines Ins. Co.</u>, 38

F.3d 1303, 1309 (3d Cir. 1994).

## IV.    ARGUMENT

On the date of the alleged occurrence of the fire, Plaintiff was insured under a

Commercial Property Coverage Form. Plaintiff's Complaint states that Walter Beck

Corporation, the named insured on the policy, did business under the Pennsylvania

registered fictitious name of "The Rainbow Inn" and owned and operated a restaurant

known as the Rainbow Inn located at Route 59, Marshburg, McKean County,

Pennsylvania. The Complaint further states that on December 5, 2003, the Rainbow Inn

and its contents were destroyed by fire (complaint paragraphs 2 and 10). On or about the

date of the fire, Plaintiff gave its first notice of a claim, pursuant to the policy, based upon

the alleged loss of the structure which housed the Rainbow Inn and the contents thereof

which were allegedly lost in the fire.

Defendants raise the following arguments in support of Defendants' Motion for

Summary Judgment:

> 1.    The conditions for coverage under the commercial property
>       Protective Safeguards Endorsement have not been satisfied.

<u>Co. v. Aardvark Assocs.</u>, however that same case also went on to state that under Pennsylvania law the
insured bears the burden of persuasion with regard to a loss being within the coverage provided by a policy.
942 F.2d 189, 195 (3d Cir. 1991).

2.      The alleged claim is also expressly excluded as Plaintiff "knew of [a] suspension or impairment in [a] protective safeguard listed in the [policy] schedule and failed to notify [Defendant] of that fact"; or Plaintiff "failed to maintain [a] protective safeguard listed in the [policy] schedule…over which [Plaintiff] had control, in complete working order.

3.      Plaintiff's proof of claimed damages resulting from the fire are without demonstrable insurable interest if recovery for real estate not owned is sought and without reasonable support for business personalty.

4.      The Defendant American Economy Insurance Company did not deny the Plaintiff's benefits in bad faith because it had a reasonable basis to deny such benefits.

5.      The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1, et. seq., is inapplicable to this matter.

6.      The only proper Defendant to this matter is American Economy Insurance Company, which was the insurer that issued the policy. All other Defendants should be dismissed.

Defendants have raised additional defenses in the pleadings of this matter, which they hereby reserve.

**1.      The conditions of coverage under the Commercial Property Protective Safeguards Endorsement have not been satisfied.**

Generally the burden is upon an insured to show that a loss is covered by a policy of insurance. Terra Industries, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA, 383 F. 3d 754, 760 (8th Cir. 2004). The Terra Court discussed the differences between phrases in policies that limit coverage as conditions precedent to coverage or exclusions from coverage. One example of a condition precedent is the requirement that an insured notify the insurer of a claim immediately or as soon a practical.  The burden is upon the insured to demonstrate substantial compliance with this condition.  The Court explained that conditions precedent frequently involve something an insured must do, while exclusions

involved something that the insured must not so. This justifies the rationale for requiring an insured show he or she took some affirmative action upon which insurance was conditional. Id, at 760. Conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to usual judicial remedies. American Eagle Insurance Co. v. Rutland Area Flyers, Inc., 949 F. Supp. 243, 249 (Vermont 1996). The insured bears the burden of proof to show the performance or occurrence of a condition precedent. Id. See also Bruinsma v. State Farm Fire & Cas. Co.,410 F. Supp. 2d 628, 633 (W.D. Michigan 2006). In In re Texan Eastern Transmission Corporation PCB Contamination Insurance, 870 F. Supp. 1293 (MD Pa 1992), the Court applying Texas law, ruled that the failure to perform a condition precedent constituted an absolute defense to liability.

The American Economy Commercial Property Coverage Form includes a condition of coverage as follows:

> "PROTECTIVE SAFEGUARDS
> a.    As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
> b.    The protective safeguards to which this endorsement applies are identified by the following symbols:
> … 'P-8' Commercial Cooking Protection – A U.L. listed automatic fire suppression system installed for the protection of cooking and ventilating equipment, including plenums, exhaust ducts and hood over cooking appliances. The suppression system must be serviced by an independent contractor on a SEMI ANNUALLY basis. The ventilating system, including plenums, exhaust ducts, roof vent and hood over cooking appliances must be cleaned by an independent contractor on a QUARTERLY basis. (Exhibit B)

The plain language of this condition of coverage contained in the Protection Safeguards Endorsement requires that the policyholders do several things to obtain coverage:

1.    That an automatic fire suppression system be present over kitchen cooking equipment;

2.    That the automatic fire suppression system be U.L. listed;

3.    That the automatic fire suppression system be serviced by an independent contractor;

4.    That the service of the automatic fire suppression system take place on a semi annual basis;

5.    That the ventilating system of the kitchen cooking equipment be cleaned by an independent contractor; and

6.    That the ventilating system of the kitchen equipment be cleaned on a quarterly basis.

Following Plaintiff's notification to Defendant American Economy of its claim for losses resulting from the fire, Defendant promptly began to investigate the claim. As part of its investigation, Defendant made inquiries as to whether Plaintiff had met the condition of coverage listed above. A representative of Plaintiff, Harold Beck, verbally told a representative of Defendant American Economy that Plaintiff had removed its automatic fire suppression system in 1996 or 1997 and also stated that the lack of a fire suppression system was in writing in a 2003 Restaurant Supplement. (Exhibit P, of claim notes). Defendant, thereafter, denied the claim.

Only after this denial, did Mr. Beck recant his earlier statement that the fire suppression system had been removed. Following this recant, Defendant requested that Plaintiff provide the name of the independent contractor who serviced the system. As Plaintiff had denied the existence of any documentary or physical evidence of the system which it claimed to have in place, stating that the evidence had been destroyed in the fire, Defendant was interested in contacting the independent contractor, who would have had information concerning the system, its components, and the service record thereon.

Plaintiff ignored and/or refused to answer all requests by Defendant to provide information regarding the independent contractor who serviced the alleged suppression system. (letters of February 11, 2004, June 23, 2004, and July 23, 2004, exhibits C, D, and E)  Only after suit was filed in this matter and one and one half years following the fire did Plaintiff finally provide an affidavit from Harold Beck's brother in which Beck's brother stated that a fire suppression system had been at the Rainbow Inn and that he provided inspections of the system. Were there a halon suppression system at the Rainbow Inn on the date of fire even though Plaintiff had previously denied one existed, verbally and in writing, it could not satisfy the requirement of being a U.L. listed system, as halon was not approved for commercial cooking extinguishment.  (Affidavit of James F. Valentine, exhibit H)  Accordingly, the Protective Safeguards Endorsement condition to coverage is unsatisfied.

Another condition of coverage was the required semi annual service on the fire suppression system by an independent contractor and quarterly maintenance. Plaintiff has provided no contract for service, no invoices for service, no service records, no records of purchase of the equipment, no service orders, no dates of service, and no records of payment for the alleged service or maintenance.

Defendant, therefore, had reason to believe the conditions precedent to coverage were not met regarding the existence of a suppression system, U.L. listing, and service and maintenance of the alleged automatic fire suppression system by an independent contractor.

While it may not have been published, in Mangiacotti v. U.S. Liability Ins. Co., 61 MASS. App. Ct. 1124, 814 N.E. 2d 763 (2004), the Court held that a requirement of

the maintenance of functional smoke detectors at a place of business was a condition precedent to the recovery of a claim on a fire.  The Court further determined that there was no genuine issue of material fact that would render the condition precedent unenforceable, and, as such, summary judgment was proper on the plaintiff's breach of contract claim. In the matter at hand, before suit, Plaintiff refused to provide any information regarding the fire suppression system.  Before suit and during investigation the proof now is that the Rainbow Inn lacked a system; had it one, the alleged system was not U.L. listed or maintained by an independent contractor on a semi annual and quarterly basis.  Therefore, plaintiff failed to meet its condition precedent under the commercial property form. Defendant should not, as a matter of law, be held liable for a breach of the contract, when satisfaction of a condition precedent is lacking.  Therefore, Summary Judgment should be granted for Defendants and against Plaintiff on Plaintiff's Breach of Contract Claim.

**2.    The alleged claim is expressly excluded as Plaintiff "knew of [a] suspension or impairment in [a] protective safeguard listed in the [policy] schedule and failed to notify [Defendant] of that fact"; or Plaintiff "failed to maintain [a] protective safeguard listed in the [policy] schedule…over which [Plaintiff] had control, in complete working order."**

In the alternative, the policy also contains an exclusion regarding protective devices required by the endorsement. It reads:

> We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:
> a.    Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> b.    Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order."  (Exhibit B)

The plain language of the above exclusion dictates that if there is any suspension or impairment of a protective device listed in the policy, such as the automatic fire suppression system, the insured is to immediately inform the insurance company. The same admissions by plaintiff as to the lack of a system and lack of a U.L. listed system, with proper servicing and maintenance that support the failure of the condition precedent to coverage under the Endorsement, activate and support this exclusion. Summary Judgment should, therefore, be granted in favor of Defendants and against Plaintiff as to Plaintiff's Breach of Contract claim.

### 3. Plaintiff's proof of claimed damages resulting from the fire are without demonstrable insurable interest if recovery for real estate not owned is sought and without reasonable support for business personalty.

Plaintiff has made a claim for damages based on the loss of the structure which housed the Rainbow Inn and the contents thereof, including food, alcohol, and equipment. To the extent Plaintiff seeks to claim the value of the structure which housed the Rainbow Inn, it must be denied. It is textbook law that property insurance insures one to the extent of one's legal interest in the subject property.  44 Am. Jur. 2d Insurance §943. Plaintiff has provided documentation in discovery which shows that the structure which housed the Rainbow Inn was actually owned by the individuals, Sharon Beck and Harold Beck. They, in turn, leased the structure to Plaintiff Walter Beck Corporation. This arrangement was in place at the time of the fire, as evidenced by the Lease Agreement attached to the Appendix as Exhibit J. The named insured on the policy is the Walter Beck Corporation. As the Walter Beck Corporation did not own the structure which housed the Rainbow Inn and was destroyed in the fire, Plaintiff cannot claim the loss of the structure under the insurance policy. Sharon and Harold Beck, the actual

individual owners of the structure were not named insureds on the policy. Therefore no claim for damages can be made by Plaintiff for the loss of the structure which housed the Rainbow Inn.

Plaintiff makes an additional claim for the loss of the contents of the Rainbow Inn, including food and beer, liquor and equipment. This claim is supported only by inventory lists (exhibits K, K1, and K2) prepared by a representative of Plaintiff, Sharon Beck. By Mrs. Beck's own admission at her deposition, these lists were prepared purely from memory with the aid of certain catalogues to determine the costs of the individual items. Mrs. Beck performed little to no investigation as to what items were actually on the property at the time of the fire. She made no attempt to contact the vendors and/or suppliers of the alleged stock, fixtures and equipment. By subpoena, Defendant obtained tax returns for the Walter Beck Corporation doing business as the Rainbow Inn. The inventories provided, now having been compared to the tax returns, show that the tax records do not support the alleged inventory values provided by Plaintiff.  (report of Horovitz, Rudoy and Roteman exhibit M). Without accurate documentation of the alleged losses of inventory, Defendant was without recourse, but to deny Plaintiff's claim. Defendant was therefore not in breach of the insurance contract when it denied Plaintiff's claim and should be granted Summary Judgment in its favor as to the Breach of Contract claim.

**4.    The Defendant American Economy Insurance Company did not deny the Plaintiff's benefits in bad faith because it had a reasonable basis to deny such benefits.**

There is no common law remedy in Pennsylvania for the alleged bad faith conduct of an insurer. <u>D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance</u>

Company, 494 Pa. 501, 507, 431 A.2d 966, 970 (1981). A claim of bad faith is governed by 42 Pa. C.S.A. § 8371, which reads as follows:

> §8371. Actions on insurance policies
>
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Assess court costs and attorney fees against the insurer.

Section 8371 does not define bad faith. There is no legislative history that specifically concerns the statute, which was enacted as part of a comprehensive insurance bill. Hyde Athletic Industries, Inc. v. Continental Casualty Company, 969 F. Supp. 289 (E.D. Pa. 1997) (citing Younis Brothers v. CIGNA Worldwide Insurance Company, 899 F. Supp. 1385, 1396 (E.D. Pa. 1995), aff'd 91 F.3d 13 (3d Cir. 1996), cert. denied, 519 U.S. 1077 (1997), 117 S. Ct. 737, 136 L. Ed. 2d 677 (1977)).

In Polsein v. Nationwide Mutual Fire Insurance Company, 23 F. 3d 747, 751 (3d Cir. 1994), the Court of Appeals adopted the following definition of "bad faith" set forth in Black's Law Dictionary 139 (6th Ed. 1990):

> Bad faith on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Bad faith on the part of an insurer must be proved by clear and convincing evidence. Lowden v. Aetna Casualty and Survey Company, 389 Pa. 459, 134 A.2d 223, 229 (1957); Polselli v. Nationwide Mutual Fire Insurance Company, 23 F.3d at 750; United States Fire Insurance company v. Royal Insurance Company, 759 F.2d 306, 309 (3d Cir. 1985). Thus, in order to recover for a claim of bad faith, plaintiff must demonstrate by clear and convincing evidence that the insurer did not have a reasonable basis for denying the claim, and that it knowingly or recklessly disregarded the lack of such reasonable basis. Terletsky v. Prudential Property and Casualty Insurance Company, 437 Pa. Super. 108, 125, 649 A.2d 680 (1994)

The plaintiff must also demonstrate that the insurer's refusal to pay the disputed proceeds was frivolous or unfounded. Woody v. State Farm Fire & Casualty Co., 965 F.Supp. 691 (E.D. Pa. 1997). For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty such as good faith and fair dealing, through some motive of self interest or ill will. Terletsky, 437 Pa. Super. At 125. See also, Turner Construction Company v. First Indemnity of America Insurance Co., 829 F.Supp. 752, 763 (E.d. Pa. 1993), affirmed 22 F.3d 303 (3d Cir. 1994).

Defendant can also prevail at summary judgment by affirmatively demonstrating a reasonable basis for its actions. Quaciari, 998 F. Supp. At 580. The finding of a reasonable basis to deny a claim precludes a bad faith claim. Bad faith cases are commonly decided at the summary judgment level, with the court determining, as a matter of law, that the insurer had a reasonable basis for its actions. Id. Citing Jung v. Nationwide Insurance Company, 949 F. Supp. 353 (E.D. Pa. 1997); Dearry v. Liberty

Mutual Insurance Company, 1997 U.S. Dist. Lexis 3091, 1997 WL 129099 (E.D.Pa.);

Leo v. State Farm Insurance Company, 939 F. Supp. 1186 (E.D. Pa. 1996).

The courts have consistently found as a matter of law that an insurer does not act

in bad faith by investigating and litigating legitimate issues of coverage. Hyde Athletic

Industries, Inc. v. Continental Casualty Company, 969 F./Supp. 289 at 307 (E.D. Pa.

1997).  In Hyde, the court reasoned:

> While an insurance company has a duty to accord the interests of
> its insured the same consideration it gives its own interests, an
> insurer is not "bound to submerge it own interest in order that the
> insured's interests may be made paramount", Cowden v. Aetna
> Cas. and Surety Co., 389 Pa. 459, 134 A.2d 223, 228 (1957), and an
> insurer does not act in bad faith by investigating and litigating
> legitimate issues of coverage.

Id. See also, Kosierowski, supra, 51 F.Supp. 2d at 588.

In Quaciari, liability was inconclusive and plaintiff demanded arbitration before

submitting key medical records to the insurer.  The court held as a matter of law that the

inconclusiveness of liability and damages provided a reasonable basis for the insurer to

require further information.  See also, Kosierowski, Supra, at 594; Brockville Mining v.

Selective Insurance Co.,  74 F.Supp. 2d 477 (W.D. Pa 1999) (Court found standard flood

insurance carrier did not act in bad faith where insurer had no duty to indemnify insured

due to insured's failure to timely submit proof of loss); Alberici v. Safeguard Mutual

Insurance Company, 444 Pa. Super. 351, 360-61, 664 A.2d 110, 115 (1995) (Court

affirmed trial court's decision dismissing the bad faith claim, ruling that complex issues

involved justified the insurer's initial denial of claim and "protracted" litigation).

Likewise, bad faith cannot be found where the insurer's conduct is in accordance with a

reasonable but incorrect interpretation of the policy and law.  Bostick, 56 F.Supp. 2d 580 (E.D. Pa. 1999).

Since plaintiff's evidentiary burden at trial is higher that the preponderance of the evidence standard, plaintiff's burden in opposing summary judgment is higher as well. Quaciari v. Allstate Insurance Company, 998 F. Supp. 578 (E.D. Pa. 1998) citing Anderson, 477 U.S. at 254.  (Court held in ruling on a motion for summary judgment that "the judge must view the evidence presented through the prism of the substantive evidentiary burden.")  Thus, the plaintiff must come forward with clear and convincing evidence that the insurer acted in bad faith to meet its substantive evidentiary burden.  Id.

First, the policy conditions and/or exclusions previously discussed and the reports of investigation by three independent companies show a good faith basis for denying Plaintiff's claim. As such, Defendant's refusal of the claim was neither frivolous, nor was it unfounded. It also appears to be supported in law. Argument Section 1, supra.

Defendant American Economy's investigation of the claim is well documented. The claim was assigned to a claims adjuster who promptly visited the site of the fire and interviewed representatives of Plaintiff. At that same time, Defendant American Economy hired an independent investigator to determine the cause and origin of the fire. Upon interviewing that Plaintiff's representative and being told that the fire suppression system had been removed from the Rainbow Inn prior to the fire; receiving a report from the independent fire investigator which made no mention of a fire suppression system or remnants thereof; obtaining written confirmation of the lack of a system, Defendant denied the claim. It was only after denial of the claim that Plaintiff's representative sent letters to Defendant claiming to have had a fire suppression system in place. Defendant's

subsequent requests for documentation regarding the system or for Plaintiff to simply provide the name of the independent contractor who serviced the system in order to support Plaintiff's reversal of position were completely ignored by Plaintiff. As the investigation continued, evaluation of the claim showed it to be reasonable to decline:

- Harold Beck verbally confirmed a fire suppression system was removed well before the fire.

- Harold Beck confirmed that in a written survey Plaintiff stated that the restaurant had no system.

- The records of Sundahl & Co, by affidavit of Marta McHale confirm written denial of a fire suppression system.

- Deposition testimony of Sharyn Beck is that she knew a system was required.

- Affidavit of James F. Valentine confirms, that Halon was not U.L. listed for commercial cooking fire extinguishment.

- Affidavits of Churchwell Fire Consultants, Inc. offer that no fire suppression system remnants were observed.

- Accountant study shows Plaintiff's inventories inconsistent with tax records.

- Deposition testimony of Sharyn Beck is that the Plaintiff Corporation never owned the real estate destroyed by fire.

Denial of the claim by Defendant was supported factually and was reasonable as a matter of law.

**5.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1, et. seq., is inapplicable to this matter.**

Plaintiff's Complaint attempts to raise a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPA") at 73 P.S. 201-1, et. seq. This act is inapplicable to this matter for two reasons. First, the UTPCPA's application in Pennsylvania law is limited to claims which are legitimately of a private consumer nature and not for business purposes. Secondly, the claim of a denial of coverage by an insurer

is not actionable under the UTPCPA as it amounts to alleged nonfeasance rather than misfeasance.

In <u>Waldo v. North American Van Lines</u>, 669 F.Supp 722 (W.D. Pa. 1987), this Honorable Court stated that "the obvious intent of this language [UTPCPA §201-9.2][4] is to restrict claims brought under the [UTPCPA] to those which are legitimately of a consumer nature." <u>Id.</u> at 725. The Court held that a truck driver's purchase of a tractor and insurance coverage was solely for use in his trucking business and thus was not a consumer purchase under the UTPCPA. In <u>David Jeffrey Ltd. v. Lucente</u>, 7 D & C 4th 558, 1990 affirmed 598 A.2d 1336, 414 Pa. Super. 657, the court held that a business may not state a claim under the UTPCPA against an insurance agent and an insurance company because the insurance coverage at issue was for business rather than personal use. In the case at hand, Plaintiff clearly is not a consumer as defined by the UTPCPA. The Plaintiff is a corporate entity and clearly purchased the policy for the sole protection of the Walter Beck Corporation. The Plaintiff has no right of recovery for insurance claim denial regarding commercial use of property under the UTPCPA. The deposition taken of Sharyn Beck , corporate officer and designee of the Walter Beck Corporation, confirmed the obvious. That is to say that the policy of insurance in question was for commercial purposes.

Additionally, Plaintiff's entire claim in this matter is essentially based on the denial of the claim by Defendant American Economy. Under Pennsylvania law, an

---

[4] UTPCPA §201-9.2 states "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers and ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than on hundred dollars ($100), and may provide such additional relief as it deems necessary or proper."

insurer may only be held liable under the UTPCPA if there is a form of misfeasance. An insurer is not liable under the UTPCPA for a simple failure to perform, which amounts to nonfeasance. <u>Aetna Casualty and Surety Co. v. Ericksen</u>, 903 F.Supp 836, 841 (M.D. Pa. 1995); see also <u>Parasco v. Pacific Indemnity Co.</u>, 920 F.Supp. 647 (E.D. Pa. 1996).

For these reasons stated above, summary judgment should be entered in Defendants' favor and against Plaintiff on Plaintiff's claims under the UTPCPA.

**6.    The only proper Defendant to this matter is American Economy Insurance Company, which was the insurer that issued the commercial property policy. All other Defendants should be dismissed.**

The only proper Defendant to this matter is American Economy Insurance Company. American Economy issued the insurance policy in question and subsequently conducted the investigation which resulted in the denial of Plaintiff's claims for losses due to the fire. American Economy is the only Defendant which is named as a party to the insurance contract. Safeco Corporation is a holding company and does not issue policies of insurance. While American States Insurance Company does issue insurance policies, it is an independent entity and did not issue the policy in question in this matter. The testimony of claims representative Paul Smith of American Economy at his deposition explained the relationship of the defendants.  (Exhibit R) For these reasons, Defendants Safeco Corporation and American States Insurance Company should be granted summary judgment as to all counts of Plaintiff's Complaint.

IV.     **CONCLUSION**

For the foregoing reasons, it is requested that this Honorable Court enter summary judgment in favor of the Defendants, Safeco Corporation, American Economy Insurance Company and American States insurance Company, and against Plaintiff, Walter Beck Corporation on all of the claims in Plaintiff's Complaint.


Anstandig, McDyer & Yurcon, P.C.

BY: s/ Daniel P. McDyer
Daniel P. McDyer, Esquire
Pa. I.D. #19854
Attorney for Defendants

1300 Gulf Tower – 707 Grant Street
Pittsburgh, PA 15219
(412) 765-3700