## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER BECK CORPORATION d/b/a THE RAINBOW INN, | ) ) ) | CIVIL DIVISION |
| Plaintiff, | ) ) | Civil Action No. 04-348 - Erie |
| vs. | ) ) | JUDGE MAURICE B. COHILL, JR. |
| SAFECO CORPORATION, AMERICAN ECONOMY INSURANCE COMPANY, and AMERICAN STATES INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

### PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS PURSUANT TO RULE 37

Walter Beck Corporation d/b/a The Rainbow Inn ("Beck Corp."), by and through its undersigned counsel, hereby files this Motion for Discovery Sanctions Pursuant to Rule 37 and, in support thereof, avers as follows:

1.    This Motion is being filed by Beck Corp. seeking sanctions for continued failures by the Defendants, Safeco Corporation, American Economy Insurance Company, and American States Insurance Company (collectively "Safeco"), to produce certain documents (the "Objectionable Documents"), including, but not limited to, Safeco's electronic claims file, during the course of discovery despite Beck Corp.'s repeated oral and written requests. Safeco's conduct has significantly prejudiced Beck Corp. and the greatly impaired progression of this litigation.

2.    Beck Corp. conducted business under the Pennsylvania registered fictitious name of "The Rainbow Inn" and operated a restaurant known as the Rainbow Inn located at Route 59, Marshburg, McKean County, Pennsylvania 16735 ("the Rainbow Inn"). (Docket No. 1, Complaint, ¶2).

3.    For and in consideration of a valuable premium paid by Beck Corp., an "Ultra Series Package Policy" to Beck Corp. numbered 02CC771900 and providing coverage for the period of April 23, 2003 to April 23, 2004 ("Policy") was issued to Beck Corp. as a renewal of a prior policy issued by the Defendants.  (Complaint, ¶8; Docket No. 12, Amended Answer, ¶5).

4.    On December 5, 2003, while the Policy was in effect and during the Policy period, the Rainbow Inn and its contents were destroyed by fire (the "Fire").   The Fire completely destroyed the Rainbow Inn and its contents such that it could not be repaired and its contents could not be salvaged.

5.    Despite the above, Safeco has refused to pay Beck Corp. any benefits under the Policy.

6.    Consequently, Beck Corp. initiated this case against Safeco by filing a Complaint (Docket No. 1) on December 2, 2004 alleging claims for, *inter alia*, breach of contract and bad faith.  For ease of reference, a true and correct copy of the Docket in this case is attached hereto as Exhibit "A," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

7.    On or about June 30, 2005, which was six (6) days after the Court-ordered deadline of June 24, 2005, Safeco produced certain documents pursuant to Rule 26(a).  However, the Objectionable Documents, including but not limited to Safeco's electronic claims file, were not produced at that time.   In fact, a listing of the documents/categories of documents "...in Defendants' possession that may be used by the Defendant to support the basis for the defenses asserted in this action" is included in Safeco's Rule 26(a) Disclosures, a true and correct copy of which is attached hereto as Exhibit "B," made a part hereof and incorporated by reference as though the same were fully set forth at length herein, and said listing does not include the

Objectionable Documents, most notably omitting any reference to Safeco's electronic claims file.

8.     Thereafter, on or about July 8, 2005 Beck Corp propounded its First Set of Interrogatories and Request for Production of Documents ("First Discovery Requests") upon Safeco, a true and correct copy of which is attached hereto as Exhibit "C," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

9.     Specifically, Beck Corp.'s First Discovery Requests requested, *inter alia*, information and documentation that unquestionably would encompass the Objectionable Documents, including but not limited to Safeco's electronic claims file, as follows:

## INTERROGATORIES

3.     Identify any and all reasons, bases, facts, documents, and/or arguments concerning and/or allegedly supporting Safeco's refusals to indemnify Beck and/or provide coverage for losses sustained as a result of the Fire.

5.     Identify any and all documents reviewed and/or relied upon in making your decision to refuse to indemnify Beck and/or provide coverage for losses sustained as a result of the Fire.

12.     Identify each and every instance in which, the manner in which, the date on which, and by whom "the Defendants were advised by the Plaintiff that a fire suppression system had been removed and never reinstalled in the subject premises" as alleged in paragraph 9 of the Amended Answer and Affirmative Defenses.

13.     Identify each and every fact and document concerning or that you contend supports your allegation in paragraph 16 of the Amended Answer and Affirmative Defenses that "Plaintiff has failed to perform all of its obligations under the policy allegedly issued to it by the American Economy Insurance Company."

## DOCUMENT REQUESTS

1.     All documents concerning, identified in, and/or requested to be identified in the preceding interrogatories.

2.    All documents relied upon in preparing your answers to the preceding interrogatories.

3.    All documents concerning Beck, the Rainbow Inn, and/or the Fire.

4.    Any and all documents concerning Safeco's reasons, defenses, and/or justifications for denying Beck's claims for coverage under the Policy.

5.    Any and all documents concerning, generated by or utilized in any investigation of Beck's claims by Safeco, its agents, representatives, and/or employees.

6.    All documents concerning or related to Safeco's answers to the preceding interrogatories.

7.    All documents relating to, concerning, and/or allegedly supporting the statements, allegations and contentions in Safeco's pleadings in this Litigation.

8.    All documents concerning or supporting any defenses asserted or intended to be asserted by Safeco in this action against the claims asserted by Beck.

9.    All claims files or documents concerning Beck, the Rainbow Inn, and/or the Fire.

10.    All documents concerning Beck's claims for coverage under the Policy.

11.    All e-mails or other electronic communications or documents concerning Beck, the Rainbow Inn, the Fire, Beck's claims for coverage under the Policy, and/or the Litigation.

12.    All documents concerning communications and/or correspondence between Safeco and Beck.

13.    All documents concerning communications and/or correspondence between Safeco and any person or entity concerning Beck, the Rainbow Inn, the Fire, Beck's claims for coverage under the Policy, and/or the Litigation.

\* \* \*

16.    All documents concerning communications and/or correspondence between and/or among Safeco, its employees, managers, agents, and/or representatives concerning Beck, the Rainbow Inn, the Fire, Beck's claims for coverage under the Policy, and/or the Litigation.

17.    All documents concerning communications and/or correspondence between Safeco and any person or entity concerning the Policy and/or coverage provided under the Policy.

18.    Any and all documents which you intend to introduce as exhibits at the trial of this Litigation.

19.    All documents concerning the allegations of Safeco's pleadings filed in this Litigation.

* * *

24.     Any documents concerning your contention in paragraph 9 of the Amended Answer and Affirmative Defenses that "the Defendants were advised by the Plaintiff that a fire suppression system had been removed and never reinstalled in the subject premises."

25.     Any documents concerning your contention in paragraph 16 of the Amended Answer and Affirmative Defenses that "Plaintiff has failed to perform all of its obligations under the policy allegedly issued to it by the American Economy Insurance Company."

10.     On August 22, 2005, having received no response from Safeco or request for extension of time, Beck Corp.'s counsel requested that Safeco produce responses to the First Discovery Requests immediately.  A true and correct copy of Beck Corp.'s counsel's August 22, 2005 letter to Safeco's counsel is attached hereto as Exhibit "D," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

11.     Following an August 22, 2005 telephone conversation between counsel of record, Safeco's counsel agreed to provide responses to the First Discovery Requests no later than September 2, 2005.  This telephone conversation was memorialized via e-mail that same day, a true and correct copy of which is attached hereto as Exhibit "E," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

12.     On September 27, 2005, having received no response of any kind from Safeco despite three (3) weeks having passed since the date by which Safeco's responses to the First Discovery Requests had been promised, Beck Corp.'s counsel again e-mailed Safeco's counsel requesting responses to the First Discovery Requests, a true and correct copy of which is attached hereto as Exhibit "F," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.  In that e-mail, Beck Corp.'s counsel advised that if responses were not provided by September 30, 2005, they would be forced to file a motion to compel with this Court.

13.     On October 3, 2005, still having received no response of any kind from Safeco with respect to Beck Corp.'s First Discovery Requests, Beck Corp. filed a Motion to Compel (Docket No. 13) with respect to Safeco's responses to the First Discovery Requests.

14.     On October 26, 2006, this Court entered an Order granting Beck Corp.'s Motion to Compel and requiring, "...full and complete responses..." to Beck Corp.'s First Discovery Requests no later than November 11, 2005.  A true and correct copy of this Court's October 26, 2005 Order is attached hereto as Exhibit "G," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

15.     In response, on or about November 7, 2005, Safeco produced its Objections and Responses to the First Discovery Requests, a true and correct copy of which is attached hereto as Exhibit "H," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

16.     The Objectionable Documents, including but not limited to Safeco's electronic claims file, despite the fact that they were obviously in existence and responsive to the required Rule 26(a) Disclosures, the First Discovery Requests and this Court's Order, were neither identified in nor produced with Safeco's Responses to the First Discovery Requests.

17.     Thereafter, on or about May 31, 2006, Safeco changed its counsel of record (Docket No. 20).  In an effort to ensure that all of the documents requested of Safeco and all relevant documents had been produced, on June 29, 2006, Beck Corp. propounded its Second Set of Interrogatories and Request for Production of Documents ("Second Discovery Requests").  A true and correct copy of the Second Discovery Requests is attached hereto as Exhibit "I," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

18.    Specifically, Beck Corp.'s Second Discovery Requests requested, *inter alia*, information and documentation that unquestionably would encompass the Objectionable Documents, including but not limited to Safeco's electronic claims file, as follows:

## INTERROGATORIES

1.    Identify each and every interview, investigation, inquiry, study, analysis or other action undertaken by the defendants or on the defendants' behalf regarding the presence or absence of a fire suppression system in the Rainbow Inn, including:

(a)    The date of each such interview, investigation, inquiry, study, analysis or other action;

(b)    The person and/or entity that performed each such interview, investigation, inquiry, study, analysis or other action;

(c)    The date of each such interview, investigation, inquiry, study, analysis or other action;

(d)    The location of each such interview, investigation, inquiry, study, analysis or other action;

(e)    The subject matter of each such interview, investigation, inquiry, study, analysis or other action;

(f)    The result of each such interview, investigation, inquiry, study, analysis or other action; and

(g)    Any document(s) relating to each such interview, investigation, inquiry, study, analysis or other action.

2.    Identify each and every interview, investigation, inquiry, study, analysis or other action undertaken by the defendants or on the defendants' behalf regarding the value of the loss suffered by Beck as a result of the Fire, including:

(a)    The date of each such interview, investigation, inquiry, study, analysis or other action;

(b)    The person and/or entity that performed each such interview, investigation, inquiry, study, analysis or other action;

(c)    The date of each such interview, investigation, inquiry, study, analysis or other action;

(d)    The location of each such interview, investigation, inquiry, study, analysis or other action;

(e)    The subject matter of each such interview, investigation, inquiry, study, analysis or other action;

(f)    The result of each such interview, investigation, inquiry, study, analysis or other action; and

(g)    Any document(s) relating to each such interview, investigation, inquiry, study, analysis or other action.

## DOCUMENT REQUESTS

1.    All documents concerning, identified in, and/or requested to be identified in the preceding interrogatories and/or relied upon in preparing your answers to the preceding interrogatories.

\* \* \*

21.    Any documents concerning any valuation of the loss or damage caused by the Fire.

22.    All documents, files, and/or notes, whether in hard copy or electronic form, prepared by or, at any time, in the possession of Paul Smith concerning Beck or the Rainbow Inn.

19.    In response to the Second Discovery Requests, on or about July 28, 2006, Safeco served its Objections and Responses to Beck Corp.'s Second Discovery Requests, a true and correct copy of which is attached hereto as Exhibit "J," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

20.    Notably, Safeco's Objections and Responses to Beck Corp.'s Second Discovery Requests do not identify or provide copies of any of the Objectionable Documents, including but not limited to Safeco's electronic claims file.  In fact, in response to Document Request No. 22 of Beck Corp.'s Second Discovery Requests, Safeco responded in rather flippant fashion as follows:

**22.    All documents, files, and/or notes, whether in hard copy or electronic form, prepared by or, at any time, in the possession of Paul Smith concerning Beck or the Rainbow Inn.**

**ANSWER:**

**Subject to the general objections above, the documents in the possession of Paul Smith are believed to have been produced for plaintiff on 2 occasions.**

21.     Importantly, Paul Smith was Safeco claims adjuster who investigated Beck Corp's claim, interviewed witnesses, including Mr. Beck, reviewed and analyzed coverage issues, made the claims determination, and notified Beck Corp of Safeco's denial of coverage. In fact, he was the only representative produced for deposition in response to Beck Corp's Notice of Deposition of Safeco (though he was unable to testify regarding all designated matters).

22.     As of July 28, 2006, Safeco's had had numerous opportunities to produce the Objectionable Documents in: (1) Rule 26(a) Disclosures; (2) Responses to Beck Corp.'s First Discovery Requests as required by this Court's Order; and (3) Responses to Second Discovery Requests. Nevertheless, it failed to do so. Accordingly, Beck Corp. and its counsel understood that the Objectionable Documents, including but not limited to Safeco's electronic claims file and Paul Smith's notes, had either already been produced or simply did not exist.

23.     Pursuant to this Court's August 28, 2006 Order, discovery in this case formally closed on November 1, 2006 (Docket No. 23). It is important to note that discovery in this case was extended on three (3) separate occasions - December 14, 2005 (Docket No. 16), May 4, 2006 (Docket No. 18) and August 28, 2006 (Docket No. 23) - the last request for which was made solely by Safeco. Thus, discovery in this case formally ran from December 2, 2004 until November 1, 2006 - nearly two (2) full years.

24.     Due primarily to Beck Corp.'s ongoing difficulties in scheduling depositions with Safeco's counsel, the parties agreed to conduct certain depositions after the November 1, 2006 discovery deadline, those being the depositions of Harold and Sharyn Beck and Safeco's Rule 30(b)(6) designee, Paul Smith.

25.     Safeco's Rule 30(b)(6) designee(s) was originally noticed for deposition for May 23, 2006 through May 25, 2006, which deposition(s) did not take place, and then subsequently

re-noticed for November 7, 2006 at which time Paul Smith was deposed.  True and correct copies of the Notices of Deposition for the November 7, 2006 deposition of Safeco's 30(b)(6) designee(s) are attached hereto as Exhibit "K," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

26.    The Notices of Deposition for the November 7, 2006 deposition of Safeco's 30(b)(6) designee(s) specifically requested that said designee(s) bring with them, *inter alia*, the following documents:

> 1.    Any documents not previously produced in discovery in this case concerning or relating to the Policy, The Rainbow Inn, the Fire and/or Beck.
>
> 2.    Any documents not previously produced in discovery in this case concerning, generated by or utilized in any investigation of Beck's claims by any of the defendants, their agents, representatives, and/or employees.
>
> 3.    Any documents not previously produced in discovery in this case concerning or relating to any decision by you and/or the defendants regarding the plaintiff's claim for coverage under the Policy relating to the Fire.
>
> 4.    Any documents not previously produced in discovery in this case concerning Safeco's reasons, defenses, and/or justifications for denying Beck's claims for coverage under the Policy.

27.    At the November 7, 2006 deposition of Safeco's Rule 30(b)(6) designee, Paul Smith, neither Safeco, its counsel nor its designee produced any documents.

28.    Additionally, though no objection was made to the categories set forth in any of the relevant deposition notices, Mr. Smith was unable to testify regarding Safeco's underwriting and underwriting documents, which were produced in discovery, unlike the claims information and documents with which he was familiar.  Thus, Mr. Smith would not/could not testify about many of the documents produced, but was able to testify about matters to which the non-produced Objectionable Documents related.

29.    Furthermore, the issue of the completeness of the production of Safeco's electronic claims file came up during Mr. Smith's November 7, 2006 deposition.  Specifically:

*p. 105*

*Mr. Victoria: I didn't see a single note or anything in the electronic file that was produced to me by Mr. Smith. That seemed unusual to me, and given his testimony today, it seems even more unusual.*

*Mr. McDyer: We can go back and check that.*

*\*\*\*\*\**

*p. 107*

*Mr. McDyer: I was kind of operating under the impression that it had all been produced to you. I'll have to go back and rework it.*

*\*\*\*\*\**

*pp. 113-114*

*Mr. Victoria: The only thing I guess I'm going to put on the record is you guys are going to follow up in seeing if there are some Paul Smith electronic files out there, large loss report, whatever these other things are we talked about...*

*Mr. Mayer: (Nods head.)*

A true and correct copy of the relevant portions of Paul Smith's November 7, 2006 deposition is attached hereto as Exhibit "L," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

30.     It is also important to note that Beck Corp. was never provided an opportunity to depose a representative of any of the Safeco defendants with respect to underwriting, post-suit claims history or corporate financial information despite having noticed a corporate designee(s) with knowledge of these areas of inquiry. (*See* Exhibit "K").  Beck Corp. and its counsel were

advised by Safeco's counsel prior to Paul Smith's deposition that Paul Smith was knowledgeable as to all the areas of inquiry set forth in the aforementioned Notices of Deposition, but it became clear at his deposition that he in fact was not.

31.    Thereafter, having heard nothing from Safeco or its counsel in over three (3) weeks on the issue of the completeness of the production of Safeco's electronic claims file, on November 29, 2006, Beck Corp.'s counsel, in accord with the prior history and Safeco's pattern of behavior in this case, sent Safeco's counsel an e-mail inquiring whether they had determined if all the pertinent Safeco documentation had been produced.  A true and correct copy of Beck Corp.'s counsel's November 29, 2006 e-mail to Safeco's counsel is attached hereto as Exhibit "M," made a part hereof and incorporated by reference as though the same were fully set forth at length herein.

32.    Safeco's counsel never responded in any fashion to Beck Corp.'s counsel's November 29, 2006 e-mail.

33.    Pursuant to this Court's August 28, 2006 Order (Docket No. 23), all motions for summary judgment were to be filed by the parties no later than December 6, 2006.

34.    In light of the discovery taken in the case and the information and documentation produced by Safeco, Beck Corp.'s counsel prepared and filed on December 6, 2006 a Motion for Partial Summary Judgment and extensive accompanying documents as required by the Federal Rules of Civil Procedure and this Court's Local Rules (Docket Nos. 24-27).  While Beck Corp had desired to depose, at least, additional representatives regarding the underwriting history and post-suit claims handling (and reserved the right to do so), given the numerous discovery extensions and the dire financial condition of Beck Corp resulting from the Fire and Safeco's denial of coverage and based upon the information produced in discovery, Beck chose to proceed

in accordance with the Court's summary judgment deadline and undertook preparation of its motion and brief.

35.     However, sometime after the close of business on December 5, 2006 - the evening before motions for summary judgment were to be filed - Safeco's counsel delivered a box of more than Six Hundred (600) documents (Bates Nos. 0339-0944) to Beck Corp.'s counsel containing the Objectionable Documents, including but not limited to Safeco's electronic claims file.  Certain of these documents purport to detail conversations and communications between certain representatives of Safeco (including Paul Smith) and Beck Corp. as well as other information relevant to Beck Corp.'s claim.  Much of the information and documentation had never before been produced.

36.     Furthermore, on December 6, 2006, Safeco filed its own Motion for Summary Judgment and accompanying documentation (Docket Nos. 28-31).  These filings utilize a number of the Objectionable Documents, including but not limited to portions of Safeco's electronic claims file, that had never been produced during discovery and had only been provided to Beck Corp.'s counsel sometime on the evening before summary judgment motions were due to be filed.

37.     Quite understandably, Beck Corp.'s counsel was utterly shocked and dismayed at having received the aforementioned documents more than a month after the close of discovery, nearly a month after Paul Smith's deposition had been taken, and, effectively, on the date upon which the parties summary judgment motions were due with no advanced notice or warning from Safeco or its counsel.  This conduct is unjustifiable, unconscionable and highly prejudicial to Beck Corp. and its ability to litigate this case.

38.    Federal Rule of Civil Procedure Rule 37(c)(1) governs a party's failure to properly produce documentation:

**(c)  Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.**

**(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.**

Fed.R.Civ.P. 37(c)(1).

39.    With respect to the potential sanctions for violating Rule 37(c)(1), Federal Rule of Civil Procedure Rule 37(b)(2)(A), (B), and (C) state as follows:

**(b) Failure to comply with order.**

**(2) Sanctions by Court in Which Action Is Pending.**

**…the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:**

**(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;**

**(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;**

> **(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party…**

Fed.R.Civ.P. 37(b)(2)(A), (B), and (C).

40.     Whether to impose sanctions upon a party pursuant to Fed. R. Civ. P. 37, as well as the nature of the sanctions, is a matter entrusted to the discretion of the district court.  *See, e.g. National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976) (per curiam); *George V. Hamilton, Inc. v. Everett Company, Inc.,* 104 F.R.D. 106, 108 (W.D.Pa. 1985).

41.     The United States Court of Appeals for the Third Circuit has emphasized "the extreme nature of a dismissal with prejudice or default judgment." *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 867 (3d Cir. 1984); *In re MacMeekin,* 722 F.2d 32, 35 (3d Cir. 1983).  Therefore, the Court of Appeals has stated that the imposition of such drastic sanctions "should be reserved for those cases where there is a clear record of delay or contumacious conduct" by the disobedient party.  *Poulis,* 747 F.2d at 866, (quoting *Donnelly v. Johns-Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir. 1982)); *George V. Hamilton,* 104 F.R.D. at 108-109.

42.     Moreover, since 1982, the Court of Appeals has required that any dismissal or default judgment entered pursuant to Fed. R. Civ. P. 37 "be accompanied by some articulation on the record of the Court's resolution of the factual, legal and discretionary issues presented," so that the Court of Appeals, if called upon to do so, may "determine whether the relevant factors were considered and assigned appropriate weight in making the decision." *In re MacMeekin,* 722 F.2d at 34-35 (quoting *Quality Prefabrication Inc. v. Daniel J. Keating Co.,* 675 F.2d 77, 80 (3d Cir. 1982)).

43.    The Court of Appeals for the Third Circuit has articulated six factors to be considered and weighed by the district courts in determining whether the most extreme sanctions are appropriate:

(1) the extent of the *party's* personal responsibility;

(2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a *history* of dilatoriness;

(4) whether the conduct of the party or the attorney was *willful* or in *bad faith;*

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(6) the *meritoriousness* of the claim or defense.

*Poulis,* 747 F.2d at 868 (emphasis in original).  *See Scarborough v. Eubanks,* 747 F.2d at 874-878; *George V. Hamilton*, 104 F.R.D. at 108-109.  It must be noted, however, that under this rule, a trial court does not have to examine all of these factors to warrant dismissal.  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 919 (3d Cir. 1992); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988), cert. denied, 488 U.S. 1005, 102 L. Ed. 2d 777, 109 S. Ct. 786 (1989).

44.    In analyzing the first *Poulis* factor, it is clear that Safeco had in its possession, custody and control the Objectionable Documents, including but not limited to portions of Safeco's electronic claims file.  In fact, these documents in large part were created and/or commissioned by Safeco, particularly the electronic claims file, which is comprised of information and documentation that only Safeco possessed.  Nevertheless, Safeco failed to produce these documents at any point through the progression of discovery in this case despite numerous, express and repeated attempts by Beck Corp. requesting them to do so.  More importantly, Safeco's failure to produce these documents directly violates this Court's October

26, 2005 Order (Docket No. 14), which was issued in response to Beck Corp.'s Motion to Compel (Docket No. 13). In furtherance of this point, Safeco and its counsel obviously had access to these documents well in advance as certain of them were incorporated into Safeco's Motion for Summary Judgment and related filings (Docket Nos. 28-31). That is, there is no question that these documents existed and were accessible to Safeco and its counsel. Unquestionably, the responsibility to produce these documents lies squarely at the feet of Safeco. Indeed, Beck Corp went above and beyond its reasonable responsibility in this case by repeatedly requesting this information despite being told that it had already been produced.

45. In analyzing the second *Poulis* factor, the prejudice and impact that Safeco's failure to provide the documents in question during discovery is almost immeasurable. As Safeco is well aware, Beck Corp. is no longer in business. Safeco's failure to pay Beck Corp. under the Policy due to the losses incurred in the Fire has left the Rainbow Inn as nothing more than a pile of rubble and ashes since 2003. Without the proceeds from the Policy, the Rainbow Inn has not been rebuilt, and those depending upon the Rainbow Inn for their jobs and income have been severely negatively affected. Indeed, this lawsuit is the last means of redress for Beck Corp. and its sole shareholder, Sharyn Beck, to recoup the substantial losses that the Fire and Safeco's claim denial have exacted. However, Safeco's continuous and repeated failures to produce documentation that should have been provided with its Rule 26 Disclosures near the inception of this case has left much of this case for naught. Beck Corp. never had an opportunity to review these documents, never had the opportunity to depose anyone about these documents, never had an opportunity to engage in additional discovery on these documents, etc. Indeed, Beck Corp. and its counsel only learned of the existence of these documents on December 5, 2006, mere hours before its Motion for Summary Judgment and related documents were filed.

46.     Moreover, Beck Corp. and its counsel proceeded through discovery and expended significant time and effort in preparing its Motion for Summary Judgment and related documents based upon the universe of information and documentation made known to them.  Safeco's refusal to properly engage in discovery has caused Beck Corp. and its counsel to expend significant time and expense in preparing a dispositive motion and related documents based upon a set of facts that Safeco now seeks to change.  Without question, Beck Corp. has suffered extreme prejudice.

47.     With respect to the Third *Poulis* factor, there has been a long, continual pattern of dilatory conduct on the part of Safeco and its counsel.  These instances of delay have been well-documented above, and Beck Corp. refers the Court to the preceding paragraphs of the within Motion so as not to belabor an already obvious and irrefutable point.

48.     As to the fourth *Poulis* factor, Beck Corp. submits that the conduct on the part of Safeco and/or its counsel has been willful and/or in bad faith.  In particular, Beck Corp. notes the repeated requests for Safeco's electronic claims file and Safeco's continuing failure to provide such.  Additionally, Beck Corp. cites the fact that these documents were only produced to Beck Corp.'s counsel after the close of business on December 5, 2006 - the evening before motions for summary judgment were to be filed and well after the discovery deadline had expired.  Furthermore, the fact that Safeco and its counsel utilized a number of these documents in Safeco's own Motion for Summary Judgment and related filings is particularly troubling.  Safeco, and presumably its counsel, had access to these documents throughout the course of discovery and while preparing its dispositive motion; Beck Corp. was only provided these documents when it no longer had any ability to investigate, analyze, refute or utilize them.  At a minimum, willfulness and/or bad faith conduct can be inferred from these acts and omissions.

49.     Regarding the fifth *Poulis* factor, Beck Corp. submits that the entry of summary judgment in its favor is the only proper means of redress.  The laundry list of continual and inexcusable delays, the resulting significant prejudices to Beck Corp. and the seemingly unrepentant conduct of Safeco as detailed herein all signal that the most extreme remedy available to this Court - the entry of judgment as to liability in Beck Corp.'s favor - is appropriate.  Otherwise, at a minimum, discovery will have to be re-opened for a minimum of six (6) months, multiple witnesses will have to be deposed and/or re-deposed, additional discovery will likely be required based upon the documents in questions, new dispositive motions will likely have to be filed, etc.  In short, the orderly progression of this case would be set back markedly at significant time and expense to the parties, their counsel and this Court.

50.     Finally, in view of the sixth *Poulis* factor, Beck Corp. submits that its claim is meritorious.  In considering whether a claim or defense appears to be meritorious for this inquiry, a court does not use summary judgment standards.  Rather, a claim or defense will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.  *Poulis,* 747 F.2d at 869-870.  Here, it has never been disputed that Beck Corp.'s Complaint filed in this case is well-pled and facially valid, and even a cursory review of such confirms the same.  (Docket No. 1).  Were it otherwise, Safeco undoubtedly would have filed a Motion to Dismiss this action, which it clearly did not.  Accordingly, Beck Corp. has more than satisfied this factor.

51.     Beck Corp. maintains that, when the record of this civil action is examined in light of the above *Poulis* factors, the egregious record of delay and contumacious conduct by Safeco justifies the imposition of the most severe sanction available to this Court, namely the entry of summary judgment as to liability in Beck Corp.'s favor.

52.    Alternatively, while it remains Beck Corp.'s position that no other remedy can adequately address the prejudice and damage suffered by Beck Corp., should this Court determine that summary judgment in Beck Corp's favor is not appropriate, Beck requests that, at the very minimum:  1) Safeco be precluded from using the Objectionable Documents in any manner, including but not limited to the following: prosecuting or defending against motions for summary judgment; introducing such into the record prior to trial; in any way testifying/referring to such at trial; or in any way offering such into evidence at the time of trial; 2) Safeco's Motion for Summary Judgment be denied; 3) Paul Smith be precluded from testifying at trial and that Safeco be precluded from using his deposition testimony at trial; 4) that an adverse jury instruction with respect to Safeco's conduct be given; and 5) such other relief as the Court deems just and appropriate.

53.    Based upon the aforementioned facts and upon well-settled principles of law set forth above, Beck Corp. respectfully requests that this Court enter an appropriate Order of Court that adequately addresses the harms and prejudices that Safeco's conduct has unjustifiably caused.

WHEREFORE, Walter Beck Corporation d/b/a The Rainbow Inn respectfully requests that this Honorable Court enter an Order of Court in the form submitted herewith.

Respectfully submitted,

/s/ Richard T. Victoria
Richard T. Victoria
Pa. I.D. #76681 - rtv@muslaw.com

/s/ Joshua R. Lorenz
Joshua R. Lorenz
Pa. I.D. #84397 - jrl@muslaw.com

MEYER, UNKOVIC & SCOTT LLP
1300 Oliver Building

Pittsburgh, PA  15217
(412) 456-2800
Fax:  (412) 456-2864

Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER BECK CORPORATION d/b/a THE RAINBOW INN, | ) ) ) | CIVIL DIVISION |
| Plaintiff, | ) ) | Civil Action No. 04-348 - Erie |
| vs. | ) ) | JUDGE MAURICE B. COHILL, JR. |
| SAFECO CORPORATION, AMERICAN ECONOMY INSURANCE COMPANY, and AMERICAN STATES INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion for Discovery Sanctions Pursuant to Rule 37 was served upon counsel for the Defendant by electronic service this 29th of January, 2007 at the following address:

> Daniel P. McDyer, Esquire
> ANSTANDIG, McDYER & YURCON, P.C.
> 1300 Gulf Tower
> 707 Grant Street
> Pittsburgh, PA 15219

> _/s/ Joshua R. Lorenz_
> Joshua R. Lorenz