**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WALTER BECK CORPORATION d/b/a
THE RAINBOW INN,

         Plaintiff,

   vs.

SAFECO CORPORATION, AMERICAN
ECONOMY INSURANCE COMPANY,
and AMERICAN STATES INSURANCE
COMPANY,

         Defendants.

Civil Action No. 04-348-Erie

Judge Maurice B. Cohill, Jr.

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

AND NOW, come Defendants, Safeco Corporation, American Economy Insurance Company and American States Insurance Company, by and through their counsel, Anstandig, McDyer & Yurcon, P.C., and file the following Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment:

**I.    INTRODUCTION**

In short, this is a lawsuit seeking payment under a contract of insurance for a fire loss of December 5, 2003. Following the loss, Harold Beck told the claim representative of American Economy Insurance that the restaurant which suffered the fire had no operable fire suppression system. An operable U.L. listed system is a policy condition. A denial letter issued on February 11, 2004. Harold Beck then recanted his statement. The claim representative, Paul Smith, asked for information about the system, if there was one, such as the contractor identity. Beck refused to supply any information and sued. As investigation continued, Defendants determined that there was no operable

system or if the Halon system Plaintiff contended did exist, it failed to meet the requirements of the Protective Safeguards Endorsement.

As Defendant's have previously stated in their Motion for Summary Judgment and Brief in Support thereof, the only proper Defendant to this matter is American Economy Insurance Company. Safeco Corporation is a holding company, and does not issue policies of insurance. While American States Insurance Company does issue insurance policies, it is an independent entity and did not issue the policy in question in this matter. (See Deposition of Paul Smith, Jr. attached in Appendix to Defendants' Motion for Summary Judgment as Exhibit "B", at p. 14 lines 17-25 and pp. 15 and 16).

In its Motion for Partial Summary Judgment, Plaintiff has requested this Honorable Court to rule that a contract of insurance for commercial property coverage has been breached by Defendants, and liability for Breach of Contract should be found as a matter of law. On the contrary, the policy of insurance was not breached by Defendants. Plaintiff failed to satisfy the conditions for coverage expressed in the Protective Safeguards Endorsement to the commercial property coverage form. This condition of coverage was that the Plaintiff was to have, service and maintain a U.L. listed fire suppression system at their bar and restaurant known as the Rainbow Inn. Specifically, the endorsement to the policy stated, in part, the following:

> "PROTECTIVE SAFEGUARDS
>
> a.    As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
> b.    The protective safeguards to which this endorsement applies are identified by the following symbols:

… **"P-8"  Commercial Cooking Protection** – A U. L. listed automatic fire  suppression system installed for the protection of cooking and ventilating equipment, including plenums, exhaust ducts and hood over cooking appliances.  The suppression system must be serviced by an independent contractor on a SEMI ANNUALLY basis.  The ventilating system, including plenums, exhaust ducts, roof vent and hood over cooking appliances must be cleaned by an independent contractor on a QUARTERLY basis.

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
a.    Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
b.    Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.   (Protective Safeguards Endorsement, Defendants Appendix, Exhibit B).

Plaintiff has failed to provide any evidence, significant enough to raise a genuine issue of fact that Defendants acted otherwise than consistent with its policy terms and conditions. On the other hand, Defendants have produced the testimony of several independent sources, as well as contradictory statements from representatives of Plaintiff themselves and documentary evidence which shows that Plaintiff was not in compliance with the condition of coverage at the time of the fire and that the denial of coverage was necessary and proper. Defendants, therefore, respectfully submit that there are many genuine issues of material fact relating to the issue of liability of Defendants for breach of insurance contract.[1]

---

[1] Plaintiff Beck Corporation seeks summary judgment only on the issue of liability for breach of the insurance contract at this time. Defendant has maintained, and continues to maintain, in its own Motion for Summary Judgment, that no genuine issue of material fact exists as to the failure of Plaintiff to produce evidence of breach of contract and no genuine issue of material fact exists as to the other counts of Plaintiff's Complaint such that summary judgment should be granted in Defendants' favor as to all counts.

II.     **COUNTER-STATEMENT OF FACTS**

As the Plaintiff memorandum in support of its Motion for Partial Summary Judgment repeats the Plaintiff's Concise Statement of Facts, Defendants will provide in this Counter-Statement corresponding excerpts from the Response of Defendants to the Concise Statement.

Plaintiff, Walter Beck Corporation, operated a bar/restaurant called the Rainbow Inn located at Route 59, Marshburg, Pennsylvania. The insured on the commercial property coverage form at issue is the Walter Beck Corporation, for the period of April 23, 2003 to April 23, 2004. The material terms of the Commercial Property Coverage form and Protective Safeguards Endorsement are attached as Appendix Exhibits A and B to Defendants Motion for Summary Judgment.

It  is disputed that Safeco Corporation or American States Insurance contracted with Plaintiff.  The Defendant, American Economy Insurance Company, provided a Commercial Property Coverage Form to the Plaintiff, Walter Beck Corporation (See Commercial Property Coverage Form in Defendant's Appendix to Motion for Summary Judgment as Exhibit A).  While the term "Safeco" appears on various policy pages, it is used as a trademark.  If the name, American States, appears on a policy page, it is inadvertent as the companies share forms.

The only proper Defendant to this matter is American Economy Insurance Company.  Safeco Corporation is a holding company and does not issue policies of insurance.  While American States Insurance Company does issue insurance policies, it is an independent entity and did not issue the policy in question.  (See Deposition of Paul

Smith, Jr. attached in Appendix to Defendants Motion for Summary Judgment as Exhibit R, at p. 14 lines 17-25 and p. 15, 16)  (Amended Answer to Complaint paragraph 5)

The policy has a Commercial Property Coverage form also called a Building and Personal Property coverage form.   The policy also has a Restaurant Property Plus Endorsement, which although mentioned by Plaintiff, is not material to Plaintiff's Motion for Partial Summary Judgment or material to increase the scope or amount of coverage. The Complaint of Plaintiff makes no specific reference to a Restaurant Property Plus endorsement.  (Complaint of Plaintiff, Supplemental Appendix to Defendant Motion for Summary Judgment, Exhibit T).   The Property Coverage form and the Restaurant Property Plus are subject to policy conditions, in particular, the Protective Safeguards Endorsement.  (Appendix to Defendant Motion for Summary Judgment, Exhibit B.)

At times Plaintiff will argue that Harold Beck is a stranger to it.   When convenience suits it, Plaintiff speaks at length about Harold Beck and the Rainbow Inn and tries to make it appear that Harold Beck has a special background.  One attempt is the discussion that Harold Beck claimed to have operated a business that initially installed smoke detectors in apartment buildings and claims to have expanded to installing fire suppression systems.    (Harold Beck deposition, p.19, line 9 to 16, Defendant Supplemental Appendix, Exhibit U)  While Harold Beck contends that he once was licensed in the State of Texas to install fire suppression systems, and took a test for U.L. certification; the licensing was not kept current and expired when Harold Beck sold his Texas business in about 1987. (Deposition of Harold Beck, p. 16, lines 16 to 22, p. 21 line 19-20, Supplemental Appendix, Exhibit U)  The fire was December 5, 2003.

The affidavit of James F. Valentine disputes Harold Beck's claimed pretense to knowledge in fire suppression systems, if not directly by clear inference. (Affidavit of James F. Valentine, Appendix to Defendants Motion for Summary Judgment, Exhibit H, paragraphs 5 to 9.) Harold Beck could not recall and did not provide the name of any manufacturer of any part of the commercial cooking suppression system he contends was at the restaurant. (Harold Beck deposition p. 49 line 6 to 12, Defendants Supplemental Appendix, Exhibit U) For that matter, he testified that he designed the fire suppression system. (Harold Beck deposition p. 103 line 24, Defendant Supplemental Appendix Exhibit U) Much of it with left over parts from his Texas business. (Harold Beck deposition p.50, line 1 to 8, Defendant Supplemental Appendix, Exhibit U)

On December 5, 2003 a fire destroyed the Rainbow Inn structure and contents. However, the parties do not agree regarding contents. Also the structure was not owned by Plaintiff. (See Paragraphs 24 and 25 of Motion of Defendants for Summary Judgment and Appendix to Defendant's Motion for Summary Judgment, Exhibits M and J.)

Plaintiff's statement of fact attempts to make an issue of the status of Harold Beck; Plaintiff tries to distance itself from Mr. Beck, as it was he who stated the fire suppression system was removed. Yet the Rule 26 Plaintiff disclosures list "Harold Beck – Employee/Agent/Representative, Walter Beck Corporation". (Plaintiff Rule 26 disclosure, Plaintiff Appendix to Plaintiff Motion for Partial Summary Judgment, Exhibit 28, page 2)

Plaintiff tries to minimize the activity of Harold Beck on behalf of Plaintiff, but Harold Beck let it slip that the restaurant did not have an operable fire suppression system. The characterization of Harold Beck as merely "assisted in communicating with

Safeco" is inaccurate.   Harold Beck signed all correspondence following the fire. (Exhibits 9, 10, 11, 12, 13 and 15, Plaintiff Appendix to Motion for Partial Summary Judgment).   In June, 2004, Harold Beck determined that there would be no more communication between Plaintiff and Defendants, and Plaintiff ceased communication. (Deposition of Harold Beck, page 86 line 19-25, page 87 line 1-2, Exhibit U of Defendants Supplemental Appendix).

Sharyn Beck was reported to have had a heart attack.  Harold Beck, husband of Sharyn Beck, acted as the agent of Plaintiff, never stating that there was any limitation on his authority. (For example, paragraph 18 of the Concise Statement of Plaintiff treats the demand for payment by Harold Beck as the demand of Plaintiff corporation.)  Moreover, letters dated February 11, 2004, June 23, 2004, and July 23, 2004 were directed to the Walter Beck Corporation and Mr. and Mrs. Harold Beck (Exhibits C, D, and E to Appendix of Defendants Motion for Summary Judgment) and only responded to by Harold Beck.

There was no contractual obligation to make a payment to Plaintiff.  (Letter of Paul Smith to Plaintiff February 11, 2004 denying claim; letters from Paul Smith to Plaintiff June 23, 2004 ("you now indicate you did have a fire suppression system…who is the vendor who maintains the system?  I can request of them and they can provide us the records on the equipment and we can reassess our position at that point.") and July 23, 2004 ("I again request the name of the company who maintained your systems so we can get past this road block.") The information was never provided. Plaintiff submitted an affidavit from Harold Beck's brother after filing suit, 18 months after the fire making certain allegations which he now contends satisfy the policy conditions.  It does not.)

(Exhibit C, D and E, Appendix of Defendant to Motion for Summary Judgment)  (Letter to Richard Victoria, Esquire, from Daniel P. McDyer, Esquire, Supplemental Appendix, Exhibit S, to Defendants Motion for Summary Judgment identifies deficiencies of Plaintiff's claim.) (Affidavit of James F. Valentine, Exhibit H).

Plaintiff makes much over the self-serving loss inventory Sharyn Beck prepared which had typed on it "Halon fire suppression system".   However, Plaintiff also completed in 2003 a written Restaurant Supplement denying any such system:

### RESTAURANT SUPPLEMENT

Applicant: <u>Walter Beck Corporation DBA Rainbow Inn</u>

22.    Are all areas over ranges, grills, fryers, and all other cooking surfaces, and hoods and ducts protected by an automatic fire extinguishing system? <u>  </u>Yes  <u>X</u> No
Is the extinguishing system UL 300 compliant? <u>  </u>Yes  <u>X</u> No

23.    Is there a maintenance agreement to regularly inspect and service the system? <u>  </u>Yes  <u>X</u> No

(Appendix to Defendants Motion for Summary Judgment, Affidavit of Marta McHale, Exhibit I.)

In addition, although their focus was cause and origin, Churchwell Fire Consultants, Inc., whose principals, Brian Churchwell and James Churchwell inspected the fire site testified by affidavit that:

Throughout my examination of the fire site, I did not observe a fire suppression system or the noncombustible remnants of such a system which one would expect to survive a fire.  My opinion is, therefore, that on December 5, 2003 a fire suppression system was not at the Rainbow Inn.

(Affidavit of Brian Churchwell, Exhibit F to Appendix of Defendants in Support of Defendant Motion for Summary Judgment and Affidavit of James Churchwell, Exhibit G) (Letters to Plaintiff from Paul Smith, Exhibits C, D and E, Appendix, Defendants Motion for Summary Judgment).

Plaintiff also references response time of Defendants; the time of approximately 30 days for the letter of denial dated February 11, 2004 to issue following a Plaintiff letter of inventory is not material, not a lengthy period.  However, the denial bases were supplemented by further correspondence from counsel at Plaintiff's request.  (Exhibit S, Defendants' Supplemental Appendix).

Plaintiff also refers to correspondence of February 11, 2004 from Paul Smith, claim representative, but does not offer a complete statement of the policy conditions referenced which in dispute.  The complete policy reference in the denial letter is as follows:

> **"P-8"  Commercial Cooking Protection** – A U. L. listed automatic fire  suppression system installed for the protection of cooking and ventilating equipment, including plenums, exhaust ducts and hood over cooking appliances.  The suppression system must be serviced by an independent contractor on a [SEMI ANNUALLY] basis.  The ventilating system, including plenums, exhaust ducts, roof vent and hood over cooking appliances must be cleaned by an independent contractor on a QUARTERLY basis.
>
> * * *
>
> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
> a.    Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> b.    Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.   (Protective Safeguards Endorsement, Exhibit B and Exhibit C denial letter of February 11, 2004, Appendix to Defendants Motion for Summary Judgment).

The affidavit of James F. Valentine, a certified fire investigator provided a clear statement that the Plaintiff did not satisfy the Protective Safeguards Endorsement cited above.  Mr. Valentine testified in his affidavit that:

9.     In my experience, and in my opinion, Halon is not, and never has been, an accepted commercial cooking fire suppression agent.  Halon would not be considered an acceptable fire suppressant in commercial kitchens, nor has UL listed Halon for such use.

10.     If called as a witness, I could testify to the above based upon my personal knowledge, training and experience. (Defendants Appendix to Motion for Summary Judgment, Exhibit H.)

        In addition, relevant portions of the Affidavit of Marta McHale confirm a written admission by Plaintiff of no operable fire suppression system in 2003 and non-compliance with U.L. and non-compliance with policy requirements for service and maintenance by an independent contractor. (Affidavit of Marta McHale, Exhibit I, Appendix to Defendants' Motion for Summary Judgment).  The correspondence of Paul Smith dated February 11, 1004 and claim notes confirm information on the lack of compliance with the Protective Safeguards Endorsement.   (Appendix to Defendants Motion for Summary Judgment Exhibit C; Exhibit P)

        Plaintiff, approximately 18 months after the fire, obtained what purports to be an affidavit from Harold Beck's brother, which is disputed, and approximately 22 months after the fire obtained 7 additional affidavits that purport to be of various part time employees of Plaintiff.  The 7 employee affidavits are disputed in content thereof and materiality.   None of the 7 employees can verify an operational system, or policy servicing or maintenance requirements as of the date of the fire. The fire suppression system described by Beck's brother, is not U.L. compliant.  (Affidavit of Marta McHale Exhibit I, Affidavit of James F. Valentine, Exhibit H, Affidavit of Brian Churchwell, Exhibit F and Affidavit of James Churchwell, Exhibit G to Appendix of Defendants Motion for Summary Judgment)

Although Harold Beck attempted, after the claim was denied, to recant his statement that no operable fire suppression system was at the restaurant, the original statement is consistent with the Restaurant Supplement provided by Plaintiff to its insurance agency; the original statement was recorded by Paul Smith's letters to Plaintiff. (Affidavit of Marta McHale, Exhibit I, Exhibit P file notes, Exhibit C letter of February 11, 2004, Exhibit D, Letter of 6-23-04, Exhibit E, Letter of 7-23-04, Appendix to Defendants Motion for Summary Judgment, Deposition of Paul Smith, p. 86, Line 16-17, Exhibit V, Supplemental Appendix).

Plaintiff argues that "Mr. Beck clarifies this issue in several letters to Mr. Smith and Safeco… as well as in his deposition…"  While Harold Beck raises alleged confusion in his mind  regarding brands of suppression systems as an excuse for his statement; the lack of an operable suppression system is confirmed by Plaintiff in the written Restaurant Supplement. (Affidavit of Marta McHale, Exhibit I). (Also, Letter of Paul Smith, 2-11-04, Exhibit C, Appendix of Defendants).

While Harold Beck argues he miscommunicated, Paul Smith confirmed the statement in his letter to Harold Beck, Exhibit C, and in the deposition of Paul Smith, Mr. Smith confirmed that while miscommunications are possible, what he was told was that no fire system was at the restaurant on the fire loss date.  (Deposition of Paul  Smith page 86, Line 16-17, "I believe I heard him say he had the system removed." (Exhibit V, Supplemental Appendix). (Also, Affidavit of Marta McHale Exhibit I, Affidavit of James F. Valentine, Exhibit H, Affidavit of Brian and James Churchwell Exhibits F and G)

Statement of Fact of Plaintiff brief contains various deposition excerpts, with the lead that Paul Smith, claim representative, may have used a term "Ansul" in speaking with Harold Beck, implying this confused Mr. Beck. Mr. Smith has testified that "I believe I heard him say he had the system removed". (Smith deposition, page 86, Lines 16-17, Exhibit V, Supplemental Appendix).

Despite Plaintiff's efforts to limit the requirements of the Protective Safeguards Endorsement and Plaintiff's responsibility under the policy by trying to interpret pieces and parts of Paul Smith's testimony, it is clear that Paul Smith in denying the claim relied upon the entire endorsement.

> Q. So Safeco's sole basis for denying
> the claim is that Safeco wasn't provided with
> an agreement showing that a system had been
> serviced in accordance with the agreement? In
> accordance with the policy? (Smith Deposition p. 60, Lines 21-25,
> Exhibit V).
>
> A. In accordance with the policy, yes.
> That there was a system, that it was in place,
> it was UL approved, that it was serviced
> semi-annually and cleaned quarterly by an
> independent contractor. And that was the basis
> of my denial. (Smith Deposition p. 61, Lines 2-7, exhibit V)

Mr. Smith, when asked if there was a system at the restaurant, stated "I don't know", (Smith Deposition p. 61, Exhibit V, Supplemental Appendix) likely referring to the result of the contradictions of Plaintiff. Harold Beck stated that the system was removed before the fire. (letter of February 11, 2004 denial of coverage, Exhibit C). This is what Harold Beck stated, not the personal knowledge of Mr. Smith. Paul Smith's testimony should also be put in context, which Plaintiff is not doing:

I can't speak for all of Safeco…Whether something was done further in underwriting, I can't say. (Smith Deposition p. 87, Exhibit V, Supplemental Appendix).

Also, the correspondence of 2-11-04, Exhibit C of Appendix, clearly advises that all rights are being reserved as are such other defenses as continuing investigation may reveal. (Exhibit C, Letter of 2-11-04, Appendix to Defendants' Motion for Summary Judgment).

Plaintiff argues that Defendant cannot claim a fire system was not present on the date of the fire. If so, how can Plaintiff claim a system was present and not only present, but operable, as to satisfy all the requirements of the Protective Safeguards Endorsement, after verbally and in writing denying it. As continuing investigation disclosed, if there was a fire suppression system, it did not satisfy the policy.

Plaintiff relies on Harold Beck's brother's late affidavit. Subparts a-e are disputed by the admission of Harold Beck referred to earlier, and the admission of Plaintiff in the Restaurant Supplement:

### RESTAURANT SUPPLEMENT

Applicant: Walter Beck Corporation DBA Rainbow Inn

22.  Are all areas over ranges, grills, fryers, and all other cooking surfaces, and hoods and ducts protected by an automatic fire extinguishing system? __ Yes  X  No
     Is the extinguishing system UL 300 compliant? __ Yes  X  No

23.  Is there a maintenance agreement to regularly inspect and service the system?
     __ Yes  X  No

(Appendix to Defendants Motion for Summary Judgment, Affidavit of Marta McHale, Exhibit I.)

### DENIAL LETTER

Based on the fact that your restaurant facility did not have the required fire suppression system, we will be unable to cover your loss… You indicated to me this was removed in 1996 or 1997 and never replaced. (Exhibit C, Letter of 2-11-04, Appendix to Defendants' Motion for Summary Judgment).

## VALENTINE AFFIDAVIT

The affidavit of James F. Valentine, a certified fire investigator provided a clear statement that the Plaintiff did not satisfy the Protective Safeguards Endorsement cited above. Mr. Valentine testifies in his affidavit that:

9.     In my experience, and in my opinion, Halon is not, and never has been, an accepted commercial cooking fire suppression agent.  Halon would not be considered an acceptable fire suppressant in commercial kitchens, nor has UL listed Halon for such use.

10.     If called as a witness, I could testify to the above based upon my personal knowledge, training and experience. (Defendants Appendix to Motion for Summary Judgment, Exhibit H.)

## McHALE AFFIDAVIT

Marta McHale's affidavit has a Selective Insurance application that fails to confirm the existence of an independent contractor maintenance agreement. The form was in that agency's 1997 file.

## CHURCHWELL AFFIDAVITS

Churchwell Fire Consultants, Inc., whose principals, Brian Churchwell and James Churchwell inspected the fire site testified by affidavit that:

11.     Throughout my examination of the fire site, I did not observe a fire suppression system or the noncombustible remnants of such a system which one would expect to survive a fire.  My opinion is, therefore, that on December 5, 2003 a fire suppression system was not at the Rainbow Inn.

(Affidavit of Brian Churchwell, Exhibit F to Appendix of Defendants in Support of Defendant Motion for Summary Judgment and Affidavit of James Churchwell, Exhibit G)

Claim representative, Paul Smith requested that Plaintiff provide the name of independent contractors so that Paul Smith could contact the contractors.  Plaintiff did not provide any contractor records or identity, but rather filed suit.

Plaintiff provided no information regarding quarterly cleaning from the time of fire through deposition of Sharyn Beck on November 11, 2006. At the deposition of Sharyn Beck, Mrs. Beck claimed that she had someone named "Cocaine Katy" (Deposition of Sharon Beck, page 48, Lines 7-8, Exhibit W, Defendants Supplemental Appendix) do cleaning of the kitchen hood. However, this is inconsistent with the affidavit of Marta McHale, Exhibit I.

Plaintiff argues that the premises were viewed by Defendant. Yet the Defendants attempted to view the premises but was not allowed as Plaintiffs were in Florida; Record of Attempted Survey, (Exhibit X, Supplemental Appendix of Defendants). Also, the deposition of Harold Beck, page 92, line 5 and lines 22-23 "Safeco, whoever. I don't know," demonstrated that contention is without support. The record of attempted survey showed that entry to the restaurant could not be obtained as the Becks were in Florida. (Exhibit X, Supplemental Appendix)  If any person did enter the premises, Plaintiff has no identification. Plaintiff had insurance for workers compensation through a different insurer, Princeton Insurance (Exhibit Y, Supplemental Appendix).

Defendants have provided independent evidence from investigators and employees of Plaintiff's insurance agent that an operable fire suppression system was not in place at the Rainbow Inn at the time of the fire. Defendant has also provided evidence that were a system in place, that the system described by Plaintiff's witnesses is not in compliance with the Protective Safeguard Endorsement of the policy.

The Response of Defendants to the Concise Statement of Material Facts by Plaintiff is incorporated in its entirety.

III.     **COUNTER-ARGUMENT**

Plaintiff's Motion for Partial Summary Judgment cannot be granted because Plaintiff has not satisfied and cannot satisfy its burden to prove its compliance with the condition to coverage on which the denial was based. Thus, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment.

A.     **THE BURDEN OF PROVING THE SATISFACTION OF THE PROTECTIVE SAFEGUARDS ENDORSEMENT IS ON PLAINTIFF.**

In its Memorandum in Support of its Motion for Summary Judgment, Plaintiff first argues that the burden of proving the applicability of the Protective Safeguard Endorsement described herein above is on Defendant. Plaintiff describes the issue of burden of proof as "well-settled" and states that the burden is on the insurer to prove the applicability of a condition or exclusion of an insurance policy. Defendant respectfully disagrees. Generally, the burden is upon the insured to show that a loss is covered by a policy of insurance. <u>Terra Industries, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 383 F. 3d 754, 760 (8th Cir. 2004). The <u>Terra</u> Court discussed the differences between phrases in policies that limit coverage as conditions precedent to coverage or exclusions from coverage. One example of a condition precedent is the requirement that an insured notify the insurer of a claim immediately or as soon as is practical. The burden is upon the insured to demonstrate substantial compliance with this condition. The Court in <u>Terra</u> explained that conditions precedent frequently involve something an insured must do, while exclusions involved something the insured must not do. This justifies the rationale for requiring an insured to show he or she took some affirmative action upon which insurance was conditional. <u>Id.</u> at 760. Conditions precedent are those facts and

events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to usual judicial remedies. American Eagle Insurance Co. v. Rutland Area Flyers, Inc., 949 F. Supp. 243, 249 (Vermont 1996). The insured bears the burden of proof to show the performance or occurrence of a condition precedent. Peters v. World Mutual Health and Accident Insurance Company of Pennsylvania, 213 A.2d 116 (Pa Super 1965); In re Texan Eastern Transmission Corporation PCB Contamination Insurance, 870 F.Supp. 1293 (MD Pa 1992); Bruinsma v. State Farm Fire and Cas. Co., 410 F. Supp. 2d 628, 633 (W.D. Mich. 2006).

The plain language of the condition of coverage in the policy at hand known as the Protective Safeguards Endorsement requires that the policyholder do several things to obtain coverage:

1.  That an operable automatic fire suppression system be present over kitchen cooking equipment;

2.  That the automatic fire suppression system be U.L. listed;

3.  That the automatic fire suppression system be serviced by an independent contractor;

4.  That the service of the automatic fire suppression system take place on a semi-annual basis;

5.  That the ventilating system of the kitchen equipment be cleaned on a quarterly basis, by an independent contractor.

Following Plaintiff's notification to Defendant American Economy of its claim for alleged losses resulting from the fire, Defendant promptly began to investigate the claim. As part of its investigation, Defendant made inquiries as to whether Plaintiff had met its conditions precedent of coverage listed above. A representative of Plaintiff, Harold Beck, verbally told a representative of Defendant, Paul Smith, that Plaintiff had

removed its automatic fire suppression system in 1996 or 1997. Plaintiff also in writing, in a 2003 Restaurant Supplement form, given to its insurance agency but not received by Defendants, confirmed no operable fire suppression system, no U.L. compliance and no independent contractor servicing or maintenance. (See Exhibits "I" and "P" attached to Defendants' Motion for Summary Judgment). Defendant, denied the claim.

Only after the claim was denied did Mr. Beck recant his earlier statement that the fire suppression system had been removed. Following this recant, Defendant requested that Plaintiff provide the name of its independent contractor who serviced the system. As Plaintiff had denied the existence of documentary or physical evidence of the system which it claimed to have in place, stating that the evidence had been destroyed in the fire, Defendant was interested in contacting the independent contractor, who would have had information concerning the system, its components, and the service record thereon. Plaintiff ignored and/or refused to answer all requests by Defendant to provide information regarding the independent contractor, who allegedly serviced the alleged fire suppression system. (See Exhibits "C", "D" & "E" to Defendants' Motion for Summary Judgment). Only after suit was filed in this matter and one and one half years following the fire did Plaintiff finally provide an affidavit from Harold Beck's brother in which Beck's brother stated that a halon fire suppression system had been at the Rainbow Inn and that he provided inspections of the system. Were there a halon suppression system at the Rainbow Inn on the date of the fire, even though Plaintiff had previously stated that none existed, verbally and in writing, it could not satisfy the requirement of being a U.L. listed system, as halon was not approved for commercial cooking fire suppression. (See Exhibit "H" to Defendants' Motion for Summary Judgment).

Another condition of coverage was the required semi-annual service on the fire suppression system by an independent contractor and quarterly maintenance. Plaintiff has provided no contract for service, no invoices for service, no service records, no records of purchase of the equipment, no service orders, and no records of payment for the alleged service or maintenance.

Defendant should not, as a matter of law, be held liable for a breach of contract, when satisfaction of a condition precedent to that contract by Plaintiff is lacking.

**B.    IF, IN THE ALTERNATIVE, DEFENDANT IS DETERMINED TO HAVE THE BURDEN OF PROVING THE PROTECTIVE SAFEGUARDS ENDORSEMENT WAS NOT SATISFIED, IT HAS DONE SO.**

Plaintiff's next contention, that Defendant has produced only a "mere scintilla of evidence" regarding the applicability of the Protective Safeguards Endorsement is misstated at best and patently untrue at worst. Plaintiff would have the Court believe that Defendant based its entire denial of the claim up through and including the present day on the initial statement of Mr. Beck that the fire suppression system had been removed. While it is true that Defendant's initial denial of the claim, February 11, 2004, was greatly influenced by this admission, since Mr. Beck has attempted to recant his original statement of removal the investigation has continued.

In furtherance of its investigation, Defendant uncovered the following:

### RESTAURANT SUPPLEMENT

Applicant: <u>Walter Beck Corporation DBA Rainbow Inn</u>

22.    Are all areas over ranges, grills, fryers, and all other cooking surfaces, and hoods and ducts protected by an automatic fire extinguishing system? __Yes  <u>X</u> No
Is the extinguishing system UL 300 compliant? __Yes  <u>X</u> No

23.    Is there a maintenance agreement to regularly inspect and service the system?
__Yes  <u>X</u> No

(Appendix to Defendants Motion for Summary Judgment, Affidavit of Marta McHale, Exhibit I.)

### DENIAL LETTER

Based on the fact that your restaurant facility did not have the required fire suppression system, we will be unable to cover your loss… You indicated to me this was removed in 1996 or 1997 and never replaced. (Exhibit C, Letter of 2-11-04, Appendix to Defendants' Motion for Summary Judgment).

### VALENTINE AFFIDAVIT

The affidavit of James F. Valentine, a certified fire investigator provided a clear statement that the Plaintiff did not satisfy the Protective Safeguards Endorsement cited above. Mr. Valentine testifies in his affidavit that:

9.      In my experience, and in my opinion, Halon is not, and never has been, an accepted commercial cooking fire suppression agent.  Halon would not be considered an acceptable fire suppressant in commercial kitchens, nor has UL listed Halon for such use.

10.     If called as a witness, I could testify to the above based upon my personal knowledge, training and experience. (Defendants Appendix to Motion for Summary Judgment, Exhibit H.)

### McHALE AFFIDAVIT

Marta McHale's affidavit has a Selective Insurance application that fails to confirm the existence of an independent contractor maintenance agreement. The form was in that agency's 1997 file.

### CHURCHWELL AFFIDAVITS

Churchwell Fire Consultants, Inc., whose principals, Brian Churchwell and James Churchwell inspected the fire site testified by affidavit that:

11.     Throughout my examination of the fire site, I did not observe a fire suppression system or the noncombustible remnants of such a system which one would expect to survive a fire.  My opinion is, therefore, that on December 5, 2003 a fire suppression system was not at the Rainbow Inn.

(Affidavit of Brian Churchwell, Exhibit F to Appendix of Defendants in Support of Defendant Motion for Summary Judgment and Affidavit of James Churchwell, Exhibit G)

In fact, Defendant has found and presented an overwhelming amount of evidence which has proved coverage cannot be provided due to the Protective Safeguards Endorsement. The evidence presented by Defendant is sufficient to support a burden of proof, should one be placed on it.

## IV.    CONCLUSION

For the foregoing reasons, it is requested that this Honorable Court deny Plaintiff's Motion for Partial Summary Judgment and enter summary judgment in favor of the Defendants, Safeco Corporation, American Economy Insurance Company and American States Insurance Company, and against Plaintiff, Walter Beck Corporation on all of the claims in Plaintiff's Complaint.

Anstandig, McDyer & Yurcon, P.C.

BY: s/ Daniel P. McDyer
Daniel P. McDyer, Esquire
Pa. I.D. #19854
Attorney for Defendants

1300 Gulf Tower – 707 Grant Street
Pittsburgh, PA 15219
(412) 765-3700