**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WALTER BECK CORPORATION d/b/a
THE RAINBOW INN,

                Plaintiff,

    vs.

SAFECO CORPORATION, AMERICAN
ECONOMY INSURANCE COMPANY,
and AMERICAN STATES INSURANCE
COMPANY,

           Defendants.

Civil Action No. 04-348-Erie

Judge Maurice B. Cohill, Jr.

**ANSWER TO PLAINTIFF'S MOTION FOR DISCOVERY SANTIONS PURSUANT TO RULE 37**

**Background**

    Paul Smith, claim representative for Defendant, was deposed on November 7, 2006.[1]  He testified that he made entries by computer into an electronic claim file. Counsel for Plaintiff stated at the deposition that he had not observed a copy of electronic claim file entries by Mr. Smith in the 300 plus pages that had been produced.  Counsel for Defendants, having entered his appearance for Defendants approximately 5 months prior to the deposition, had believed the documents had been produced.  However, counsel for Defendants agreed to resolve the Paul Smith electronic claim file issue. Counsel for Defendants believed the matter resolved at the deposition by: (1) agreeing to search for Smith's records and produce same; (2) agreeing to allow the Paul Smith deposition to be reconvened at Plaintiff's discretion; (3) agreeing to not oppose any

---

[1]    A Plaintiff has to take responsibility for the progression of litigation that it institutes.  The Plaintiff here failed to notice a deposition until 1 ½ years after the discovery term commenced.

request by Plaintiff to enlarge the pretrial schedule; (4) agreeing to allow other Defendant representatives to be deposed.

The defense counsel, upon reviewing discovery pleadings, observed that a request for claim documents had previously been responded to as "attached".  More intense search produced Paul Smith's electronic entries and additional claim file documents, which if not previously received by Plaintiff, was a matter of inadvertence, not design. The additional documents provided on December 5, 2006, 28 days after the Smith deposition, were consistent with the defense position, and raised no new issue. The specific electronic entries by Paul Smith numbered approximately 39. Most of these entries consisted of just a few words on a page.  Of the 39, only 6 dealt with contact with Harold Beck, a representative of Plaintiff.  The notes of contact confirmed what was already reported to Plaintiff by letter: that Harold Beck admitted the restaurant did not have a fire suppression system.  Outside of the Paul Smith electronic entries the additional claims file documents only numbered approximately 113.

The Defendant parties had no part in the document production preparation.

On December 6, 2006, the parties filed cross Motions for Summary Judgment. The additional records may be used by the Plaintiff in supplementing its Motion for Summary Judgment, if Plaintiff deems the documents helpful.  The Plaintiff can use the additional documents to oppose the Defendants' Motion, as the Court has currently suspended the time for Plaintiff's opposition brief.  Plaintiff has made no supplement to its Motion for Summary Judgment or appendix. The documents are consistent with Defendants' position that Plaintiff had admitted the fire suppression system had been

removed. Plaintiff now seeks to gain an advantage that the merits of its Motion for Summary Judgment and lawsuit lack.

On January 29, 2007, after receiving the electronic claim file entries on December 5, 2006, Plaintiff, without notice, filed a Motion for Discovery Sanctions.[2] Defendants' Answer to the Motion for Discovery Sanctions follows:

1.      Paragraph 1 of the Motion for Discovery Sanctions is denied.   More intense search for computer entries resulted in identification of the electronic claim documents. The documents were produced.  There is no prejudice to Plaintiff, as the topics of the documents and information recorded were, in many instances, contained in other documents, letters to Plaintiff, or recorded various claim investigation similar to the State Police investigation report, already in Plaintiff's possession. Ultimately, the documents do not appear to be of specific use to Plaintiff.    However, Plaintiff has no constraint of use of any document produced from the claim file.

Also, Plaintiff mentions impairment of the litigation progress.   Any such impairment has to involve Plaintiff, which bears responsibility for moving its lawsuit.  In the context of the history of this lawsuit it is strange to read Plaintiff complaining of litigation progress when Plaintiff did not schedule a first deposition until 1 ½ years after instituting suit.

2.      Paragraph 2 of the Motion for Discovery Sanctions is admitted.

3.      Paragraph 3 of the Motion for Discovery Sanctions is admitted in that the insured on the Commercial Property Coverage form at issue is the Walter Beck Corporation, for the period of April 23, 2003 to April 23, 2004.  The material terms of the

---

[2]      Plaintiff previously solicited Defendants to agree to a joint stipulation enlarging time to file opposition to the cross motions for Summary Judgment, citing the intervening holidays, without mention of a motion for sanction.

Commercial Property Coverage form and the Protective Safeguards Endorsement have been filed as Exhibits A and B in the Appendix of Defendants' Motion for Summary Judgment.

4.      Paragraph 4 of the Motion for Discovery Sanctions is admitted in that a fire destroyed the Rainbow Inn and its contents on December 5, 2003. However, the parties do not agree regarding contents.  Also, the structure was not owned by Plaintiff. (Defendants Appendix to Motion for Summary Judgment, Exhibit M and J)

5.      Paragraph 5 of the Motion for Discovery Sanctions is denied in its implication that Walter Beck Corporation is entitled to the benefits demanded in its Complaint or Motion for Summary Judgment.  The letter of Paul Smith to Plaintiff dated February 11, 2004 denying the claim is attached as Exhibit C hereto, and the letter of Daniel McDyer, Esquire to Richard Victoria, Esquire elaborating claim deficiencies is attached as Exhibit S hereto. Both are incorporated herein.  In addition, the Defendants' Response to Plaintiff's Concise Statement of Facts, Defendants' Brief in Opposition to Motion of Plaintiff for Summary Judgment, and Defendants' Appendix and Supplemental Appendix are incorporated by reference in denial of paragraph 5.

6.      Paragraph 6 of the Motion for Discovery Sanctions is denied in its implication that a lawsuit was filed by the Walter Beck Corporation due to a breach of the policy by Defendants.  On the contrary, the Plaintiff, several months before the fire:

> a.      Completed a Restaurant Supplement, that in writing confirmed a lack of an automatic fire extinguishing system.  (Marta McHale Affidavit attached hereto as Exhibit I)

And, after the fire:

      b.     Verbally told Paul Smith, claim representative, through statements of Harold Beck, that the Halon fire suppression system which was at the restaurant had been removed.  (Letter of Paul Smith dated February 11, 2004, Exhibit C)

      c.     Refused to give basic information to Defendant. ("you now indicate you did have a fire suppression system… who is the vendor who maintains the system?  I can request of them and they can provide us the records on the equipment and we can reassess our position at that point."  (Letter from Paul Smith to Plaintiff dated June 23, 2004, Exhibit D hereto) ("I again request the name of the company who maintained your systems so we can get past this road block." ) (Letter from Paul Smith to Plaintiff dated July 23, 2004, Exhibit E hereto.)

      d.     Plaintiff unilaterally ceased to communicate with Defendants in June, 2004.     (Deposition of Harold Beck, p. 26, line 19-25 attached hereto as Exhibit AA and p. 87, line 1-2, attached hereto as Exhibit O.) (Paragraph 5 of this Answer is incorporated in further denial.)

7.     Paragraph 7 of the Motion for Discovery Sanctions appears to have a correct copy of Defendants' initial disclosures under rule 26(a) with a certificate of service dated June 30, 2005.

8.  Paragraph 8 of the Motion for Discovery Sanctions appears to reference a correct copy of First Interrogatories and Request for Production of Documents of Plaintiff.

9.  Paragraph 9 of the Motion for Discovery Sanctions appears to be a correct recitation of four interrogatories and twenty-five requests for production prepared by Plaintiff.

10.  Paragraph 10 of the Motion for Discovery Sanctions appears to correctly reference Plaintiff counsel's letter of August 12, 2005.

11.  Paragraph 11 of the Motion for Discovery Sanctions references a telephone conversation to which this defense counsel was not privy. However, the copy of an e-mail at Exhibit E of the Plaintiff Motion appears accurate.

12.  Paragraph 12 of the Motion for Discovery Sanctions references what appears to be a correct copy of an e-mail to prior defense counsel.

13.  Paragraph 13 of the Motion for Discovery Sanctions is admitted in that Plaintiff filed a Motion to Compel on October 3, 2005.

14.  Paragraph 14 of the Motion for Discovery Sanctions correctly references Order of Court dated October 26, 2005.

15.  Paragraph 15 of the Motion for Discovery Sanctions references a correct copy of Defendant responses in 2005 to First Discovery Requests at Exhibit H of said Plaintiff Motion.

16.  Paragraph 16 of the Motion for Discovery Sanctions is denied.  On the contrary, request number 9 and the response to the First Request for Production appears as follows:

- 6 -

9.     All claims files or documents concerning Beck, the Rainbow Inn
and/or the fire.
RESPONSE:
Attached.

Upon reading same, defense counsel believed discoverable claim file documents

had been produced and were in Plaintiff's possession.  Accordingly, it was not obvious to

defense counsel that Plaintiff lacked any discovery.

17.     Paragraph 17 of the Motion for Discovery Sanctions is admitted in that

current defense counsel entered an appearance on or about May 31, 2006.  It is admitted

that a second set of interrogatories and requests were served by Plaintiff on or about June

29, 2006.   The interrogatories and requests were substantially similar to the first

interrogatories and requests.  Accordingly, the Defendants' served responses, which for

the most part, referenced back to the earlier discovery responses.

18.     Paragraph 18 of the Motion for Discovery Sanctions is a correct

reproduction of two interrogatories and three requests for documents.   However, the

interrogatories were duplicative of earlier discovery and objected to; the objections were

unchallenged by Plaintiff.

19.     Paragraph 19 of the Motion for Discovery Sanctions correctly refers to

responses to second discovery requests at Exhibit J of said Plaintiff's Motion.   The

objections by Defendants were unchallenged by Plaintiff.

20.     Paragraph 20 of the Motion for Discovery Sanctions correctly quotes

request No. 22 and the response to it. However, Defendants' response to Plaintiff's

request No. 9, indicated that discoverable claim documents were produced. Plaintiff,

however, since 2005, contends it had not observed claim file entries, but remained silent

until the first deposition on November 7, 2006. It is Plaintiff that, by its trial tactics, delayed the litigation process by trying to develop a discovery issue.

The response of prior defense counsel to Plaintiff's first set of requests at No. 9. was:

> 9.    All claims files or documents concerning Beck, the Rainbow Inn and/or the fire.
> RESPONSE:
> Attached.

If Plaintiff had no such documents or no Paul Smith electronic entries, then raising the issue in 2005 would have been the appropriate time.

21.    Paragraph 21 of the Motion for Discovery Sanctions is admitted. However, Plaintiff fails to advise the Court that claim representative, Paul Smith, was produced for the deposition after discussions with Plaintiff counsel.  The correspondence from Plaintiff's counsel dated November 2, 2006 is attached hereto as Exhibit GG.  ("We understand that, at least initially, Mr. Smith will be appearing in response to each of these notices. . . we have agreed to take Mr. Smith's deposition first and then determine whether subsequent depositions will be necessary.")  Plaintiff has never made any request for any additional questioning of any witness.

If, as Plaintiff alleges in its Motion for Discovery Sanctions at paragraph 16, the electronic claim file of Paul Smith, at least to Plaintiff, was "obviously in existence and responsive" to discovery, but not "identified", to request such a severe sanction now is inappropriate.

22.    Paragraph 22 of the Motion for Discovery Sanctions is denied.   The Paragraph is argument.  Defendants were unaware, as was the present counsel, that the electronic claim entries of Paul Smith had not been produced.  The claim file documents

are consistent with Defendants' position.  However, should Plaintiff view the documents as useful, Plaintiff may supplement its Motion for Summary Judgment and Appendix. The time for Plaintiff to file an opposition to Defendants' Motion for Summary Judgment has been suspended.  Accordingly, Plaintiff is not impeded from using any part of the production. Paragraph 21 above of this Answer is incorporated in further denial.

23.     Paragraph 23 recites portions of periodic discovery deadlines.  However, Defendants note that enlargements of time were by joint stipulation, save one which Plaintiff did not oppose.

24.     Paragraph 24 of the Motion for Discovery Sanctions is denied, except that the parties agreed to hold depositions after November 1, 2006 due to mutual scheduling issues. The Defendants, to facilitate completion and scheduling of Plaintiff's designee and Harold Beck, agreed to Plaintiff's demand that the depositions be held in Lady Lake, Florida on a date of Plaintiff's choice.  The actual location was set one block from the hotel designated by Plaintiff due to that hotel's inability to accommodate the parties. Defendants' counsel, at Defendants' expense, traveled to Plaintiff's witnesses when and where Plaintiff designated.

25.     Paragraphs 23 to 25 of the Motion for Discovery Sanctions demonstrate that delay in this litigation, if any, rests with Plaintiff.  In paragraph 23 of the Motion for Sanctions, Plaintiff states that discovery "ran from December 2, 2004".  Plaintiff concedes at Paragraph 24 that Plaintiff "originally noticed deposition[s] for May 23, 2006 through May 25, 2006."  If Plaintiff had a genuine concern regarding the litigation progress of its lawsuit, it would not have failed to notice a single deposition until 1 ½ years after the start of discovery.

26.     Paragraph 26 of the Motion for Discovery Sanctions correctly recites from the Deposition Notice.

27.     Paragraph 27 of the Motion for Discovery Sanctions is admitted. However, as the deposition transcript indicates, when Plaintiff stated that it did not have Paul Smith's electronic claim entries, the parties agreed that Defendant's counsel would search for such records, that the deposition would be left open, that no opposition would be made to enlarging the pretrial schedule and that Plaintiff could decide whether to request additional depositions.  It appeared that a resolution to the discovery issue was agreed upon.  (Paul Smith deposition, pp. 105-107, 114-116, attached as Exhibit Z hereto.)

28.     Paragraph 28 of the Motion for Discovery Sanctions completely misleads with half truths.  The testimony of Paul Smith was discussed before the scheduled deposition and Plaintiff was fully aware of the expected testimony.  The letter of counsel for Plaintiff confirming the above has been attached as exhibit GG.  ("We understand that, at least initially, Mr. Smith will be appearing in response to each of these notices. . . we have agreed to take Mr. Smith's deposition first and then determine whether subsequent depositions will be necessary.")  Plaintiff has never made any request for any additional questioning of any witness.

29.     Paragraph 29 of the Motion for Discovery Sanctions references a limited portion of the Paul Smith deposition.  As stated in paragraph 27 of this Answer to Motion for Sanctions, the parties had resolved Plaintiff's statement that it did not have the electronic claim file entries of Mr. Smith.

- 10 -

The discussion at Mr. Smith's deposition regarding the electronic claim record was, in part, as follows:

| | |
|---|---|
| MR. VICTORIA: | I didn't see a single note or anything in the   electronic file that was produced to me by Mr. Smith.  That seemed unusual to me, and given his testimony today, it seems even more unusual. |
| MR. McDYER: | We can go back and check that. |
| MR. MAYER: | Your request was - - |
| MR. VICTORIA: | I just want to make sure that we're - - |
| MR. McDYER: | Not missing anything. |
| MR. VICTORIA: | Yeah.  That's the kind of stuff that we all want to see. |
| MR. MAYER: | Yes. |
| MR. McDYER: | It's one of the problems when they go paperless. |
| MR. VICTORIA: | I've seen that in the past, too.  Because of that, I'm not going to say the deposition is closed when we're done today… (Smith Deposition 11/07/06, p. 105-106) |

* * *

| | |
|---|---|
| MR. McDYER: | I was kind of operating under the assumption that it had all been produced to you.  I'll have to go back and rework it. |
| MR. VICTORIA: | Thank you.  (Smith Deposition 11/07/06, p. 107) |

* * *

| | |
|---|---|
| MR. VICTORIA: | The only thing I guess I'm going to put on the record is you guys are going to follow up in seeing if there are some Paul Smith electronic files out there, large loss report, whatever these other things are we talked about.  And we'll be in touch on whether we need to talk about a Kathy London deposition or any other witnesses. |

* * *

| | |
|---|---|
| MR. VICTORIA: | I mean, we continue to agree with that obviously this is the first deposition taken in this case.  It's technically after the discovery deadline. |
| MR. McDYER: | I have no objection. (Smith Deposition 11/07/06, p. 114-115) |

* * *

MR. McDYER:      Yes. We're not holding your feet to the fire on a deadline.

MR. VICTORIA:     Well, thanks for coming today. (Smith Deposition 11/07/06, p. 116) (Paul Smith Deposition of November 7, 2006, pp. 105-107, 114-116) (Attached hereto as Exhibit Z)

30.     Paragraph 30 of the Motion for Discovery Sanctions is denied. The testimony of Paul Smith was discussed before the scheduled deposition and Plaintiff was fully aware of the expected testimony. The letter of counsel for Plaintiff confirming the above has been attached hereto as Exhibit GG. ("we understand that, at least initially, Mr. Smith will be appearing in response to each of these notices. . . we have agreed to take Smith's deposition first and then determine whether subsequent depositions will be necessary.") Plaintiff has never made any request for further questioning of any witness on any subject.

31.     Paragraph 31 of the Motion for Discovery Sanctions is incomplete. It fails to mention that, in the weeks following Mr. Smith's November 7, 2006 deposition, counsel prepared for and deposed Sharyn Beck and Harold Beck near their current residence in Lady Lake, Florida, and that the Thanksgiving Holiday week also intervened. In spite of the above, within 28 days of the Smith deposition, defense counsel made additional production.

32.     Paragraph 32 of the Motion for Discovery Sanctions is admitted in that an e-mail was sent on November 29, 2006, but denied in that within 4 business days of November 29, 2006, Plaintiff had its response, including copies of Mr. Smith's electronic claim file and a recopying of most discovery documents.

33.     Paragraph 33 of the Motion for Discovery Sanctions is admitted.

34.    Paragraph 34 of the Motion for Discovery Sanctions is denied.  It was Plaintiffs decision to not seek to depose a single witness until 1 ½ years into the lawsuit. It was Plaintiff's decision not to seek further deposition when it had been agreed that Plaintiff could do so.  It was Plaintiff's decision not to stipulate to extend the filing time for its Motion for Summary Judgment.

The financial condition of the Walter Beck Corporation was untenable before the fire.  To blame Plaintiff's financial failure on Defendants is unfounded. Harold Beck testified that the Walter Beck Corporation was not a profitable business.  (Harold Beck Deposition, November 11, 2006, p.36, lines 2-3, "The company lost money year after year after year.  I subsidized it.") (Exhibit AA, attached hereto.)  (Also Walter Beck Corporation Pennsylvania Corporate tax report 2002, book income from negative <20,954> to  negative <2,683>, Exhibit BB attached hereto.)

35.    Paragraph 35 of the Motion for Discovery Sanctions is denied.  While Bates numbered documents 339 to 944 were delivered to Plaintiff on December 5, 2006, the electronic file entries by Mr. Smith were generally but a few sentences or even a few words per page, numbering a total of 39 pages.  Of that group of 39 documents, 6 referenced conversations with Harold Beck.  These computer notes of conversations were statements already generally identified in letters from Paul Smith to the Plaintiff regarding admissions by Harold Beck that the fire suppression system had been removed. (The Paul Smith 6 computer entries referencing conversations with Harold Beck are attached as Exhibit CC, hereto.)

Other documents produced in that December 5, 2006 production group had already come to Plaintiff's possession by subpoena. For example, the file of Plaintiff's insurance agency was subpoenaed by both Plaintiff and Defendants and numbered in this December 5 group of documents.  Bates Nos. 424 to 619 consisted of Plaintiff's insurance agency file with Sundahl & Co. That file, consisting of approximately 200 pages or 1/3 of the production of December 5, had also been produced by Plaintiff's counsel, and therefore was in its possession.  (Exhibit DD attached hereto, cover letter for records from Plaintiff counsel dated June 9, 2006.)  Other documents, bates Nos. 641 to 694 were documents from Plaintiff's tax preparer, which had to be subpoenaed because Plaintiff refused production of same and still has not produced the 2003 tax records.  Tax returns were requested of Plaintiff by Defendants on September 26, 2005, but not provided. On May 31, 2006 authorizations for tax records were sent to Plaintiff, but never returned to Defendants. Finally, after service of 2 subpoenas in New York state upon Plaintiff's tax lawyer, the tax lawyer sent documents to counsel for Plaintiff. Subsequently, counsel for Plaintiff forwarded the tax records on November 8, 2006 after close of discovery and still failed to provide the 2003 tax year records. Accordingly, Plaintiff had the vast majority of the December 5 documents in its possession, either by prior production or by subpoena, with the exception of certain claim file entries.

The implication attempted by Plaintiff at paragraph 35 that 605 unseen documents were delivered on December 5, 2006 is false.

However, viewing the December 5, 2006 production group generally, the following list shows that Plaintiff had the majority of the documents.

Bates Nos. 339 to 423 consisted of the Alcohol Tobacco and Firearms Agency investigation records. Counsel for Plaintiff made request of the ATF for production of same.

Bates nos. 424 to 619 consisted of the Plaintiff's insurance agency's file, Sundahl & Co., Inc., which file materials were subpoenaed by Plaintiff's counsel and produced by Plaintiff. (Exhibit DD, Letter of Plaintiff counsel dated June 9, 2006)

Bates Nos. 620 to 640 were documents received by subpoena directed to National City Bank and already produced to Plaintiff on October 10, 2006. (Exhibit FF, Letter of Defendants' counsel dated October 10, 2006.)

Bates Nos. 704 to 709 is a letter by counsel for Plaintiff.

Bates Nos. 710 to 719 is a letter by counsel for Plaintiff including a copy of the Complaint.

Bates Nos. 728 to 729 is a letter from Paul Smith to Harold Beck which Plaintiff had.

Bates Nos. 755 to 766 is a copy of the Churchwell Fire Consultants report previously produced to Plaintiff.

Bates Nos. 772 to 773 is the denial letter from Paul Smith to Plaintiff previously produced to Plaintiff.

Bates Nos. 779 to 788 are the liquor, beer, food and contents inventories prepared by Plaintiff.

Bates Nos. 812 to 813 is an ATF letter to Paul Smith previously produced to Plaintiff.

Bates No. 814 is an invoice for rental of a skid loader previously provided to Plaintiff.

Bates Nos. 847 to 866 are public records at McKean County Property Tax Office showing property taxes previously produced to Plaintiff.

Bates Nos. 867 to 874 were photographs previously produced to Plaintiff.

Bates Nos. 875 to 876 were State Police witness statements and hand written witness notes previously produced to Plaintiff.

Bates Nos. 928 to 931 is a letter from Paul Smith to Plaintiff which Plaintiff had at Mr. Smith's deposition.

Bates Nos. 941 to 943 was part of the insurance policy and was previously provided.

There are 39 electronic claim file entries by Paul Smith. This constitutes 6% of the December 5 production. Of these entries, 6 referenced conversations with Harold Beck. Those entries concerned issues already discussed in the formal letters from Paul Smith to Plaintiff regarding admissions by Mr. Beck that the fire suppression system was removed.[3]

36.    Paragraph 36 of the Motion for Discovery Sanctions is an overstatement. The Appendix to the Motion for Summary Judgment of Defendants referred to only 3 electronic claim file entries of Paul Smith regarding conversations with Harold Beck. These entries were dated January 7, 2004 and February 11, 2004 and were listed as

---

[3]    It is interesting to note Plaintiff without detailing content, complains that some of the claim file documents record communications between a representative of Defendants, Paul Smith, and Plaintiff.  Yet all such conversations were with Harold Beck, whom, Plaintiff in its Concise Statement of Facts and Motion for Summary Judgment argues or implies that Harold Beck was a stranger to Plaintiff.

Exhibits P and Q in the Appendix to Motion for Summary Judgment and attached hereto as Exhibits P and Q.

37.     Paragraph 37 of the Motion for Discovery Sanctions is denied. Defendants produced the documents within 28 days of the deposition of Paul Smith. In that intervening period, Defendants traveled to Florida, where Sharyn Beck and Harold Beck reside, to take depositions. Additionally, the Thanksgiving Holiday week intervened. The vast majority of documents delivered on December 5, 2006 by Defendants were already in Plaintiff's possession. The electronic claim file entries of Paul Smith, which were new documents, contain no new issue or subject. Plaintiff suffered no prejudice. Moreover, the electronic claim file had nothing for Plaintiff to use in its Motion for Summary Judgment. However, if Plaintiff determines that there is a document in the file that it can use to its benefit, Plaintiff can do so by supplementing its Motion for Summary Judgment. Based on Paragraphs 1 through 37 of this Answer, the Poulis factors do not weigh in favor of Plaintiff.

38.     Paragraph 38 of the Motion for Discovery Sanctions correctly quotes from Federal Rule of Civil Procedure 37 (c)(1).

39.     Paragraph 39 of the Motion for Discovery Sanctions correctly quotes from Federal Rule of Civil Procedure 37 (b)(2)(A), (B), and (C).

40.     Paragraph 40 of the Motion for Discovery Sanctions correctly states that the imposition of sanctions is a matter entrusted to the discretion of the District Court.

41.     Paragraph 41 of the Motion for Discovery Sanctions quotes from Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 867 (3d Cir. 1984) regarding "the extreme nature of a dismissal with prejudice or default judgment" and the Circuit Court's holding

that such drastic sanctions "should be reserved for those cases where there is a clear record of delay or contumacious conduct" (Poulis at 866) by the party against whom the sanctions are sought.  It is of interest that the factors announced in the Poulis case, which are to be used by a district court in determining whether the sanction of dismissal or default should be utilized in a matter, were in response to the Court of Appeals' view that "the extreme sanction of dismissal or default is reserved for instances in which it is justly merited." Id. at 870. The Court further stated "that dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court,…and are to be reserved for comparable cases." Id. at 867-868, *quoting* National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (U.S. S.Ct. 1976). In the *National Hockey League* case, the Supreme Court upheld the extreme sanction of dismissal only after noting that there had been "flagrant bad faith" on the part of the plaintiffs as well as "callous disregard" by their counsel of their responsibilities. National Hockey League at 643.  In fact, the remedy of dismissal or default has been determined to be so drastic, that it is "to be reserved for extreme cases in which there is no effective alternative." Coastal Mart, Inc. v. Johnson Auto Repair, Inc., 196 F.R.D. 30, 33 (E.D. Pa. 2000). The Court of Appeals for the Third Circuit, in analyzing cases where a party sought the extreme sanction of dismissal or default, has stated that "it is necessary for the district court to consider whether lesser sanctions would better serve the interests of justice." Titus v. Mercedes Benz of North America, 695 F.2d 746 (3d Cir. 1982); *See also* Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339 (3d Cir. 1982). When a district court has doubt, the decision whether to dismiss "should be resolved in favor of reaching a decision on the merits" and "alternative sanctions should be used." Scarborough v. Eubanks, 747

F.2d 871, 878 (3d Cir. 1984). Paragraphs 1 through 37 of this Answer demonstrate that this is not a case for extreme sanction or even sanction. The "background" section of this Answer page 1, details effective alternatives.

42.     Paragraph 42 of the Motion for Discovery Sanctions correctly quotes the requirement that any dismissal or default judgment entered pursuant to Fed. R. Civ. P. 37 "be accompanied by some articulation on the record of the Court's resolution of the factual, legal and discretionary issues presented," so that the Court of Appeals, if called upon to do so, may "determine whether the relevant factors were considered and assigned appropriate weight in making the decision." In re MacMeekin, 722 F.2d 32, 34-35 (3d Cir. 1983).

43.     Paragraph 43 of the Motion for Discovery Sanctions correctly states the six-factor balancing test found in Poulis; Scarborough v. Eubanks, 747 F.2d at 874-878; and George v. Hamilton, 104 F.R.D. at 108-109. Plaintiff incorrectly states that a trial court does not have to examine all of the six factors to warrant dismissal. In fact, all of the factors should be examined. The correctly stated rule is that a district court need not find every factor satisfied. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988).

44.     Paragraph 44 of the Motion for Discovery Sanctions is denied. In Paragraph 44 of its Motion, Plaintiff attempts to state that the Defendant parties are somehow responsible for the delay in supplemental production of documents in this matter or that the first factor of the Poulis test is satisfied by stating that the Defendant parties had the delayed production documents in their possession. As stated above in this Answer, the Defendant parties had no part in the document production preparation in this matter.

Also, as stated previously, current defense counsel entered an appearance in this matter on or about May 31, 2006. Following this entry of appearance, a second set of Interrogatories and Requests for Production were served by Plaintiff on or about June 29, 2006. Upon current defense counsel's examination of this second set of discovery requests, it was determined that they were substantially similar to the first set of Interrogatories and Requests for Production. Accordingly, defense counsel served responses which, for the most part, referenced the responses made earlier to the first set of discovery.

Additionally, current defense counsel made objections to the discovery requests as being duplicative of earlier discovery, and said objections were not challenged by Plaintiff. Defense counsel was not aware that the electronic claim file entries of Paul Smith, the claim representative, had not been produced. It appeared from the first set of discovery that responses had been provided.  (See paragraph 16 of this Answer.)

During the deposition of Paul Smith, in which he testified that he had made electronic entries into the computer system regarding this matter, Plaintiff's counsel requested current defense counsel to recheck the claim file to make sure that Mr. Smith's notes were produced. Plaintiff's counsel then requested on the record that should additional notes or other portions of the file be produced following the deposition, that the deposition would remain open and that other depositions might become necessary. Defense counsel expressed that he had no objection to this method of proceeding and believed the issue resolved. (See Paragraph 29 of this Answer)

In the weeks following Mr. Smith's November 7, 2006 deposition, counsel for Defendants prepared for and deposed Sharyn and Harold Beck near their current residence in Lady Lake, Florida. The Thanksgiving Holiday week also fell in the following weeks. Nevertheless, within 28 days of the Smith deposition and the agreement reached during that deposition, defense counsel served on Plaintiff's counsel additional production. If Plaintiff did not receive these portions of the claim file in previous responses to discovery requests, it was a matter of inadvertence on the part of defense counsel and not design. The actual Defendant parties to this matter had nothing to do with any inadvertence which may have occurred. However, Plaintiff from 2005 to the present made no specific reference to missing claim file entries. Plaintiff delayed the first deposition until 1 ½ years into the lawsuit. Plaintiff must be considered part of the problem of which Plaintiff now complains.  (See Paragraph 25 of this Answer and the "background" section.)

45.     Paragraph 45 of Plaintiff's Motion for Sanctions is denied. In Paragraph 45 of its Motion, Plaintiff attempts to demonstrate that it has been prejudiced by the delay in supplemental production in this matter by stating that the trial has been delayed and that it will have to engage in additional discovery. This is an attempt to satisfy the second factor of the test announced in <u>Poulis</u>. There has been no prejudice caused to Plaintiff in the inadvertent delay in the production of the documents in question.  There is no trial date.  Moreover, Plaintiff took 1 ½ years to notice any deposition.

Plaintiff's discussion of the financial hardships supposedly caused to it by the denial of the insurance claim by Defendant is completely unrelated to the potential prejudice caused by a delay in production of documents in this matter. Notwithstanding

the lack of relevance to the analysis of potential prejudice, the claims of financial hardship are without merit. The financial condition of the Walter Beck Corporation was untenable before the fire which gave rise to Plaintiff's insurance claim. Harold Beck testified that the Walter Beck Corporation was not a profitable business and that it "lost money year after year" and that he "subsidized it" (See Paragraph 34 of this Answer).

In analyzing a request for sanctions under the Poulis factors, a district court is required to examine the prejudice caused to the party whose discovery request was not met. In so doing, the court is given discretion to determine that even if prejudice exists, that said prejudice is ultimately harmless and will not affect the party's ability to prosecute or defend its case. In fact, although written in mandatory terms, Fed. R. Civ. P. 37 also expressly provides that sanctions should not be imposed if the failure to disclose is harmless. Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995). "Thus, the rule does not leave district courts without discretion." Id. Whether a failure to disclose should be deemed harmless depends upon whether the other parties suffer prejudice. 6 James M.W. Moore, et al., *Moore's Federal Practice*, § 37.63 (3d ed. 1997). Here, Plaintiff claims that the prejudice suffered lies in the delay of the resolution of this matter. This is ironic in that Plaintiff's only representative who was in contact with Defendant during the initial investigation of the claim, Harold Beck, testified in his deposition that he refused to cooperate with the initial investigation of the claim and unilaterally ceased contact with Defendant during the ongoing investigation. (See paragraph 6 of this Answer)  If Plaintiff was interested in a timely resolution of this claim, perhaps a representative who cooperated with the investigation of the claim would have better served Plaintiff.

Additionally, delays in the discovery process were caused by the Plaintiff. It was Plaintiff's decision to not seek or notice the deposition of a single witness until nearly 1 ½ years had passed since the filing of Plaintiff's Complaint. Also of interest is that the parties jointly agreed, during the deposition of Paul Smith, to keep that deposition open and to allow for the noticing of other depositions by Plaintiff. Plaintiff has failed to reconvene the deposition of Paul Smith or to notice any other deposition in this matter, even after receiving the supplemental production in question. At worst, the delay in production might perhaps generate a deposition. Defendant has never disputed Plaintiff's convening a deposition, and, in fact, made an agreement with Plaintiff's counsel on the record of the Deposition of Paul Smith that it would not object to any further deposition of Paul Smith and acknowledged additional depositions could be requested by Plaintiff. This was certainly a reasonable resolution of the discovery issue, and defense counsel thought the issue resolved.  (See paragraphs 28 and 29 of this Answer.)  However, Plaintiff has not availed itself of that opportunity.

For what Plaintiff would characterize as a delay in discovery due to Defendants, (which is not agreed with by Defendants) Plaintiff seeks dismissal.  However, the United States District Court for the Western District of Pennsylvania has held that even when "the record suggests that a defendant's failure to supplement its response to plaintiff's interrogatory might have prejudiced plaintiff by requiring [it] to reopen and reexamine certain areas of completed discovery, including the need to (1) revisit matters [addressed in a prior deposition], and/or (2) reexamine and further explore [the additional information]", a motion to strike defendant's affirmative defenses was too harsh a request for sanctions.  The Court did impose attorney fees. Cody v. Phil's Towing Company, 247

- 23 -

F.Supp. 2d 688, 698 (W.D. Pa. 2002). In <u>Cody</u>, the parties did not have an agreement to proceed as outlined in the Smith deposition. (See paragraph 29 of this Answer) This agreement was made within 28 days of the time for filing Summary Judgment Motions. Plaintiff suggested it may enlarge the date for Summary Judgment Motions, but proceeded. It was Plaintiff that delayed depositions for 1 ½ years. Plaintiff knew it was taking depositions within 30 days of the Summary Judgment filing date, yet sought no enlargement. Now Plaintiff changes its mind and blames its problems caused by its own delays in prosecuting the case on Defendants. Plaintiff has to take responsibility for its decisions in this case.

As indicated in the factual emphasis of Paragraphs 1 to 37 of this answer, Defendants do not believe a sanction is appropriate. Moreover, Plaintiff could examine witnesses regarding the additional documents. Interestingly, Plaintiff has failed to attempt to reopen the deposition of Paul Smith or to notice any other deposition, even after receiving the supplemental production. The prejudice claimed by Plaintiff in this matter, if it is indeed prejudice, is harmless at best or is non-existent, self-imposed, and does not weigh in favor of the sanctions sought by Plaintiff.

46.     Paragraph 46 of Plaintiff's Motion for Sanctions is denied. In Paragraph 46, Plaintiff claims that it was further prejudiced by the delay in supplemental production in that its counsel had prepared a Motion for Summary Judgment prior to receipt of the supplemental production. This is a further attempt to satisfy the second factor in the <u>Poulis</u> test. Plaintiff would have this Honorable Court believe that Plaintiff's Motion for Summary Judgment is now rendered moot by the supplemental production. While the Motion is without merit, the claim information was not changed by the supplemental

production. The specific electronic file entries by Mr. Smith were but a few sentences or words per page, and totaled only 39 pages. Of those 39 pages, only 6 referenced conversations with Harold Beck, Plaintiff's representative. It is doubtful that Plaintiff would have attached to its Motion for Summary Judgment these electronic notes that said that Mr. Beck had informed Paul Smith that he had removed a fire suppression system in Plaintiff's restaurant. This was not new information for the Plaintiff.

The initial claim denial letter, sent by Paul Smith to Plaintiff on February 11, 2004, expressed that Paul Smith had been informed by Mr. Beck that the fire suppression system had been removed. Plaintiff's Summary Judgment Motion makes the argument that this conversation was a misunderstanding on the part of Defendant's representative and that Plaintiff always had a fire suppression system in place. The claim notes produced for Plaintiff do not provide Plaintiff support.

The additional claim file documents, other than Smith's electronic entries, deal with mundane claim handling, invoices, and investigation which is similar to the State Police investigation. These also provide no assistance to Plaintiff. However, should any document in the supplemental production be deemed useful by Plaintiff, it is able to supplement its original Motion for Partial Summary Judgment. Curiously, even though the documents have been in the possession of Plaintiff since December 5, 2006, Plaintiff has made no attempt to supplement its original Motion.

Additionally, the delay in the supplemental production has in no way prejudiced Plaintiff's ability to respond to Defendants' Motion for Summary Judgment. Plaintiff has had the documents since December 5, 2006, and is now not required to respond to Defendant's Motion until one month following the resolution of this discovery dispute.

47.     Paragraph 47 of Plaintiff's Motion for Sanctions is denied. In Paragraph 47, Plaintiff attempts to demonstrate a history of dilatoriness on the part of Defendants and/or Defendants' counsel to satisfy the third factor of the test announced in Poulis. As stated previously, the inadvertence of supplemental discovery was not a design, and could have been entirely avoided had Plaintiff acted promptly in 2005. The Third Circuit Court of Appeals, when analyzing a case for a history of dilatoriness on the part of a party, has held that extensive delinquency constitutes a history of dilatoriness, such as consistent tardiness in complying with court orders. Poulis at 868. On the other hand, "inadvertence" while an attorney was moving offices that resulted in an untimely response to two court orders and a late retention of local counsel did not amount to "a pattern of deliberate dilatory action". Donnelly at 343. Clearly, the actions of defense counsel herein could not be considered deliberately dilatory. When informed of the lack of production of the electronic claim notes, it was agreed that a search would be conducted. As explained above, attendance at the deposition of Plaintiff's representatives in Florida as well as the Thanksgiving holiday slowed the supplemental production, but the documents were still produced within 28 days of counsel's being informed of the missing production. This does not indicate a pattern of dilatoriness.    The lack of a genuine history of dilatoriness is seen in Plaintiff noting that Defendants rule 26(a) disclosure was served several days late. The Plaintiff is grasping at straws.  There was only a single delay that involved responding to Plaintiff's First Discovery Interrogatories and Requests, and that was in 2005.

48.    Paragraph 48 of Plaintiff's Motion for Sanctions is denied. In Paragraph 48 of its Motion, Plaintiff attempts to state that the conduct of Defendants and/or Defendants' counsel in the delay of the supplemental production was willful and in bad faith. This is an attempt to satisfy the fourth factor of the test announced in Poulis.  In evaluating a dismissal or other extreme sanction under the Poulis factors, a court should look for "the type of willful or contumacious act which was characterized as 'flagrant bad faith' in National Hockey League, [427 U.S. at 643]." Scarborough, 747 F.2d at 875; see also Poulis, 747 F.2d at 866. In National Hockey League, the district court dismissed the case after 17 months in which the plaintiffs failed to answer crucial interrogatories despite numerous extensions, and broke promises and commitments to the court. The Supreme Court approved the dismissal as a proper response to such behavior. Willfulness involves intentional behavior. Willfulness is absent here; at most there is inadvertence.

In Donnelly, when the plaintiff's case was transferred from Texas to New Jersey, he was tardy in obeying court orders to obtain New Jersey counsel. The Third Circuit held that the plaintiff's difficulties did not amount to an inability to comply, but rather "[a]t best…show[ed] a failure to move with the dispatch which the notice and order to show cause required, and provide[d] no basis for exculpation of plaintiff's Texas counsel on the grounds of inability." Donnelly at 342. Noting, however, that the Texas lawyer had timely attempted to locate local counsel, the Third Circuit also held "no willfulness is mirrored in the record." Id. at 343. Thus tardiness not excused for inability is not necessarily willful. Were one to argue defense counsel had the ability to supplement production at an earlier time, bad faith or willfulness is still not shown.

Additionally, as previously explained, the documentation produced in the supplemental production in Defendants' view was consistent with Defendants' contention that Plaintiff had informed it that a fire suppression system had been removed. Any delay in producing such evidence would not be described as self-serving or in bad faith. Defendant would gain no procedural advantage by delaying the production of materials that confirm its defense. If the supplementing production was slowed, it was slowed more by the delays of Plaintiff than inadvertence of defense counsel.

49.     Paragraph 49 of Plaintiff's Motion for Sanctions is denied. In Paragraph 49, Plaintiff attempts to state that no other sanction other than in the extreme would be effective in this matter, and thus, the court need not analyze alternative sanctions as required by the fifth factor of the Poulis test. The most extreme sanctions available to this Honorable Court should not apply in this matter when the Poulis factors are weighed. However, Plaintiff seems to feel that supplemental production has necessitated some additional discovery. This, however, was contemplated by Plaintiff at least as far back as the date of the deposition of Paul Smith on November 7, 2006. As stated previously, the parties agreed on the record at that deposition that should the supplemental production of claim file documents necessitate depositions, they would be accomplished. On November 7, 2006, Plaintiff agreed on the record of the Smith deposition that this was the fair way to handle the matter. After Defendant filed its Motion for Summary Judgment, Plaintiff wants to retreat from that agreement. (See paragraphs 28 and 29 of this Answer) The facts have not changed. Plaintiff just has more written confirmation.

Defendants should not now be sanctioned in the most extreme possible way available to this Court for Plaintiff's failure to act under the terms of the previous discovery agreement. However, should this Honorable Court feel that this matter warrants the imposition of sanctions, there are certainly less extreme sanctions available which might remedy any perceived injustice. While it is Defendants' position that no sanctions are warranted in this matter, certainly extreme sanctions are not just relief.

50.     Paragraph 50 of the Motion for Discovery Sanctions is denied. Although the summary judgment standard is not used for determining a meritorious claim, Plaintiff's Complaint fails to allege compliance with the Protective Safeguards Endorsement. The Complaint fails to alleged inspection of a fire suppression system every 6 months, by an independent contractor, or cleaning quarterly by an independent contractor. Also, we know from the opposition brief of Defendants to the Summary Judgment Motion that the system, if installed, was not U.L. listed. Indeed, to accept Plaintiffs Complaint, in face of Harold Beck's statement that the fire suppression system had been removed; that removal had been confirmed by Plaintiff in a survey form; and then to accept Harold Beck's "you misunderstand", the system was not removed, would be gross injustice.

51.     Paragraph 51 of Plaintiff's Motion for Sanctions is denied. Viewed in light of the Poulis factors and the fact that delay in this matter is heavily the result of Plaintiff's own conduct in failing to prosecute its case, together with the fact that Plaintiff has not been prejudiced by the supplemental production, the extreme sanctions proposed by Plaintiff would not properly serve the interests of justice.

52.    Paragraph 52 of Plaintiff's Motion for Sanctions is denied. The alternative sanctions proposed by Plaintiff are deemed just as extreme as dismissal of an action by the relevant case law and are also to be granted only after the use of the <u>Poulis</u> test by the Court. A weighing of the <u>Poulis</u> factors in this matter does not warrant the imposition of any sanctions, or any of the extreme sanctions proposed by Plaintiff.

53.    Based on the facts and the law Defendants respectfully request this Honorable Court deny Plaintiff's Motion for Sanctions in its entirety.

WHEREFORE, Defendants, Safeco Corporation, American Economy Insurance Company and American States Insurance Company respectfully request that this Honorable Court deny Plaintiff's Motion for Sanctions in its entirety.

Anstandig, McDyer & Yurcon, P.C.

BY: s/ Daniel P. McDyer
Daniel P. McDyer, Esquire
Pa. I.D. #19854
Attorney for Defendants

1300 Gulf Tower – 707 Grant Street
Pittsburgh, PA 15219
(412) 765-3700