1

1

2

3            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

4                    - - - - -

5   WALTER BECK CORPORATION)
    d/b/a THE RAINBOW INN, )

6                          )
            Plaintiff,     )

7                          )
            vs.            ) Civil Action

8                          ) No. 04-348-ERIE
    SAFECO CORPORATION,    )

9   AMERICAN ECONOMY       )
    INSURANCE COMPANY and  )

10  AMERICAN STATES        )
    INSURANCE COMPANY,     )

11                         )
            Defendants.    )

12
                     - - - - -

13

14        DEPOSITION OF PAUL G. SMITH

15                   - - - - -

16  REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
    WITHOUT AUTHORIZATION FROM THE CERTIFYING

17  AGENCY

18                   - - - - -

19
                CERTIFIED TRANSCRIPT

20                NOT AN ORIGINAL

21

22

23

24        DEFENDANT'S
          EXHIBIT
25            Z

1              P. Smith - by Mr. Victoria

2    all of the business property, I did not.

3         Q.    Is this something you did prior to

4    the filing of the lawsuit?

5         A.    Yes.

6         Q.    What did you set the reserve to be

7    for the property damage?

8         A.    I don't recall.  That should be in

9    this file somewhere.  I mean, that's pretty

10   customary in any insurance company.  That's

11   something we do very quickly.

12              MR. VICTORIA:  If you give me

13   a few minutes, I'll wrap up pretty quickly.  If

14   you want to take a five or ten-minute break,

15   I'll flip through this stuff and we'll get

16   done.

17              (A recess was taken.)

18              MR. VICTORIA:  I didn't see a

19   single note or anything in the electronic file

20   that was produced to me by Mr. Smith.  That

21   seemed unusual to me, and given his testimony

22   today, it seems even more unusual.

23              MR. McDYER:  We can go back

24   and check that.

25              MR. MAYER:  Your request

1                P. Smith - by Mr. Victoria

2      was --

3                      MR. VICTORIA:  I just want to

4      make sure that we're --

5                      MR. McDYER:  Not missing

6      anything.

7                      MR. VICTORIA:  Yeah.  That's

8      the kind of stuff that we all want to see.

9                      MR. MAYER:  Yes.

10                     MR. McDYER:  It's one of the

11     problems when they go paperless.

12                     MR. VICTORIA:  I've seen that

13     in the past, too.  Because of that, I'm not

14     going to say the deposition is closed when

15     we're done today.  I mean, if we maybe have to

16     ask some questions on the telephone or -- I'm

17     trying to make your life as easy as possible.

18     If those documents weren't produced, we may

19     have questions about them.  Obviously they are

20     your notes, so we may have to get into that.

21     It just seemed odd to me throughout.  In fact,

22     that's why I made the second document request

23     for them.  I thought, well, maybe under new

24     counsel, it might get re-investigated and turn

25     something up, and it didn't, so I don't know.

1              P. Smith - by Mr. Victoria

2                    MR. McDYER:  I was kind of

3     operating under the assumption that it had all

4     been produced to you.  I'll have to go back and

5     rework it.

6                    MR. VICTORIA:  Thank you.

7          Q.    I just want to show you a couple of

8     things here.

9                    (Smith Deposition Exhibit No. 13

10    was marked for identification.)

11         Q.    I put a document in front of you.

12    It's starts at Bates stamp number 92 and goes

13    to 102.  Generally speaking, do you know where

14    that document came from?

15         A.    It appears to be an electronic file

16    of underwriting document.

17         Q.    You said underwriting document.  I

18    just want to get at how the electronic file is

19    kept.  Is it divided by underwriting and

20    claims?

21         A.    Yes.

22         Q.    Because we've been produced what

23    appear to be all of the underwriting

24    information from the electronic file.  I have a

25    stack of -- these are just a tiny excerpt of

1

2    are some Paul Smith electronic files out there,

3    large loss report, whatever these other things

4    are we talked about.  And we'll be in touch on

5    whether we need to talk about a Kathy London

6    deposition or any other witnesses.

7                    MR. MAYER:  (Nods head.)

8                    MR. VICTORIA:  I'll talk to

9    Josh about that, and we'll get back to you.  I

10   don't want to drag anybody here, so maybe what

11   we need to do is have a chat about what we

12   intend to talk about and whether you intend to

13   let her talk to us about it.

14                   MR. MAYER:  That's fair.

15                   MR. VICTORIA:  I don't presume

16   there is going to be any objection to taking a

17   deposition because we're past the discovery

18   deadline.  I mean, we've been pretty --

19                   MR. MCDYER:  When I talked to

20   Josh, he said rather than chase around with the

21   courthouse, we'll just try and get them done

22   quickly.

23                   MR. VICTORIA:  I mean, we

24   continue to agree with that obviously this is

25   the first deposition taken in this case.  It's

1

2    technically after the discovery deadline.

3             MR. McDYER:  I have no

4    objection.

5             MR. VICTORIA:  I just want to

6    make sure that we're not -- we've been playing

7    fair on the discovery deadline stuff, and I

8    want to continue that way, but if we -- worse

9    case, if we need to go and send a motion up to

10   the judge, I guess we'll do it.

11            MR. MAYER:  Okay.

12            MR. McDYER:  I mean, as you go

13   through these things, you know, you get some

14   ideas that maybe, well, I want to talk to this

15   person in underwriting, maybe I want to talk to

16   Kathy London, and, of course, I know we've got

17   the Beck scheduled.  But as we talk to them,

18   there may be --

19            MR. VICTORIA:  We understand.

20            MR. McDYER:  One or two other

21   that we want to slip in and try and get over in

22   a hurry before we get too far beyond with what

23   we've already gotten beyond.

24            MR. VICTORIA:  I understand.

25            MR. McDYER:  I understood that

1

2    was sort of okay with Josh.

3                    MR. VICTORIA:  It is.  And I

4    wanted to make sure we're still on the same

5    page.

6                    MR. McDYER:  Yes.  We're not

7    holding your feet to the fire on a deadline.

8                    MR. VICTORIA:  Well, thanks

9    for coming today.

10                   (Signature not waived.)

11                   (Whereupon, the above-entitled

12   matter was concluded at 12:29 p.m.)

13                        - - - - -

14

15

16

17

18

19

20

21

22

23

24

25