**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WALTER BECK CORPORATION d/b/a THE RAINBOW INN, | ) ) ) CIVIL DIVISION |

WALTER BECK CORPORATION d/b/a THE )    CIVIL DIVISION
RAINBOW INN, )
                              )    Civil Action No. 04-348 - Erie
          Plaintiff, )
     vs. )    JUDGE MAURICE B. COHILL, JR.
                              )
SAFECO CORPORATION, AMERICAN )
ECONOMY INSURANCE COMPANY, and )
AMERICAN STATES INSURANCE )
COMPANY, )    **ELECTRONICALLY FILED**
                              )
          Defendants. )

**WALTER BECK CORPORATION'S REPLY TO DEFENDANTS'**
**ANSWER TO MOTION FOR DISCOVERY SANCTIONS PURSUANT TO RULE 37**

Walter Beck Corporation d/b/a The Rainbow Inn ("Beck Corp."), by and through its undersigned counsel, hereby files the following Reply to Defendants' Answer to Motion for Discovery Sanctions Pursuant to Rule 37 ("Reply"). Because this Reply is intended to address only limited issues not discussed in Beck Corp.'s original Motion for Discovery Sanctions Pursuant to Rule 37 ("Motion") or in need of clarification, Beck Corp. will not address the Defendants' Answer on a paragraph-by-paragraph basis. Certainly, should this Court prefer a paragraph-by-paragraph reply, Beck Corp. will prepare such promptly.

**I.**     **The Defendants Have Not Accurately Advised This Court Regarding The History Of Discovery In This Case**

In attempting to justify their failure to produce crucial documents requested on numerous occasions by Beck Corp. until the after close of business on the day before the parties' respective motions for summary judgment were due, incredibly, the Defendants point the finger at Beck Corp. and accuse Beck Corp. of delaying 1½ years in scheduling depositions and of failing to

advise that documents were not produced. However, a review of the timeline of events in this case with respect to discovery clearly undercuts and refutes these allegations:

**June 30, 2005** - Six (6) days after the Court-ordered deadline of June 24, 2005, Safeco produced documents pursuant to Rule 26(a) that did not include Safeco's electronic claims file or any of the Objectionable Documents.

**July 8, 2005** - Beck Corp. propounded its First Set of Interrogatories and Request for Production of Documents ("First Discovery Requests"), which specifically requested Safeco's claims file.

**August 22, 2005** - Having received no response from Safeco or request for extension of time, Beck Corp.'s counsel requested that Safeco produce responses to the First Discovery Requests immediately. *See* Motion, Ex. D. By telephone, Safeco's counsel agreed to provide responses to the First Discovery Requests no later than September 2, 2005. *See* Motion, Ex. E.

**September 27, 2005** - Having still received <u>no response of any kind from Safeco, not even a telephone call or e-mail</u>, Beck Corp.'s counsel advised that if responses to the First Discovery Requests were not provided by September 30, 2005, Beck Corp. would be forced to file a motion to compel with this Court.

**October 3, 2005** - Still having received no response of any kind, Beck Corp. filed a Motion to Compel (Docket No. 13).

<u>Certainly, at this point in time, it cannot be Safeco's contention that the delays in discovery were caused in any fashion by Beck Corp.</u>

**October 26, 2006 -** This Court entered an Order granting Beck Corp.'s Motion to Compel requiring, "...full and complete responses..." to Beck Corp.'s First Discovery Requests no later than November 11, 2005. *See* Motion, Ex. G.

**November 8, 2005 -** Almost four (4) months after service of the First Discovery Requests, Safeco produced its Objections and Responses to the First Discovery Requests, which did not include Safeco's claims file.

**November 8, 2005 –** Along with its long past due responses to Beck Corp.'s First Discovery Requests, Safeco served document requests of its own on Beck Corp. Additionally, despite Beck Corp.'s perhaps overly courteous tolerance of the delays in providing responses to the First Discovery Requests, Safeco served Notices of Deposition scheduling Harold and Sharon Beck's depositions for December 16, 2005.

**December 13, 2005 -** With the holiday season and a January 13, 2006 discovery deadline rapidly approaching, following telephone conversations and e-mails, the parties agreed to continue the depositions to a later, mutually agreeable date and to extend the discovery deadline to June 2, 2006. *See* Docket Nos. 15 and 16.

**December 27, 2005 -** Beck Corp. provided responses to Safeco's discovery requests, including State Police and ATF investigative reports that it had been attempting to obtain for months from third parties by way of subpoenas and subsequent correspondence.

**January 2006 through April 2006**

In early 2006, believing that it now had all relevant documents from Safeco in its possession, Beck Corp. formulated its litigation strategy based primarily upon such documents

and Safeco's discovery responses. Most significantly, because it appeared from the pleadings and Safeco's discovery responses that the entirety of the dispute in this case essentially centered around: 1) whether a fire suppression system was in place at the Rainbow Inn; and 2) exactly what Harold Beck had said to Safeco's claim adjuster, Paul Smith, regarding such a system, the fact that Safeco repeatedly represented that it had no documents or notes from Mr. Smith in its possession played a critical role in this analysis. Thus, as is evidenced by Beck Corp.'s Motion for Partial Summary Judgment (Docket No. 24), Beck Corp. undertook steps, by subpoena and otherwise, to obtain and did in fact secure third-party discovery on these issues.

Additionally, during the winter and/or spring of 2006, Safeco's counsel advised Beck Corp.'s counsel that it would be reviewing the case with its clients and may be in a position to discuss settlement of the case. As settlement discussions seemed prudent (and third-party discovery was ongoing), neither party pressured the other to provide deposition dates, though the fact that depositions likely would be necessary was most certainly discussed.

**May 1, 2006** - Having received no settlement offer from Safeco and having made significant progress on third-party discovery, Beck Corp served Rule 30(b)(6) Notices of Deposition for each of the Defendants, as well as deposition notices for Mr. Smith and Kathy London with a message stating, "I recognize that we have not discussed available dates for this matter and am willing to attempt to accommodate your and your clients' schedules. However, with the discovery deadline only one month away, we wanted to get these noticed for obvious reasons. I also recognize that you may want to produce representative(s) from a single company on behalf of all of the defendants and I am willing to discuss this possibility with you. My concern, of course, is protecting my client's interests

with respect to any claims in may have against any of the defendants." *See* 5/1/06 and 5/2/06 e-mail communications, a true and correct copy of which are attached hereto as Ex. A, made a part hereof and incorporated by reference as though fully set forth at length herein.

**May 2, 2006** – In response, as Safeco's counsel indicated that he was going to be in trial on the designated deposition dates, he suggested a 90-day extension to the discovery deadline, to which Beck Corp. agreed and this Court so ordered. *See* Ex. A; *see also* Docket Nos. 17 and 18. Moreover, with respect to the proposed extension of the discovery deadline, Safeco's counsel expressly stated that, "I don't think the judge will mind if we tell him the situation and explain that the parties are exploring the possibility of settlement." *See* Ex. A.

**May 31, 2006** - Safeco changed its counsel of record to its present counsel (Docket No. 20).

**June 29, 2006** - In an effort to ensure that all of the documents requested of Safeco and all relevant documents had been produced, Beck Corp. propounded its Second Set of Interrogatories and Request for Production of Documents ("Second Discovery Requests"), specifically and explicitly requesting, "All documents, files, and/or notes, whether in hard copy or electronic form, prepared by or, at any time, in the possession of Paul Smith concerning Beck or the Rainbow Inn." *See* Motion, Ex. I.

In view of the above timeline, which accurately reflects Beck Corp.'s conduct in discovery during the "1½ years" repeatedly cited by Safeco in its Answer to the Motion, Beck Corp. vehemently disagrees with Safeco's characterization of the alleged delays. Initially, it is

completely unreasonable to presume that Beck Corp. should (or could) have noticed and taken depositions prior to the initial status conference and production of Safeco's Rule 26 disclosures, which did not occur until at least June 30, 2005. Any time that elapsed from the filing of the Complaint on December 2, 2004 (Docket No. 1) to this date was most certainly not the result of any conduct of Beck Corp.

For the next several months, Beck waited for responses to its very promptly served (on July 8, 2005) First Discovery Requests. Of course, Safeco ignored Beck Corp.'s First Discovery Requests and only a Motion to Compel (Docket No. 13) to which Safeco failed to respond and an order from this Court (Docket No. 14) could get its attention. Even then, the responses provided on November 8, 2006 were woefully incomplete. Then, Beck Corp., without the need for a court order or repeated requests from Safeco's counsel, provided responses to Safeco's November 8, 2005 discovery requests on December 27, 2005.

Despite the foregoing undisputed and indisputable facts, Safeco, which failed to produce the most significant documents in its possession until the eve of the summary judgment deadline, has the audacity and temerity to represent and/or imply to this Court that Beck Corp. somehow delayed "1½ years" before noticing the depositions on May 1, 2006. This is, at best, a gross exaggeration, and, at worst, a blatant misrepresentation. Regardless of how labeled, this most certainly is not true.

Finally, to add insult to injury, Safeco further contends that Beck Corp. engaged in questionable "trial tactics" and is somehow responsible for Safeco's failure to produce the claims file documents at issue. However, as detailed in the Motion, Beck Corp. unquestionably was told that all documents responsive to its First Discovery Requests were produced (*See* Motion, Ex. H) and accepted that representation as being true. Nevertheless, out of an abundance of

-6-

caution, Beck Corp. made a second formal written request in the form of its Second Discovery

Requests to which it was again told that all documents had been produced (*See* Motion, Ex. J).

Given that the applicable Rules of Civil Procedure (most notably Fed.R.Civ.P. 26) required the

production of the documents in question at the <u>outset</u> of the case and that Beck Corp. made two

(2) separate formal written requests for these documents - one on Safeco's first counsel and one

on its second counsel - it is respectfully submitted that Safeco's attempt to shift its own

responsibilities to act diligently and in accordance with its legal obligations is not only

disturbing, but also unreasonable if not utterly absurd.

## II.    Requiring Or Permitting Additional Discovery In This Case Cannot Undo What Has Already Transpired

While the taking of additional discovery may permit Beck Corp. to pursue additional

and/or alternative litigation strategies in support of additional theories of liability and arguments,

it cannot undo the countless hours of time and significant expense that have been incurred by

engaging in nearly a year of discovery without knowledge of or access to Safeco's claim file.

Safeco has had numerous opportunities to produce the documents at issue, which were produced

only as a result of Beck Corp.'s repeated requests.  Even after it was apparent to Safeco that

documents which had been expressly requested and were in Safeco's possession had not been

produced, Safeco dragged its feet, waiting until the last possible business day to produce the

documents and providing no warning in advance of such production despite the fact that Safeco

had to be aware that the summary judgment motion deadline was approaching and that Beck

Corp. was likely preparing summary judgment materials based and in reliance upon the materials

produced by Safeco.

Additionally, had the documents in question been produced in the normal course of

discovery (or with Safeco's Rule 26 disclosures as required), they likely would have impacted

the entire course of this action and Beck Corp.'s litigation strategy. Just as the existence of documents impacts such analysis and planning, so does their absence. Beck Corp. relied to its detriment upon Safeco's numerous representations that all documents had been produced. This reliance and the course of the years of discovery cannot be undone.

If the parties were to engage in additional discovery, at a minimum, as was mentioned at Mr. Smith's deposition, Beck Corp. would have insisted on depositions of Safeco's underwriter(s) and of Kathy London, all of whom were properly noticed. Additionally, it is likely that additional third-party discovery of Safeco's agent involved in the issuance of the policy, Sundahl Insurance Co., would be required. Such information would be necessary to investigate, at least, any estoppel or waiver argument based upon Safeco's knowledge of the condition of the property and approval of the fire suppression system in place at the Rainbow Inn.

Further, while Mr. Smith's deposition was kept open as the parties agreed, as a result of the timing of the document production, Beck Corp. was not given the opportunity to continue with that deposition, nor was Beck Corp. aware that it would need to take that deposition when preparing Beck Corp.'s summary judgment materials. To accuse Beck Corp. of failing to ask for further depositions or discovery or an extension of the summary judgment deadline is disingenuous. Had the documents been produced in a timely (or even remotely timely) manner, Beck Corp. could and would have taken a course of action appropriate to the information provided. However, until it received the documents, it had no reason to believe that additional discovery was needed.

In summary, additional discovery will be time consuming and costly and will not put this case and the parties in the position they would have been in had the documents been timely

produced. It will not permit Beck Corp. or its counsel to undo the costs of investigation, discovery, research, and preparation of motions for summary judgment based upon an incomplete set of facts. Thus, Beck Corp. respectfully submits that Court granting Beck Corp.'s Motion and entering judgment in its favor is the appropriate remedy.

### III.   An Analysis Of The Facts Of Record In Light Of The *Poulis* Factors Reveals That The Relief Requested By Beck Corp. In Its Motion Is Just And Appropriate

Beck Corp. submits that the analysis of the factors promulgated by the Court of Appeals for the Third Circuit in *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 867 (3d Cir. 1984) in its Motion is factually and legally accurate such that the entry of summary judgment in its favor is appropriate under the circumstances. Accordingly, Beck Corp. incorporates by reference its Motion (in particular Paragraphs 38 through 53) as though the same were fully set forth at length herein. By way of further argument in response to a number of points raised by Safeco in its Answer, Beck Corp. states as follows:

A.   Extent Of Party's Responsibility

Safeco argues in Paragraph 44 of its Answer that neither Safeco nor its counsel were responsible for the obvious discovery delays in this case that resulted in Beck Corp. filing its Motion requesting sanctions. Moreover, not only does Safeco not accept responsibility for its conduct as outlined in the Motion and above, but it attempts to lay blame at the feet of Beck Corp. and its counsel. Beck Corp. and its counsel find it impossible to understand how a party to a case who: 1) had a duty under Fed.R.Civ.P. 26 to produce the documents in question at the outset of the litigation and did not do so; 2) has been served with repeated formal written requests for the documents in question yet failed to timely produce such; 3) was made expressly aware at the deposition of its corporate designee that the documents in question had not been produced yet failed to promptly produce such; 4) was advised by opposing counsel by way of e-

mail several weeks later that that the documents in question had not been produced yet failed to promptly produce such; 5) only produced the documents in question more than a month after the close of discovery after the close of business on the evening before the parties' motions for summary judgment were to be filed; 6) failed to inform opposing counsel that the documents in question did in fact exist contrary to its numerous prior representations, had been located and were going to be produced; and 7) utilized the documents in question in preparing its own affirmative motion for summary judgment; can claim it did nothing improper and absolve itself of any responsibility for the consequences of its conduct. To argue as Safeco has in its Answer to Beck Corp.'s Motion is, frankly, an insult to the sensibilities of the undersigned and this Court.

B.      Prejudice To The Adversary

Safeco further attempts to minimize the impact of its conduct by suggesting in Paragraphs 45 and 46 that Beck Corp. has not been prejudiced in any material way and, once again, blames Beck Corp. for Safeco's failure to properly engage in discovery. However, as discussed in its Motion and above, Beck Corp.'s litigation strategy was based largely on the universe of information and documentation available to it as provided by Safeco. Because Safeco did not produce all relevant documents requested in a timely fashion, Beck Corp. and its counsel have been severely prejudiced in that the course of this litigation would have been much different as previously detailed. Moreover, given the progression of this case thus far (there are cross-motions for summary judgment pending in addition to Beck Corp.'s Motion), Safeco's improper conduct simply cannot be adequately remedied by additional discovery, monetary sanctions, etc. at this juncture. The clear and unmistakable prejudice to Beck Corp. caused

solely by Safeco's conduct can only be countermanded by granting summary judgment in Beck Corp.'s favor.

### C.    History of Dilatoriness

In Paragraph 47, Safeco attempts to characterize its conduct as mere "inadvertence" while, once again, arguing that Beck Corp. is somehow responsible for Safeco's failure to timely produce all relevant documents repeatedly requested by Beck Corp. during the course of discovery. As the history of Safeco's pattern of dilatory conduct is abundantly clear and has been well-documented in Beck Corp.'s Motion and herein, it need not be discussed any further.

### D.    Willfulness/Bad Faith

In Paragraph 48 of its Answer to Beck Corp.'s Motion, Safeco seeks again to characterize its failure to produce key documents as "inadvertence" rather than willful or bad faith conduct, and once again blames Beck Corp. in the process. However, Safeco's course of conduct in no way supports this unfounded contention. Indeed, it is uncontroverted that Safeco ignored repeated, pointed requests to produce the documents in question. Additionally, these documents were only produced to Beck Corp.'s counsel after the close of business on December 5, 2006 - the evening before motions for summary judgment were to be filed and well after the discovery deadline had expired. Furthermore, Safeco employed a number of these documents in its own motion for summary judgment and related filings. Safeco, and presumably its counsel, had access to these documents throughout the course of discovery and while preparing its dispositive motion; Beck Corp. was only provided these documents when it no longer had any ability to investigate, analyze, refute or utilize them. It is also important to note that at no time prior to the delivery of the documents in question after the close of business on the evening before summary judgment motions were to be filed did Safeco or its counsel advise Beck Corp.

-11-

or its counsel of the existence of these documents or their contents, or that such documents would be produced. Beck Corp. and its counsel did not know that these documents existed (and in fact had been lead to believe otherwise by way of Safeco's responses to Beck Corp.'s First Discovery Requests and Second Discovery Requests) or the information that they contained until they received them and were able to review them. Without question, such conduct provides sufficient factual grounds such that this Court can impute willfulness and/or bad faith to Safeco.

   E.   Effectiveness Of Lesser Sanctions

   Safeco suggests to this Court in Paragraph 49 of its Answer to Beck Corp.'s Motion that lesser sanctions would provide an adequate means of redress. However, for the reasons and as set forth in detail in Beck Corp.'s Motion and above, anything less than the entry of summary judgment in Beck Corp.'s favor (and a denial of Safeco's motion for summary judgment) would be insufficient. Moreover, as the Supreme Court stated in regard to sanctions under Rule 37, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 922 (3d Cir. 1992) (emphasis added). Therefore, while Safeco's conduct in and of itself necessitates the entry of summary judgment in Beck Corp.'s favor, this Court must also consider the deterrent effect that Rule 37 is meant to engender among litigants. Without the threat of meaningful sanctions, litigants would all too quickly abandon their adherence to the discovery mandates of the Federal Rules of Civil Procedure (as has Safeco in this case) to the detriment of

opposing parties and their counsel. Accordingly, the relief requested of this Court by Beck Corp. in view of Safeco's conduct is just and appropriate under the circumstances.

        F.    <u>Meritoriousness Of The Claim</u>

        Finally, in an effort to convince this Court that Beck Corp.'s Complaint is without merit, Safeco in Paragraph 50 cites to various disputed facts contained in its motion for summary judgment. Beck Corp. takes a much different view of the facts of this case and denies that any of the disputed facts raised (to which Beck Corp. has not yet had the opportunity to respond as per this Court's January 31, 2007 Order (Docket No. 36)) eviscerate the merit of Beck Corp.'s claims. Regardless, the standard that this Court must employ when examining this factor is whether the allegations of the pleadings, if established at trial, would support recovery by plaintiff. *Poulis,* 747 F.2d at 869-870. Beck Corp.'s Complaint filed in this case (Docket No. 1) is well-pled and facially valid as even a cursory review of such confirms. Were it otherwise, Safeco undoubtedly would have filed a Motion to Dismiss this action, which it unquestionably did not. Accordingly, Beck Corp. has more than satisfied this factor.

**IV.   Conclusion**

        Despite Safeco's knowledge of the existence of the documents in question (as testified to by Mr. Smith), despite the fact that discovery was closed, despite the fact that several weeks had passed after Mr. Smith's deposition, despite the fact that the summary judgment deadline was rapidly approaching, and despite the fact that Safeco was affirmatively relying on the documents in its own summary judgment materials, Safeco did not even provide a courtesy response to Beck Corp.'s reminder (yet another) e-mail regarding Safeco's efforts to locate and produce these documents, which appear to be something that could be printed out with the mere push of a button. A simple response indicating that additional documents existed and were being produced

not only would have been courteous, but may have avoided the days and weeks worth of work that went into preparing a summary judgment motion, brief and supporting documentation based upon an understanding that no additional documents existed and less than complete discovery.

To complicate matters, the documents in question were produced after the close of business the evening before summary judgment motions were due, with no explanation, no offer to delay summary judgment, no offer to continue discovery, no offer to produce either Mr. Smith, Ms. London or an underwriting representative for deposition, and not even the slightest bit of remorse for doing something that obviously placed opposing counsel in a terrible and unenviable position.  Given not only Safeco's failure to produce the documents, but the manner in which such failure occurred, Beck Corp. requests that this Court grant its Motion for Sanctions and enter the proposed order submitted therewith.

Respectfully submitted,

/s/ Richard T. Victoria
Richard T. Victoria
Pa. I.D. #76681 - rtv@muslaw.com

/s/ Joshua R. Lorenz
Joshua R. Lorenz
Pa. I.D. #84397 - jrl@muslaw.com

MEYER, UNKOVIC & SCOTT LLP
1300 Oliver Building
Pittsburgh, PA  15217
(412) 456-2800
Fax:  (412) 456-2864

Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WALTER BECK CORPORATION d/b/a THE RAINBOW INN,

                Plaintiff,

vs.

SAFECO CORPORATION, AMERICAN ECONOMY INSURANCE COMPANY, and AMERICAN STATES INSURANCE COMPANY,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL DIVISION

Civil Action No. 04-348 - Erie

JUDGE MAURICE B. COHILL, JR.


**ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Walter Beck Corporation's Reply To Defendants' Answer To Motion for Discovery Sanctions Pursuant to Rule 37 was served upon counsel for the Defendants by electronic service this 12th day of March, 2007 at the following address:

> Daniel P. McDyer, Esquire
> ANSTANDIG, McDYER & YURCON, P.C.
> 1300 Gulf Tower
> 707 Grant Street
> Pittsburgh, PA 15219


                */s/ Joshua R. Lorenz*
                Joshua R. Lorenz